https://research.txcourts.gov/CourtRecordsSearch/ui/casePrintView/c6d198a3ae4946cc9e5079a429e2c799

Case Information

COLE NAYLOR,ALLISON NAYLOR,W. DOUGLAS HANNA vs. CAMP MYSTIC, LLC,MYSTIC CAMPS FAMILY...
D-1-GN-25-010016

Location
Travis County - District Clerk

Case Category
Civil - Other Civil

Case Type
Other Injury or Damage

Case Filed Date
11/10/2025

Judge
459TH, DISTRICT COURT

Case Status
Closed (Bankruptcy Filed)

## Parties 43

| Type | Name | Nickname/Alias | Attorneys |
|------|------|----------------|-----------|
| Plaintiff | ALLISON NAYLOR REPRESENTATIVE AND HEIR OF THE ESTATE OF VIRGINIA WYNNE NAYLOR | | W. Mark Lanier |
| Plaintiff | COLE NAYLOR REPRESENTATIVE AND HEIR OF THE ESTATE OF VIRGINIA WYNNE NAYLOR | | W. Mark Lanier |
| Plaintiff | CARRIE HANNA REPRESENTATIVE AND HEIR OF THE ESTATE OF HADLEY REBECCA HANNA | | W. Mark Lanier |
| Plaintiff | W. DOUGLAS HANNA REPRESENTATIVE AND HEIR OF THE ESTATE OF HADLEY REBECCA HANNA | | W. Mark Lanier |
| Plaintiff | LACEY HOLLIS REPRESENTATIVE AND HEIR OF THE ESTATE OF VIRGINIA LARINS HOLLIS | | W. Mark Lanier |
| Plaintiff | LARS HOLLIS REPRESENTATIVE AND HEIR OF THE ESTATE OF VIRGINIA LARINS HOLLIS | | W. Mark Lanier |
| Plaintiff | ANNE LINDSEY HUNT REPRESENTATIVE AND HEIR OF THE ESTATE OF JANE MARIE HUNT | | W. Mark Lanier |
| Plaintiff | DAVIN HUNT REPRESENTATIVE AND HEIR OF THE ESTATE OF JANE MARIE HUNT | | W. Mark Lanier |
| Plaintiff | BRANDT DILLON REPRESENTATIVE AND HEIR OF THE ESTATE OF LUCY LEE DILLON | | W. Mark Lanier |
| Plaintiff | LISA DILLON REPRESENTATIVE AND HEIR OF THE ESTATE OF LUCY LEE DILLON | | W. Mark Lanier |
| Plaintiff | MALORIE LYTAL REPRESENTATIVE AND HEIR OF THE ESTATE OF KELLYANNE ELIZABETH LYTAL | | W. Mark Lanier |
| Plaintiff | J. WADE LYTAL REPRESENTATIVE AND HEIR OF THE ESTATE OF KELLYANNE ELIZABETH LYTAL | | W. Mark Lanier |
| Plaintiff | BRANDT DILLON | | Sam E Taylor, II , W. Mark Lanier |
| Plaintiff | LISA DILLON | | Sam E Taylor, II , W. Mark Lanier |
| Plaintiff | CARRIE HANNA | | Sam E Taylor, II , W. Mark Lanier |
| Plaintiff | W. DOUGLAS HANNA | | Sam E Taylor, II , W. Mark Lanier |
| Plaintiff | LACEY HOLLIS | | Sam E Taylor, II , W. Mark Lanier |
| Plaintiff | LARS HOLLIS | | Sam E Taylor, II , W. Mark Lanier |
| Plaintiff | ANNE LINDSEY HUNT | | Sam E Taylor, II , W. Mark Lanier |
| Plaintiff | DAVIN HUNT | | Sam E Taylor, II , W. Mark Lanier |
| Plaintiff | J. WADE LYTAL | | Sam E Taylor, II , W. Mark Lanier |
| Plaintiff | MALORIE LYTAL | | Sam E Taylor, II , W. Mark Lanier |
| Plaintiff | ALLISON NAYLOR | | Sam E Taylor, II , W. Mark Lanier |
| Plaintiff | COLE NAYLOR | | Sam E Taylor, II , W. Mark Lanier |
| Defendant | CAMP MYSTIC, LLC | | CARLOS A. BALIDO , Jeffry H Ray , KENNETH JASON FAIR |
| Defendant | MYSTIC CAMPS FAMILY PARTNERSHIP, LTD. | | Mikal Watts |
| Defendant | MYSTIC CAMPS MANAGEMENT, LLC | | Mikal Watts |

| Type | Name | Nickname/Alias | Attorneys |
|---|---|---|---|
| Defendant | NATURAL FOUNTAINS PROPERTIES, INC. | | Mikal Watts |
| Defendant | GEORGE ALBRITTON EASTLAND REPRESENTATIVE OF THE ESTATE OF RICHARD G. EASTLAND | | CARLOS A. BALIDO , Jeffry H Ray |
| Defendant | WILLETTA A. EASTLAND, AS DIRECTOR OF CAMP MYSTIC, LLC | | Mikal Watts |
| Defendant | WILLETTA A. EASTLAND, AS VICE PRESIDENT OF CAMP MYSTIC, LLC | | Mikal Watts |
| Defendant | WILLETTA A. EASTLAND, AS SECRETARY OF NATURAL FOUNTAINS PROPERTIES, INC. | | Mikal Watts |
| Defendant | EDWARD S. EASTLAND | | CARLOS A. BALIDO , LYNN S. CASTAGNA |
| Defendant | MARY E. EASTLAND | | CARLOS A. BALIDO , LYNN S. CASTAGNA |
| Defendant | WILLETTA A. EASTLAND | | Mikal Watts |
| Other | ESTATE OF VIRGINIA WYNNE NAYLOR | | |
| Other | ESTATE OF JANE MARIE HUNT | | |
| Other | ESTATE OF LUCY LEE DILLON | | |
| Other | ESTATE OF HADLEY REBECCA HANNA | | |
| Other | ESTATE OF KELLYANNE ELIZABETH LYTAL | | |
| Other | ESTATE OF VIRGINIA LARINS HOLLIS | | |
| Other | ESTATE OF RICHARD G. EASTLAND | | |
| Other | William Crouse | | |

## Hearings 3

| Date/Time | Hearing Type | Judge | Location | Result |
|---|---|---|---|---|
| 4/13/2026 09:01 AM | Setting Date | | | Canceled - Passed by Court |
| 5/13/2026 09:00 AM | Setting Date | | | |
| 11/29/2027 09:01 AM | Setting Date | | | |

## Events 41

| Date | Event | Type | Comments | Documents |
|---|---|---|---|---|
| 11/29/2027 | Hearing | Setting Date | - | |
| 6/24/2026 | Filing | 5436DC | SUGGESTION OF BANKRUPTCY | SUGGESTION OF BANKRUPTCY.pdf |
| 6/15/2026 | Filing | 5415DC | NOTICE OF CHANGE OF ADDRESS | NOTICE OF CHANGE OF ADDRESS.pdf |
| 6/9/2026 | Filing | 5415DC | NOTICE OF APPEARANCE AND DESIGNATION OF LEAD COUNSEL | NOTICE OF APPEARANCE AND DESIGNATION OF LEAD COUNSEL.pdf |
| 6/9/2026 | Filing | 5415DC | DEFENDANTS' NOTICE OF APPEARANCE OF COUNSEL | DEFENDANTS' NOTICE OF APPEARANCE OF COUNSEL.pdf |
| 6/9/2026 | Filing | 8225DC | SCHEDULING ORDER | SCHEDULING ORDER_AU.pdf |
| 6/3/2026 | Filing | 5153DC | NAYLOR PLAINTIFFS SUPPLEMENTAL RESPONSE TO DEFENDANTS AMENDED MOTIONS TO COMPEL ARBITRATION AND STAY PROCEEDINGS | NAYLOR PLAINTIFFS SUPPLEMENTAL RESPONSE TO DEFENDANTS AMENDED MOTIONS TO COMPEL ARBITRATION AND.pdf |
| 6/3/2026 | Filing | 5153DC | PLAINTIFFS SUPPLEMENTAL RESPONSE TO DEFENDANTS AMENDED MOTION TO COMPEL ARBITRATION AND MOTION TO STAY | PLAINTIFFS SUPPLEMENTAL RESPONSE TO DEFENDANTS AMENDED MOTION TO COMPEL ARBITRATION AND MOTION TO.pdf |
| 6/3/2026 | Filing | 5153DC | DEFENDANTS RESPONSE TO THE PLAINTIFFS MOTION TO STRIKE | DEFENDANTS RESPONSE TO THE PLAINTIFFS MOTION TO STRIKE.pdf |
| 5/29/2026 | Filing | 5265DC | NAYLOR PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' AMENDED MOTIONS TO COMPEL ARBITRATION AND STAY PROCEEDINGS | NAYLOR PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' AMENDED MOTIONS TO COMPEL ARBITRATION AND STAY.pdf |
| 5/13/2026 | Hearing | Setting Date | - | |
| 5/12/2026 | Filing | 5415DC | ANGELA SPOEDE'S NOTICE OF APPEARANCE | ANGELA SPOEDE'S NOTICE OF APPEARANCE.pdf |
| 5/12/2026 | Filing | 5415DC | DEFENDANTS NOTICE OF WITHDRAWAL OF MOTIONS FILED MARCH 24, 2026 TO COMPEL ARBITRATION AND MOTIONS TO STAY PROCEEDINGS | DEFENDANTS NOTICE OF WITHDRAWAL OF MOTIONS FILED MARCH 24, 2026 TO COMPEL ARBITRATIOIN AND MOTIONS.pdf |
| 5/12/2026 | Filing | 5153DC | DEFENDANTS CONSOLIDATED REPLY IN SUPPORT OF THEIR MOTIONS TO COMPEL ARBITRATION AND STAY PROCEEDINGS | DEFENDANTS CONSOLIDATED REPLY IN SUPPORT OF THEIR MOTIONS TO COMPEL ARBITRATION AND STAY.pdf |
| 5/12/2026 | Filing | 5265DC | DEFENDANTS' AMENDED MOTIONS TO COMPEL ARBITRATION AND STAY PROCEEDINGS | DEFENDANTS' AMENDED MOTIONS TO COMPEL ARBITRATION AND STAY PROCEEDINGS.pdf |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 5/8/2026 | Filing | 5153DC | PLAINTIFFS' CORRECTED RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY | PLAINTIFFS' CORRECTED RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY.pdf |
| 5/8/2026 | Filing | 5415DC | EXHIBITS 16-19 TO PLAINTIFFS' CORRECTED RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY | EXHIBITS 16-19 TO PLAINTIFFS' CORRECTED RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND.pdf |
| 5/8/2026 | Filing | 5415DC | EXHIBITS 1-11 TO PLAINTIFFS' CORRECTED RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY | EXHIBITS 1-11 TO PLAINTIFFS' CORRECTED RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND.pdf |
| 5/8/2026 | Filing | 5415DC | EXHIBITS 12-15 TO PLAINTIFFS' CORRECTED RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY | EXHIBITS 12-15 TO PLAINTIFFS' CORRECTED RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND.pdf |
| 5/8/2026 | Filing | 5265DC | PLAINTIFFS' MOTION FOR LEAVE TO FILE PLAINTIFFS' CORRECTED RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY WITHIN SEVEN DAYS OF HEARING | PLAINTIFFS' MOTION FOR LEAVE TO FILE PLAINTIFFS' CORRECTED RESPONSE TO DEFENDANTS' MOTION TO COMPEL.pdf |
| 5/6/2026 | Filing | 5153DC | PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY | PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY.pdf |
| 5/6/2026 | Filing | 5415DC | EXHIBITS 1-11 TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY | ⊖ Document is hidden |
| 5/6/2026 | Filing | 5415DC | EXHIBITS 16-18 TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY | EXHIBITS 16-18 TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO.pdf |
| 5/6/2026 | Filing | 5415DC | EXHIBITS 12-15 TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY | EXHIBITS 12-15 TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO.pdf |
| 5/6/2026 | Filing | 5415DC | NOTICE OF FILING OF AFFIDAVITS IN SUPPORT OF MOTIONS TO COMPEL ARBITRATION | NOTICE OF FILING OF AFFIDAVITS IN SUPPORT OF MOTIONS TO COMPEL ARBITRATION.pdf |
| 4/13/2026 | Filing | 8225DC | ORDER ALLOWING RECORDING OF COURT PROCEEDINGS | ORDER ALLOWING RECORDING OF COURT PROCEEDINGS_AU.pdf |
| 4/13/2026 | Filing | 8225DC | ORDER ALLOWING RECORDING OF COURT PROCEEDINGS | ORDER ALLOWING RECORDING OF COURT PROCEEDINGS_AU.pdf |
| 4/13/2026 | Hearing | Setting Date | - | |
| 4/9/2026 | Filing | 8225DC | ORDER ALLOWING STILL PHOTOGRAPHY OF COURT PROCEEDINGS | ORDER ALLOWING STILL PHOTOGRAPHY OF COURT PROCEEDINGS_AU.pdf |
| 4/9/2026 | Filing | 8225DC | ORDER ALLOWING RECORDING OF COURT PROCEEDINGS | ORDER ALLOWING RECORDING OF COURT PROCEEDINGS _AU.pdf |
| 4/9/2026 | Filing | 8225DC | ORDER ALLOWING AUDIO RECORDINGS OF COURT PROCEEDINGS | ORDER ALLOWING AUDIO RECORDINGS OF COURT PROCEEDINGS_AU.pdf |
| 4/3/2026 | Filing | 6515DC | ORDER TRANSFERRING CASE | ORDER TRANSFERRING CASE.pdf |
| 4/1/2026 | Filing | 5442DC | LETTER TO COUNSEL FROM JUDGE GAMBLE | LETTER TO COUNSEL FROM JUDGE GAMBLE_AU.pdf |
| 3/24/2026 | Filing | 5265DC | DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY | DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY.pdf |
| 3/13/2026 | Filing | 5442DC | LETTER TO COUNSEL FROM JUDGE MAYA GUERRA GAMBLE | LETTER TO COUNSEL FROM JUDGE MAYA GUERRA GAMBLE _AU.pdf |
| 3/4/2026 | Filing | 5423DC | ASSIGNMENT LETTER - JUDGE AMY CLARK MEACHUM REGARDING JUDGE MAYA GUERRA GAMBLE | ASSIGNMENT LETTER - JUDGE AMY CLARK MEACHUM REGARDING JUDGE MAYA GUERRA GAMBLE_AU.pdf |
| 3/2/2026 | Filing | 5415DC | REQUEST FOR ORDER PERMITTING RECORDING | REQUEST FOR ORDER PERMITTING RECORDING.pdf |
| 12/12/2025 | Filing | 5265DC | CAMP MYSTIC DEFENDANTS' MOTION TO TRANSFER VENUE | CAMP MYSTIC DEFENDANTS' MOTION TO TRANSFER VENUE.pdf |
| 12/12/2025 | Filing | 5150DC | CAMP MYSTIC DEFENDANTS ORIGINAL ANSWER SUBJECT TO MOTION TO TRANSFER VENUE | CAMP MYSTIC DEFENDANTS ORIGINAL ANSWER SUBJECT TO MOTION TO TRANSFER VENUE.pdf |
| 11/13/2025 | Service | - | - | |
| 11/10/2025 | Filing | 5050DC | PLAINTIFFS' ORIGINAL PETITION | PLAINTIFFS' ORIGINAL PETITION.pdf |

© 2026 Tyler Technologies, Inc. | All Rights Reserved | Version: 2026.5.4.2291

11/10/2025 9:52 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016
Max Hernandez

CAUSE NO. D-1-GN-25-010016 _____

| | | |
|---|---|---|
| COLE and ALLISON NAYLOR, Individually and as Representatives and Heirs of the Estate of VIRGINIA WYNNE NAYLOR; W. DOUGLAS and CARRIE HANNA, Individually and as Representatives and Heirs of the Estate of HADLEY REBECCA HANNA; LARS and LACEY HOLLIS, Individually and as Representatives and Heirs of the Estate of VIRGINIA LARINS HOLLIS; DAVIN and ANNE LINDSEY HUNT, Individually and as Representatives and Heirs of the Estate of JANE MARIE HUNT; BRANDT and LISA DILLON, Individually and as Representatives and Heirs of the Estate of LUCY LEE DILLON; J. WADE and MALORIE LYTAL, Individually and as Representatives and Heirs of the Estate of KELLYANNE ELIZABETH LYTAL, *Plaintiffs*, | § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| VS. | § § § | TRAVIS COUNTY, TEXAS |
| CAMP MYSTIC, LLC; MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.; MYSTIC CAMPS MANAGEMENT, LLC; NATURAL FOUNTAINS PROPERTIES, INC; WILLETTA A. EASTLAND, Individually and as DIRECTOR and VICE PRESIDENT of CAMP MYSTIC, LLC, and as SECRETARY of NATURAL FOUNTAINS PROPERTIES, INC.; GEORGE ALBRITTON EASTLAND, AS REPRESENTATIVE OF THE ESTATE OF RICHARD G. EASTLAND; EDWARD S. EASTLAND and MARY E. EASTLAND, Individually, | § § § § § § § § § § § § § § § § § | |
| | § | 200TH, DISTRICT COURT |
| | § | _____ JUDICIAL DISTRICT |

*Defendants*.

PLAINTIFFS' ORIGINAL PETITION                                                    PAGE 1

Copy from re:SearchTX

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs file this Plaintiffs' Original Petition complaining of Defendants and respectfully show as follows:

## I. DISCOVERY CONTROL PLAN

1. Plaintiffs intend that discovery be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

## II. THE CAMP MYSTIC DISASTER

2. On July 4, 2025, Plaintiffs' lives were shattered. On that day, the Plaintiffs' young daughters were killed during a predicted flash flood that occurred while the children were entrusted in the care of the Defendants at Camp Mystic summer camp. Plaintiffs bring their wrongful death, and survival causes of action based on the negligence, recklessness, and gross negligence of the Defendants which resulted in the deaths of Virginia 'Wynne' Naylor, Hadley Hanna, Virginia Hollis, Jane 'Janie' Hunt, Lucy Dillon, and Kellyanne Lytal.

Plaintiffs bring this case seeking justice for their daughters; their "babies." Tragically, Wynne, Hadley, Virginia, Janie, Lucy, and Kellyanne lost their young lives in the most horrific, brutal, and terrifying way imaginable. These innocent little girls are unable to express to their parents the terror they experienced as water rose in their cabins, as they desperately tried to keep their heads above the steadily rising water, attempting to escape, and then as they were swept into raging flood waters. Their parents are left to live every single day for the rest of their lives with the intense grief and the thoughts of what their babies endured that fateful night. They can never change the permanent devastation that has happened to their families. But they can and will seek justice for their daughters. They can and will seek accountability from those who caused the avoidable deaths of their children. They can and will do everything in their power to affect change

Copy from re:SearchTX

so that summer camps are safer; so that no other child dies from the negligence, gross negligence, lack of preparedness, and recklessness that resulted in their daughters' deaths at Camp Mystic. This case is about justice for six young girls and accountability for those who are responsible for their deaths.

### III. PARTIES

3.    Plaintiffs bring this action both individually and as representatives of the estates of their deceased children pursuant to the Texas Wrongful Death Act and the Texas Survival Statute.

### VIRGINIA WYNNE NAYLOR

### AGE 8 – BUBBLE INN CABIN




Cole and Allison Naylor, parents of Virginia 'Wynne' Naylor, deceased, bring their claims individually and as representatives and heirs of the estate of Virginia Wynne Naylor. Cole and Allison Naylor are residents of Dallas, Dallas County, Texas. At the time of her death, Virgina Wynne Naylor, deceased, was only 8 years old. No administration of her Estate is pending and none is necessary.

Copy from re:SearchTX

## HADLEY REBECCA HANNA

### AGE 8 – TWINS II CABIN

 

W. Douglas and Carrie Hanna, parents of Hadley Rebecca Hanna, deceased, bring their claims individually and as representatives and heirs of Hadley Rebecca Hanna. W. Douglas and Carrie Hanna are residents of Dallas, Dallas County, Texas. At the time of her death, Hadley Rebecca Hanna, was only 8 years old. No administration of her Estate is pending and none is necessary.

## VIRGINIA LARINS HOLLIS

### AGE 8 – TWINS II CABIN

 

Lars and Lacey Hollis, parents of Virginia Larins Hollis, deceased, bring their claims individually and as representatives and heirs of Virginia Larins Hollis. Lars and Lacey Hollis are

Copy from re:SearchTX

residents of Bellville, Austin County, Texas. At the time of her death, Virginia Larins Hollis, deceased, was only 8 years old. No administration of her Estate is pending and none is necessary.

## JANIE MARIE HUNT

### AGE 9 – BUBBLE INN CABIN

 

Davin and Anne Lindsey Hunt, parents of Jane 'Janie' Marie Hunt, deceased, bring their claims individually and as representatives and heirs of the Estate of Jane Marie Hunt. Davin and Anne Lindsey Hunt are residents of Dallas, Dallas County, Texas. At the time of her death Jane 'Janie' Marie Hunt, deceased, was only 9 years old. No administrations of her Estate is pending and none is necessary.

## LUCY LEE DILLON

### AGE 8 – TWINS 1 CABIN

 

Copy from re:SearchTX

Brandt and Lisa Dillon, parents of Lucy Lee Dillon, deceased, bring their claims individually and as representatives and heirs of the estate of Lucy Lee Dillon. Brandt and Lisa Dillon are residents of Houston, Harris County, Texas. At the time of her death, Lucy Lee Dillon, deceased, was only 8 years old. No administration of her Estate is pending and none is necessary.

## KELLYANNE ELIZABETH LYTAL

### AGE 8 – TWINS I CABIN




J. Wade and Malorie Lytal, parents of Kellyanne Elizabeth Lytal, deceased, bring their claims individually and as representatives and heirs of Kellyanne Elizabeth Lytal. J. Wade and Malorie Lytal are residents of San Antonio, Bexar County, Texas. At the time of her death, Kellyanne Elizabeth Lytal, deceased, was only 8 years old. No administration of her Estate is pending and none is necessary.

4.      The **Defendants** (hereinafter "Defendants" or "Camp Mystic") are composed of Camp Mystic, LLC; Mystic Camps Family Partnership, LTD.; Mystic Camps Management, LLC; Natural Fountains Properties, Inc.; Willetta A. Eastland, Individually and as Director and Vice President of Camp Mystic, LLC, and as Secretary of Natural Fountains Properties, Inc.; George

Copy from re:SearchTX

Albritton Eastland as Representative of the Estate of Richard G. Eastland; Edward S. Eastland and Mary E. Eastland, individually.

Camp Mystic, LLC is a domestic limited liability company with its principal place of business in Hunt County, Texas. Camp Mystic operates a private Christian children's summer camp for girls, located along the Guadalupe River. Defendant Camp Mystic, LLC can be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701. Pursuant to the Texas Business Organizations Code Section 5.201, this Defendant is required but has failed to maintain a registered agent in Texas.

Mystic Camps Family Partnership, Ltd, is a domestic limited partnership with its registered office located in Austin, Travis County, Texas. Defendant Mystic Camps Family Partnership, LTD can be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701. Pursuant to the Texas Business Organizations Code Section 5.201, this Defendant is required but has failed to maintain a registered agent in Texas.

Mystic Camps Management, LLC is a limited liability company with its registered office located in Austin, Travis County, Texas. Defendant Mystic Camps Management, LLC can be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701. Pursuant to the Texas Business Organizations Code Section 5.201, this Defendant is required but has failed to maintain a registered agent in Texas.

Natural Fountains Properties, Inc. is a domestic corporation headquartered in Texas. Defendant Natural Fountains Properties, Inc. can be served with process by Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701. Pursuant to the Texas Business Organizations Code Section 5.201, this Defendant is required but has failed to maintain a registered agent in Texas.

Copy from re:SearchTX

Willetta A. ("Tweety") Eastland is an individual residing in Travis County, Texas. Defendant Willetta A. Eastland may be served with process at 2404 Scenic Dr., Austin, Texas 78703, or wherever she may be found.

George Albritton ("Britt") Eastland, as Representative of the Estate of Richard ("Dick") G. Eastland, is an individual residing in Texas. This Defendant may be served with process at 401 West Main Street, Kerrville, Texas 78028, or wherever he may be found.

Edward S. Eastland is an individual residing in Texas. This Defendant may be served with process at 1105 Louis St., Kerrville, Texas 78028, or wherever he may be found.

Mary E. Eastland is an individual residing in Texas. This Defendant may be served with process at 1105 Louis St., Kerrville, Texas 78028, or wherever she may be found.

In the event any parties are misnamed or not included herein, Plaintiffs contend this was the result of a misidentification, misnomer, and/or such parties are or were alter egos of parties named herein.  Alternatively, Plaintiffs contend any such "corporate veils" should be pierced to hold such parties properly accountable in the interest of justice.

Pursuant to Rule 28 of the Texas Rules of Civil Procedure, Plaintiffs are suing any partnership, unincorporated association, private corporation, or individual whose name contains the words, or who does business under the name of the Defendants.

## IV. JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

6.      Venue is proper in Travis County, Texas, pursuant to Texas Civil Practice and Remedies Code § 15.002 because Defendant Willetta Eastland resided in Travis County at the time the cause of action accrued. Additionally, Defendants Mystic Camps Family Partnership LTD. and

Copy from re:SearchTX

Mystic Camps Management, LLC maintain their principal places of business and offices in Travis County.

## V.  BACKGROUND

7.     Camp Mystic is a private summer camp in Kerr County, Texas for girls aged eight to seventeen. The camp, owned and operated by the Eastland family, is located on approximately 725 acres adjoining the South Fork Guadalupe River and Cypress Creek. Camp Mystic markets itself as providing a safe and enriching summer experience for children. Tragically, on July 4, 2025, Camp Mystic proved to be anything but safe when 27 girls died when the campsite flooded.

The Eastland family first acquired Camp Mystic in 1939. Camp Mystic has been maintained and operated by the Eastland family for decades. Dick Eastland and his wife, Defendant Willetta 'Tweety' Eastland, owned and were the Executive Directors of Camp Mystic since 1974. Defendants Edward and Mary Liz Eastland acted as the Directors at Camp Mystic Guadalupe River. Defendant Natural Fountains Properties, Inc. ("NFP") owned the real property where Camp Mystic operated.

Camp Mystic has many cabins in which the summer campers are housed during the weeks-long summer camp sessions. Each cabin is identified by a name. Each of the Plaintiffs' daughters who lost their lives were housed in either Bubble Inn cabin or Twins I & Twins II cabins. These three cabins were located in a low area referred to as "the flats" which were within close proximity to the Guadalupe River.

8.     Defendants had first-hand knowledge that the Guadalupe River in the area where Camp Mystic is located has a well-documented history of dangerous flooding and is known as "Flood Alley" due to the frequency and severity of flood events. Major flooding events along the Guadalupe River in and around Kerr County occurred in 1932, 1952, 1972, 1973, 1978, 1987, and

Copy from re:SearchTX

1998. The 1932 flood washed away several cabins at Camp Mystic. Campers were evacuated before the flood ravaged the Camp. The 1978 flood resulted in campers being moved to higher ground in the dark hours of the night. Reportedly, flood waters reached the top of the dining hall steps. In the 1987 flood, a bus carrying campers from a neighboring camp along the Guadalupe River was swept away causing the deaths of 10 teenage campers. In 2011, FEMA placed Camp Mystic in a "Special Flood Hazard Area" in its National Flood Insurance map. Defendants not only had knowledge of this extensive history of severe, deadly floods, it experienced them and suffered damage from them. Nonetheless, Defendants concealed these facts from Plaintiffs.

9.      Unknown to Plaintiffs prior to the deaths of their daughters, the area where Camp Mystic is situated is within and near designated floodplains, and flooding in this area is not only foreseeable but has occurred with regularity over many years. Defendants had actual awareness of the severe flood risks posed by the camp's location along the Guadalupe River. Despite this knowledge and history, Defendants failed to warn Plaintiffs of the dangers associated with leaving their girls on this property for multiple weeks. Each of Plaintiffs' children were in either the Bubble Inn cabin or Twins I & Twins II cabins.

10.      The following illustrations demonstrate the proximity of Camp Mystic and the Bubble Inn and Twins I & Twins II cabins to the 100- and 500-year floodplains and the FEMA-designated floodway along the Guadalupe River. The red and blue striped areas reflect the federally designated floodway. The blue-green shaded areas indicate the 100-year floodplain. The gold shaded areas are the 500-year floodplain.

Copy from re:SearchTX





Copy from re:SearchTX



The following graphic demonstrates the point of confluence of 11,000 acres of watershed from Bear Creek, Cypress Creek, and Edmund's Creek. A concentration of multiple watersheds in an area Camp Mystic plus the wide-open flat of alluvial plain created an unusually dangerous death trap. Defendants knew about these conditions, or in the exercise of ordinary care for the protection of their campers should have known, due to the decades of floods experienced at Camp Mystic.

Copy from re:SearchTX



11.    During the summer of 2025, Plaintiffs' daughters, Wynne, Hadley, Virginia, Janie, Lucy, and Kellyanne, were enrolled as campers at Camp Mystic along with other young girls. Plaintiffs paid substantial tuition to Defendants for their daughters to attend Camp Mystic, trusting that Defendants would provide a safe environment and proper supervision. Plaintiffs now know that Camp Mystic was anything but safe.  In fact, Defendants' actions just in the past few years have demonstrated a conscious disregard for safety of their Camp and its young campers.

Approximately six years ago, Defendants constructed new cabins in a designated flood-risk area. Further, Defendants failed to relocate older cabins that were most subject to flooding dangers; some that were in areas identified by the Federal Emergency Management Agency (FEMA) as the highest-risk location for flooding. Some of the cabins were in the Guadalupe River floodway and floodplains.

Copy from re:SearchTX

12.    Plaintiffs were not adequately warned or informed by Defendants about the serious and foreseeable risk of catastrophic flooding at the camp's location or the complete absence of any adequate flood evacuation plan. On the contrary, known dangers associated with the extreme flood risks were concealed from Plaintiffs. Had Plaintiffs known that their daughters would be staying in cabins at Camp Mystic that were in floodplains, they would have never entrusted Wynne, Hadley, Virginia, Janie, Lucy, and Kellyanne in the care of Defendants.

13.    The likelihood of catastrophic flash flooding during the evening of July 3 or the early morning of July 4 was well understood and predicted by emergency operations departments, due to the confluence of two extreme weather systems over the western edge of the upper Guadalupe River basin and the well-known propensity of the limestone crust of the river basin to generate dangerous flash floods.  Two days earlier, on July 2, Texas Division of Emergency Management had activated emergency response resources ahead of the anticipated flooding.  On the morning of July 3, the Texas Emergency Management Coordination Center sponsored a call for state and county officials to brief them regarding the upcoming flooding. At 1:18 p.m. on July 3, 2025, the National Weather Service in San Antonio, Texas issued a Flash Flood Watch for Kerr County. Despite this warning and heavy rain that day, the campers in the Bubble Inn and Twins I & Twins II cabins (the cabins in which Plaintiffs' daughters were housed) were not moved to easily-accessible, safer locations. At 6:26 p.m. on July 3, the National Water Center issued its own warning of the potential for "rapid onset flooding" and "locally considerable impacts" into early morning of July 4. At approximately 1:14 a.m., the National Weather Service issued an Emergency Flash Flood Warning stating that the area was already experiencing "life threatening flash flooding." Dick Eastland and other Defendants received or quickly learned of the NWS Flash Flood Warning.

Copy from re:SearchTX

The Defendants did not immediately scramble to evacuate any of the campers in their care, including the youngest, most helpless eight-and-nine-year-old girls in the Bubble Inn and Twins cabins. Instead, and despite these multiple dire warnings, for roughly over an hour as the waters rose over the Flats, Defendants failed to evacuate any helpless campers or counselors, although not without first taking measures to secure lawn equipment and canoes to safe locations.

Roughly over an hour after receiving the "life threatening flash flooding" warning, and only after panicked girls in other cabins insisted on escaping to higher ground or structures—as their cabins filled up with water – did Defendants begin reluctantly facilitating an evacuation, allowing them to wade through the rising waters.  As the flood waters continued to rise inside their cabins, still other groups of older girls defied orders and escaped through windows to climb up an adjacent hill to safety.  All of those girls who stayed on the hill survived.

14.    Even though many campers escaped to higher ground, Defendants instructed that the youngest campers in Bubble Inn and Twins I & Twins II be kept in the cabins although water was rapidly rising within the cabins. There were multiple ways Plaintiffs' daughters could have been evacuated to escape the rising flood waters. Within only 20 yards from the Bubble Inn door was a hill. The girls in Bubble Inn could have run to the higher ground in a matter of a few seconds. The following photograph was taken from the door of Bubble Inn.

Copy from re:SearchTX



Within approximately 20 yards from Twins I & Twins II was a two-story "Commissary" building with external steps to the upper floor. Camp Mystic staff just yards away from the youngest campers in Bubble Inn and Twins I & Twins II remained in their residence above the Commissary building and survived.

Copy from re:SearchTX



Defendants' gross negligence in instructing Plaintiffs' daughters in Bubble Inn and Twins I & Twins II to remain in their cabins, failing to maintain proper emergency protocols and evacuation plans, especially in pre-warned impending weather emergencies, directly caused their senseless deaths as they were finally swept away in raging flood waters.

15.    Despite the flood warnings on the early afternoon of July 3, the girls were not evacuated earlier in the day before the severe rain began.  Once the situation became dire, even in the absence of advanced planning, common sense should have dictated that the girls be taken 20-yards away to high ground. No flood evacuation plans were in place before the girls arrived at Camp Mystic. Plaintiffs' daughters were housed in cabins in the flood plains. Defendants initially focused first on saving their tools and equipment rather than evacuating eight and nine-year-old girls. Further, Tweety Eastland and Mary Liz Eastland prioritized their own safety and survived.

Copy from re:SearchTX

16.    Camp Mystic's so-called "Emergency Instructions" was a single page document addressing all types of emergencies that might arise during camp sessions. A snapshot of the scant "Floods" section is provided below. Tragically, the last two sentences of Camp Mystic's instructions caused the loss of Plaintiffs' children's lives. To instruct children to stay in a cabin with rising flood waters was ultimately a death sentence. Further, to state that "[a]ll cabins are constructed on high, safe ground" was patently false, misleading created a false sense of safety. Upon information and belief, the following copy of the "Emergency Instructions" was found in one of the counselor's flooded trunk that contained her belongings.



Tragically, due to lack of planning, the absence of any evacuation plans, lack of training, inadequate warning systems, and other acts and omissions of recklessness and gross negligence, Plaintiffs' daughters suffered terrifying, brutal, and horrific deaths. Defendants falsely led

Copy from re:SearchTX

Plaintiffs to believe that Camp Mystic was safe. They concealed the fact that Camp Mystic was located in and near dangerous floodplains, and lacked of safety and emergency planning. Plaintiffs trusted and relied on Defendants to provide a safe environment for their young daughters. Sadly, Plaintiffs now live everyday with the grief and guilt of leaving their daughters in the care, custody, and control of Defendants.

17.     Wynne, Hadley, Virginia, Janie, Lucy, and Kellyanne did not have to die. They should not have lost their lives at the tender age of eight and nine years. Defendants' recklessness, negligence, and gross negligence were the direct and proximate cause of the deaths of these innocent young girls and resulting damages suffered by their parents and families.

## VI. CHRONOLOGY OF THE JULY 2025 TRAGEDY

18.     The Defendants' negligence, gross negligence, and recklessness is clearly illustrated in the timeline of events which unfolded unbeknownst to Plaintiffs, in the last hours of their daughters' lives and events thereafter.

**July 2, 2025, at 5:47 p.m**.: In anticipation of flooding in the region, the Texas Department of Emergency Management (TDEM) activated a State of Emergency response, deploying swift water rescue assets to the area.

**July 3, 2025:** TDEM Region 6 contacted the county judges and mayors of the predicted flooding areas and officially notified them of the potential weather threats. The National Weather Services issued a Flood Hazard Outlook for Kerrville. At 10:48 a.m., the National Weather Service issued a Flood Watch for the area and pushed this information through social media, newscasts, and other emergency communication systems at 2:35 p.m. At 6:10 p.m. the National Weather Service issued an assessment for meteorologists referencing flash flooding.

Copy from re:SearchTX

**July 3, 2025, at 11:13 p.m**.: A Flood Advisory was posted for Kerr County. The National Weather Service issued an assessment of significant flooding likely.

**July 4, 2025**: Despite the rain and early weather advisories, several counselors and workers had left Camp Mystic for their routine night off. Several counselors have indicated that counselors and workers began returning to Camp Mystic starting by at least 12:40 a.m.

**July 4, 2025. At 01:14 a.m**.: Dick Eastland and the Camp Mystic staff received the National Weather Service Flash Flooding alert.

According to Edward Eastland, Dick Eastland had a home weather station that he monitored. Edward Eastland remembered being awoken by Dick Eastland, via handheld radio, telling him that they had received 2 inches of rain in the last hour. Reportedly, Glenn Juenke, the Camp Mystic night watchman was the first to receive the warning. Based on these accounts, Camp Mystic was undoubtedly aware of the issued warning of Flash Flooding.

**July 4, 2025, at 01:45 a.m**.: According to reports from Glenn Juenke, some of Camp Mystic's workers who had been previously stranded outside of camp due to a mechanical issue with their van, returned to the camp in another vehicle sent by Camp Mystic. Glenn Juenke provided an interview to the New York times which identified that these workers returned "*after a harrowing drive. The roads had been passible, but by then the rain had become intense.*"

Glenn Juenke in his account to the media identified that he was able to contact his wife and advised her that he would not be returning home at that time due to road conditions.

**July 4, 2025, at or about 01:47 a.m**.: Dick and Edward Eastland met with the Camp Mystic Grounds Crew and began securing equipment around the property (rather than securing the safety of the children).

Copy from re:SearchTX

**July 4, 2025, at 02:00 a.m.:** The Kerr County Sheriff's Department received its first emergency phone call about hazardous conditions. At this time, numerous campers identified that the intensity of the storm woke them up from their sleep. Edward Eastland advised that he attempted to send Glenn Juenke home because his shift was over, but the river had already risen too far for a car to pass over it safely.

**July 4, 2025, at 02:10 a.m.:** Counselors from the Bug House cabin arrived at the office advising staff that the cabins are flooding. They are told to return to their cabins and shelter in place. The cabins did not have an adequate number of counselors and new counselors had not been paired with experienced counselors. To compound issues, no counselors within the cabins were allowed to have any communication device. None of the cabins had a weather radio or a walkie-talkie for remote communication.

**July 4, 2025, at 2:13 a.m.:** Upon information and belief, Edward and Dick Eastland are still securing equipment around the camp. The Camp Mystic counselors and children were still sheltering in place at the direction of Defendants.

**July 4, 2025, at 02:19 a.m.:** Camp Mystic's staff became aware that the Bug House cabin was also taking on water. According to Edward Eastland, he, Dick Eastland, and the counselors drove to the Bug House cabin to check the conditions. Edward Eastland confirmed that water was entering the cabin but instructed the counselors to put towels down at the base of the doorway and stay in the cabin.

**July 4, 2025, at or about 02:25 a.m.:** Edward Eastland received a frantic call via handheld radio from the gatekeeper, Francis Blackwell, stating that the gate house was taking on water, Edward tells Francis to get out of the gatehouse. Edward Eastland stated that he knew at this time that the situation was "very serious."

Copy from re:SearchTX

**July 4, 2025, at 02:30 a.m**.: Glenn Juenke, in his account to the New York Times, stated evacuation of <u>some </u>of the cabins had begun. He further stated that the conditions were so severe at this point that he felt taking a vehicle to aid in the rescue would not be safe. This is one hour and fifteen minutes after receiving the warning that "life threatening flash flooding" was occurring and thirty minutes after being told by counselors of active flooding within the cabins.

Several counselors at Camp Mystic recall Glenn Juenke driving to their cabin and asking if their cabin was flooding. Despite the fact the cabins were flooding, he then told them to just stay in their cabin.

**July 4, 2025, at or about 03:00 a.m**.: Counselors in some cabins were awakened by the storm. This is one hour and forty-five minutes after Camp Mystic first received notice that conditions were worsening and that danger was imminent. These counselors awakened on their own accord and began the process of waking up their campers and quickly exiting with them to the hillside to the east of the cabins.

**July 4, 2025, at 03:11 a.m.:** Camp Mystic counselors positioned in higher elevation levels provided several accounts that this was the time they were woken up to start evacuation of the cabins near the river. This action is almost two hours after the Camp Mystic staff were initially notified of the impending dangerous conditions.

**July 4, 2025, at 03:26 a.m.:** Time-stamped photos from Camp Mystic at 3:26 a.m. illustrates that the camp was flooding but the campers were still able to walk to safer, higher grounds.

PLAINTIFFS' ORIGINAL PETITION                                                                                                    PAGE 22

Copy from re:SearchTX



July 4, 2025, at 03:30 a.m.: The Kerrville emergency service received numerous calls for airlift assistance.

July 4, 2025, at 03:44 a.m.: On or about this time cabin doors were breaking open and water began rushing in.

July 4, 2025, at 03:51 a.m.: Reportedly, this is the time that Dick Eastland's Apple Watch registered that it was submerged in water.

July 4, 2025, at 03:59 a.m.: Emergency services received an emergency call from Camp Mystic.

July 4, 2025, at 04:09 a.m.: Reportedly, this is the time that Edward Eastland's Apple Watch was submerged in water.

Copy from re:SearchTX

**July 4, 2025, at 09:44 a.m.:** Mary Liz Eastland, in a Camp Mystic text group, stated that they were still searching for girls.

**July 4, 2025, at 10:57 a.m.**: Mary Liz Eastland advised via text that there were rescue boats searching the river for the children.

19. As illustrated by the timeline, literally hours of inaction by the Defendants resulted in mayhem and bedlam. As the water rose within the Bubble Inn and Twins I & Twins II cabins, the terrified girls began climbing up the top bunk beds or treading water to try to keep their heads above water. As the pictures below from the Twins cabin illustrate, the water rose so close to the ceiling (5 ¾ inches) the girls ran out of air space and were tragically swept into the raging flood waters. Lucy Dillon, did not make it out of the cabin where she lost her life.



Copy from re:SearchTX

 

The flood waters ripped the children away from the roofs, doors, furniture, trees, and hands of each other into the raging river.

## VII. DEFENDANTS' NEGLIGENCE, RECKLESSNESS, AND WRONGFUL CONDUCT

20.     Defendants knew or should have known that the camp's location presented a serious and foreseeable risk of catastrophic flooding. Despite this knowledge, Defendants failed to implement adequate safety measures, emergency response procedures, and evacuation plans to protect the children in their care.

21.     Specifically, Defendants were negligent and reckless in the following respects:

a. **Failure to Maintain Adequate Emergency Plans:** Defendants failed to develop, implement, maintain, or follow adequate emergency response and evacuation plans for flooding events, despite the foreseeable and well-known risk of flooding at the camp's location.

b. **Failure to Evacuate:** Defendants failed to evacuate the children from dangerous areas when flooding was imminent or when flood warnings were issued, and failed to evacuate once flooding began.

c. **Failure to Move Children to Safety:** Once flooding commenced, Defendants failed to move the children to higher ground or other safe locations in a timely manner.

Copy from re:SearchTX

d. **Dangerous Location of Cabins:** Defendants negligently housed children in cabins that were located in the flood plain and/or in areas known to be at high risk for flooding.

e. **Failure to Warn Parents:** Defendants failed to provide adequate advance warnings to parents about the historical flooding danger and the specific risks associated with the camp's location in flood plains.

f. **Failure to Monitor Weather:** Defendants failed to adequately monitor weather conditions and flood warnings to enable timely protective action.

g. **Inadequate Training:** Defendants failed to adequately train staff on emergency flood response procedures and evacuation protocols.

h. **Failure to Maintain Communication Systems:** Defendants failed to maintain adequate communication systems to alert staff and campers of the flooding danger and coordinate evacuation efforts.

i. **Negligent Hiring and Supervision:** Defendants negligently hired, trained, and supervised staff members who were responsible for the safety of the children.

j. **Violation of Industry Standards:** Defendants failed to comply with applicable industry standards for summer camps, including standards related to site selection, emergency preparedness, and risk management.

## VIII. CAUSES OF ACTION

### COUNT 1: NEGLIGENCE

22.     Plaintiffs incorporate by reference all previous paragraphs as if fully set forth herein.

23.     Defendants owed a duty to Plaintiffs' daughters to exercise reasonable care for their safety while they were attending Camp Mystic. Defendants owed a heightened duty of care because Plaintiffs' daughters were minor children who were entrusted to Defendants' care, custody, and supervision. Given the camp's location in a high-risk flood area known as "Flood Alley," Defendants owed a duty to take reasonable precautions against the foreseeable risk of catastrophic flooding.

24.     Defendants breached their duties of care as more fully set forth in paragraphs 20 (a) through (j) above. Defendants' breaches of duty were the direct and proximate cause of the

Copy from re:SearchTX

deaths of Plaintiffs' daughters. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered severe damages as detailed below.

### COUNT 2: GROSS NEGLIGENCE

25. Plaintiffs incorporate by reference all previous paragraphs as if fully set forth herein.

26. Defendants knew that cabins and facilities were in a designated flood zone. In fact, Defendants conceal this from the public. Specifically, Defendants appealed to FEMA to remove "100-year floodplain" designation from dozens of cabins. FEMA had included Camp Mystic in a "Special Flood Hazard Area" in its National Flood Insurance map for Kerr County in 2011. Because of this designation, Defendants were required to have flood insurance for Camp Mystic. The removal of these cabins from the FEMA floodplain map allowed Defendants to avoid or reduce flood insurance requirements and lower its insurance premiums.

But more importantly, removal of cabins from the FEMA flood plain allowed Defendants to advertise that Camp Mystic's facilities were "safe" from a known flood risk. This conduct cannot be legitimately viewed as anything other than the Defendants' motive, to prioritize profits over the safety of the campers, and transparency to parents and the public.

Defendants' conduct constituted gross negligence under Texas law. Defendants acted with conscious indifference to the rights, safety, and welfare of Plaintiffs' daughters and others. Defendants knew or should have known of the extreme degree of risk posed by operating a children's camp in "Flood Alley" without adequate safety measures and emergency response procedures. Despite this knowledge, Defendants proceeded with conscious indifference to the safety of the children in their care.

27. Defendants' gross negligence includes, but is not limited to:

Copy from re:SearchTX

a) Operating a children's camp in a known flood hazard area without implementing adequate flood safety and evacuation procedures;

b) Housing children in cabins located in the floodplain despite knowing the area's history of catastrophic flooding;

c) Failing to evacuate children when flooding was imminent or underway, despite the obvious and extreme risk to their lives;

d) Failing to warn parents about the specific and serious flood risks associated with the camp's location; and

e) Failing to implement or follow any reasonable emergency response plan despite the known and extreme danger.

28. Defendants' gross negligence was the direct and proximate cause of the deaths of Plaintiffs' daughters.

29. As a direct and proximate result of Defendants' gross negligence, Plaintiffs are entitled to exemplary damages in addition to actual damages.

## COUNT 3: BREACH OF EXPRESS AND IMPLIED WARRANTIES

30. Plaintiffs incorporate by reference all previous paragraphs as if fully set forth herein.

31. By accepting Plaintiffs' children as campers and accepting payment for camp services, Defendants made express and implied warranties regarding the safety and quality of the services to be provided.

32. Defendants expressly warranted through their marketing materials, website, brochures, and other communications that Camp Mystic provided a safe environment for children and that appropriate safety measures were in place.

Copy from re:SearchTX

33. Defendants impliedly warranted that the camp services would be fit for the particular purpose of providing a safe summer camp experience for minor children.

34. Defendants impliedly warranted that the camp services would be of merchantable quality and fit for the ordinary purposes for which such services are used.

35. Defendants breached these express and implied warranties by:

    a. Failing to provide a safe environment;

    b. Failing to implement adequate safety and emergency response measures;

    c. Operating the camp in a dangerous location without adequate safeguards; and

    d.  to protect the children from foreseeable harm.

36.  Defendants' breaches of warranty were a producing cause of the deaths of Plaintiffs' daughters and Plaintiffs' resulting damages.

## COUNT 4: FAILURE TO WARN

37. Plaintiffs incorporate by reference all previous paragraphs as if fully set forth herein.

38. Defendants had superior knowledge of the serious flood risks;

39. Defendants knew or should have known that the flood risks were not obvious to Plaintiffs or other reasonable parents considering enrolling their children at Camp Mystic.

40. Defendants had a duty to warn Plaintiffs of the specific and serious flood risks associated with the camp's location, including the camp's location in an area known as "Flood Alley" with a well-documented history of catastrophic flooding.

41. Defendants failed to provide adequate warnings to Plaintiffs regarding these serious and foreseeable risks and Camp Mystic's lack of emergency and evacuation plans;

Copy from re:SearchTX

42.    Had Defendants provided adequate warnings, Plaintiffs would not have enrolled their daughters at Camp Mystic.

43.    Defendants' failure to warn was a producing cause of the deaths of Plaintiffs' daughters.

## COUNT 5: PREMISES LIABILITY

44.    Plaintiffs incorporate by reference all previous paragraphs as if fully set forth herein.

45.    Plaintiffs' daughters were invitees on Defendants' premises.

46.    Defendants, as owners, operators, and/or controllers of the Camp Mystic premises, owed a duty to Plaintiffs' daughters to keep the premises in a reasonably safe condition and to warn of dangerous conditions that were not open and obvious.

47.    The dangerous conditions of the premises—specifically, the location of cabins and camp facilities in a floodplains— was known to Defendants or should have been known through the exercise of reasonable care.

48.    The dangerous conditions posed an unreasonable risk of harm to children attending the camp.

49.    Defendants failed to adequately protect against this danger or to provide adequate warnings.

50.    Plaintiffs' daughters did not know of the danger and could not reasonably have protected themselves from the danger given their age and the circumstances.

51.    The dangerous condition of the premises was a producing cause of the deaths of Plaintiffs' daughters.

Copy from re:SearchTX

## COUNT 6: WRONGFUL DEATH

52.     Plaintiffs incorporate by reference all previous paragraphs as if fully set forth herein.

53.     Plaintiffs bring this action pursuant to the Texas Wrongful Death Act, Texas Civil Practice and Remedies Code § 71.001 et seq.

54.     The wrongful acts, negligence, carelessness, unskillfulness, and gross negligence of Defendants caused the deaths of Plaintiffs' daughters.

55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered damages as set forth below, including but not limited to loss of companionship, society, love, affection, and support.

## COUNT 7: SURVIVAL ACTION

56.     Plaintiffs incorporate by reference all previous paragraphs as if fully set forth herein.

57.     Plaintiffs bring this action on behalf of the estates of their deceased daughters pursuant to the Texas Survival Statute, Texas Civil Practice and Remedies Code § 71.021.

58.     Before their deaths, Plaintiffs' daughters experienced conscious pain and suffering, horrific pre-impact terror, and mental anguish as the floodwaters rose and they faced imminent death.

59.     The estates of Plaintiffs' daughters are entitled to recover damages for this conscious pain and suffering, mental anguish, and other injuries sustained before death.

## COUNT 8: BREACH OF FIDUCIARY DUTY

60.     Plaintiffs incorporate by reference all previous paragraphs as if fully set forth herein.

Copy from re:SearchTX

61.    By accepting custody and care of Plaintiffs' minor daughters, Defendants assumed a fiduciary relationship and owed fiduciary duties to Plaintiffs and their daughters.

62.    These fiduciary duties included the duty to act in the best interests of the children, to exercise the highest degree of care for their safety, and to disclose material information affecting their welfare.

63.    Defendants breached these fiduciary duties by failing to protect the children from foreseeable harm, failing to implement adequate safety measures, and failing to disclose the serious flood risks.

64.    Defendants' breaches of fiduciary duty were a producing cause of the deaths of Plaintiffs' daughters and Plaintiffs' resulting damages.

## IV. DAMAGES

65.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer severe damages, including but not limited to:

    A.    <u>Wrongful Death Damages</u>

        a.    Loss of companionship, society, comfort, love, and affection;

        b.    Loss of advice, counsel, and guidance;

        c.    Mental anguish, emotional distress, and grief;

        d.    Loss of support and services;

        e.    Loss of inheritance and future contributions; and

        f.    All other elements of damages available under the Texas Wrongful Death Act.

    B.    <u>Survival Action Damages</u>

        g.    Conscious pain and suffering experienced by Plaintiffs' daughters before death;

        h.    Pre-impact terror and mental anguish;

Copy from re:SearchTX

        i.       Physical injuries sustained before death; and

        j.       all other elements of damages available under the Texas Survival Statute.

    C.      Exemplary Damages

        k.      Due to Defendants' gross negligence and conscious indifference to the safety of Plaintiffs' daughters, Plaintiffs are entitled to exemplary damages pursuant to Texas Civil Practice and Remedies Code Chapter 41.

    D.      Pre-Judgment and Post-Judgment Interest

        l.      Pre-judgment interest on all damages at the maximum rate allowed by law; and

        m.      Post-judgment interest at the rate provided by law.

66.    Plaintiffs seek damages in excess of the minimum jurisdictional limits of this Court but within the jurisdictional limits.

## X. JURY DEMAND

67.    Plaintiffs respectfully request a trial by jury on all issues so triable and have paid the requisite jury fee.

## XI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that Defendants be cited to appear and answer, and that upon final trial, Plaintiffs have judgment against Defendants, jointly and severally, for:

A. Actual damages in an amount within the jurisdictional limits of this Court;

B. Exemplary damages as allowed by law;

C. Pre-judgment interest at the maximum rate allowed by law;

D. Post-judgment interest at the rate provided by law;

E. Court costs;

F. Reasonable and necessary attorney's fees as allowed by law; and

Copy from re:SearchTX

G. Such other and further relief, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

**W. Mark Lanier**
State Bar of Texas # 11934600
Mark.lanier@lanierlawfirm.com
**Sam E. Taylor, II**
State Bar of Texas # 19722500
Sam.taylor@lanierlawfirm.com
**Sara E. Abston**
State Bar of Texas # 24131972
Sara.abston@lanierlawfirm.com

**LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N., Suite 100
Houston, TX 77064
Telephone: (713) 659-520
Facsimile: (713) 659-2204
**ATTORNEYS FOR PLAINTIFFS**

Copy from re:SearchTX

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tracy Regner on behalf of Sam Taylor
Bar No. 19722500
TAR@lanierlawfirm.com
Envelope ID: 107981263
Filing Code Description: Petition
Filing Description: Plaintiffs' OriginalPetition
Status as of 11/12/2025 5:11 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Sam Taylor | | sam.taylor@lanierlawfirm.com | 11/12/2025 5:08:05 PM | SENT |
| Sara Abston | | sara.abston@lanierlawfirm.com | 11/12/2025 5:08:05 PM | SENT |
| W. Mark Lanier | | wml@lanierlawfirm.com | 11/12/2025 5:08:05 PM | SENT |
| Cris Garcia | | Cris.garcia@lanierlawfirm.com | 11/12/2025 5:08:05 PM | SENT |

Copy from re:SearchTX

12/12/2025 9:43 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016
Candy Schmidt

CAUSE NO. D-1-GN-25-010016

| | | |
|---|---|---|
| COLE and ALLISON NAYLOR, Individually | § | IN THE DISTRICT COURT OF |
| and as Representatives and Heirs of | § | |
| the Estate of VIRGINIA WYNNE NAYLOR; | § | |
| W. DOUGLAS and CARRIE HANNA, | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of HADLEY REBECCA HANNA; | § | |
| LARS and LACEY HOLLIS, Individually | § | |
| and as Representatives and Heirs of the | § | |
| Estate of VIRGINIA LARINS HOLLIS; | § | |
| DAVIN and ANNE LINDSEY HUNT, | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of JANE MARIE HUNT; | § | |
| BRANDT and LISA DILLON, Individually | § | |
| and as Representatives and Heirs of the | § | |
| Estate of LUCY LEE DILLON; J. WADE and | § | |
| MALORIE LYTAL, Individually and as | § | |
| Representatives and Heirs of the Estate of | § | |
| KELLYANNE ELIZABETH LYTAL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CAMP MYSTIC, LLC; | § | |
| MYSTIC CAMPS FAMILY | § | |
| PARTNERSHIP, LTD.; | § | |
| MYSTIC CAMPS MANAGEMENT, LLC; | § | |
| NATURAL FOUNTAINS PROPERTIES, INC; | § | |
| WILLETTA A. EASTLAND, Individually | § | |
| and as DIRECTOR and VICE PRESIDENT of | § | |
| CAMP MYSTIC, LLC, and as SECRETARY | § | |
| of NATURAL FOUNTAINS | § | |
| PROPERTIES, INC.; | § | |
| GEORGE ALBRITTON EASTLAND, | § | |
| AS REPRESENTATIVE OF THE | § | |
| ESTATE OF RICHARD G. EASTLAND; | § | |
| EDWARD S. EASTLAND and | § | |
| MARY E. EASTLAND, Individually, | § | |
| *Defendants*. | § | 200th JUDICIAL DISTRICT |

**CAMP MYSTIC DEFENDANTS' MOTION TO TRANSFER VENUE**

TO THE HONORABLE JUDGE OF SAID COURT:

1

Copy from re:SearchTX

Come now CAMP MYSTIC, LLC; NATURAL FOUNTAINS PROPERTIES, INC.; MYSTIC CAMPS FAMILY PARTNERSHIP, LTD., MYSTIC CAMPS MANAGEMENT, LLC; GEORGE ALBRITTON EASTLAND, as Representative of the Estate of RICHARD EASTLAND, Deceased; WILLETTA A. EASTLAND, Individually and as Director and Vice President of Camp Mystic LLC; EDWARD S. EASTLAND; and MARY E. EASTLAND, hereinafter referred to as CAMP MYSTIC DEFENDANTS and files this Motion to Transfer Venue and would respectfully show the Court as follows:

## I.    INTRODUCTION

1.    This lawsuit arises out of the July 4, 2025, historic catastrophic flood in Hunt, Kerr County, Texas.  Travis County is not the proper venue for this case. None of the acts out of which this lawsuit arose occurred in Travis County.  Plaintiff has no viable claims against Defendants Mystic Camps Family Partnership, Ltd. and Mystic Camps Management, LLC. At the time of the July 4, 2025, flood Defendant, Willetta "Tweety" Eastland, was residing at Camp Mystic in Kerr County, Texas.  Plaintiffs have not named Richard "Dick" Eastland, deceased, as a Defendant. Plaintiffs have named as a Defendant in this suit George Albritton Eastland as Representative of the Estate of Richard Eastland, Deceased. An administration of the Estate of Richard Eastland is pending in Kerr County. George Albritton Eastland, Edward Eastland, and Mary Liz Eastland are all residents of Kerr County, Texas.

2.    To sustain venue in Travis County, there must be a valid cause of action against a Travis County resident defendant. In this case there is not. If this case goes to trial in Travis County, it will be tried in a county of improper venue. Trial in an improper venue is automatically harmful and reversible error. For these reasons, the case must be transferred to Kerr County, the only proper venue for this matter to be tried.

2

Copy from re:SearchTX

3.      Defendants specifically deny the venue facts as alleged by Plaintiffs.  Defendants specifically deny that Mystic Camps Family Partnership, Ltd. is a proper party to this litigation. Defendants specifically deny that Mystic Camps Family Partnership, Ltd. had any employee, much less employees with decision making authority, in Travis County on July 4, 2025, the date of the catastrophic flooding giving rise to this lawsuit.

4.      Defendants specifically deny that Mystic Camps Management, LLC is a proper party to this litigation.  Defendants specifically deny that Mystic Camps Management, LLC had any employee, much less employees with decision making authority, in Travis County on July 4, 2025, the date of the catastrophic flooding giving rise to this lawsuit.

5.      Defendants specifically deny the cause of action against Mystic Camps Family Partnership, Ltd. and Mystic Camps Management, LLC arises from the same transaction or occurrence as Plaintiffs' cause of action against the proper Defendants, Camp Mystic, LLC and Natural Fountains Properties, Inc.

6.      The case should also be transferred to Kerr County for the convenience of the parties and, in particular, the third-party witnesses. All relevant events in this lawsuit took place in Kerr County. Potential witnesses include camp staff members who reside in Kerr County and local Kerr County officials. Furthermore, a site visit may be necessary so that the factfinder can see and appreciate the layout of the property and its elevations and the extent of the flood's damage. In contrast, there is no particular relevance of Travis County to this case; substantially all of the events or occurrences that give rise to the Plaintiffs' suit took place in Kerr County.

7.      Defendants specifically deny that Willeta Eastland was physically residing in Travis County on July 4, 2025, the date of the catastrophic flooding giving rise to this lawsuit. Willetta Eastland was living in Kerr County at the time of this horrific flood.

3

Copy from re:SearchTX

## II.    BACKGROUND

8.    Plaintiffs allege causes of action against Defendants including negligence, gross negligence, and premises liability, among others as a result of the catastrophic flooding that occurred on July 4, 2025, in Hunt, Kerr County, Texas. The historic flood resulted in the loss of more than one hundred lives, and is the subject of a separately filed lawsuit pending in Kerr County in Cause Number 25476A, *Christie Floyd et. al v. Davis Investment Ventures, LLC d/b/a The Davis Companies*.

9.    Plaintiffs correctly assert that Camp Mystic ("the Camp") was operated by Camp Mystic, LLC, which leased the property upon which the Camp operates from Natural Fountain Properties, Inc. These are the only two entities which had any role in ownership, possession, or control over Camp Mystic.

10.    Mystic Camps Family Partnership, Ltd. is a holding company that has no role in ownership, possession or control over Camp Mystic. It does not have any employees or agents with decision making authority. It does not have any role in camp operations.

11.    Mystic Camps Management, LLC is a holding company that has no role in ownership, possession or control over Camp Mystic. It does not have any employees or agents with decision making authority. It does not have any role in camp operations.

12.    Willetta Eastland is the widow of Richard "Dick" Eastland, who also perished in the flood.  Willetta Eastland was a resident of Hunt, Kerr County, Texas at the time of the incident. Willetta Eastland was not residing in Travis County at the time of the incident.  Willetta Eastland is a resident of Kerr County at the time of the filing of this Motion to Transfer Venue.

13.    Plaintiffs filed this suit in Travis County.  Their venue choice rests on their incorrect allegation that Mystic Camps Family Partnership, Ltd and Mystic Camps Management, LLC are

4

Copy from re:SearchTX

proper parties to this lawsuit. These entities are not proper parties to the suit. Neither entity has any role in ownership, possession, or control over Camp Mystic. Neither entity has any employees. These entities exist purely for estate planning purposes of Willetta Eastland and Richard Eastland as a means of passing on the legacy of their life's work to their children. In that regard, the facts giving rise to Plaintiffs' claims have no connection to Travis County. The catastrophic flood event giving rise to Plaintiffs' claims occurred in Kerr County. The principal office of the Camp operates in Kerr County. All of the Eastlands resided at Camp Mystic, Kerr County, Texas, at the time of the July 4, 2025 flood. Accordingly, and as set forth more fully below, Defendants respectfully request the Court grant their Motion to Transfer Venue and Order this matter transferred to the District Court in Kerr County.

## III.    ARGUMENT & AUTHORITIES

### A.    Motion to Transfer Venue Standard

14.    Plaintiffs have the initial right to choose venue. However, an improper choice waives that right and gives a defendant the right to have the suit transferred to a proper venue. *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 & n.1 (Tex. 1994); *Union Carbide Corp. v. Loftin*, 256 S.W.3d 869, 874 (Tex. App.—Beaumont 2008, pet. dism'd). "Proper" venue is defined by statute as: "(1) the venue required by the mandatory provisions of Subchapter B ['Mandatory Venue'] or another statute prescribing mandatory venue; or (2) if Subdivision (1) does not apply, the venue provided by [the general venue rule] or Subchapter C ['Permissive Venue']." TEX. CIV. PRAC. & REM. CODE § 15.001(b).

15.    A defendant challenges a plaintiff's improper venue choice through a motion to transfer venue. TEX. R. CIV. P. 86.  Once challenged, the burden then shifts to the plaintiff to prove that venue is maintainable in the county of suit. TEX. R. CIV. P. 87(3)(a). If the plaintiff fails to

5

Copy from re:SearchTX

meet this burden, the trial court must transfer the lawsuit to another specified county of proper venue. *See* TEX. CIV. PRAC. & REM. CODE § 15.063; *Wilson*, 886 S.W.2d at 260.

**B.      Travis is an Improper County of Venue Because None of the Proper Defendants are Situated in Travis County.**

16.      Plaintiffs' choice of venue is improper because none of the proper defendants in this suit have a principal office in Travis County.  Specifically, Plaintiffs' venue allegations are that Mystic Camps Family Partnership, Ltd. and Mystic Camps Management, LLC's principal place of business are in Travis County, and that Willetta Eastland resides in Travis County. Defendants expressly deny these allegations. Tex. R. Civ. P. 87(3)(a).

17.      Venue is improper in Travis County because the venue defendant must be a material defendant for venue, based on that defendant's residence, to be proper. *See, e.g., T.S. Lankford & Sons, Inc. v. Harry Eldridge Co., Inc.,* 359 S.W.2d 663 (Tex. Civ. App. Texarkana 1962, writ dism'd) (there must be proof of a valid cause of action against the resident defendant to sustain venue against residents and nonresidents); *Union Pacific Railroad Co. v. Cezar*, 293 S.W.3d 800 (Tex. App. - Beaumont 2009, no pet.) (the sole defendant who was alleged to reside in the venue county was not a proper venue defendant, thus, because "trial in a county of improper venue is never harmless error," the court concluded that the case should be reversed and transferred to a proper county for a new trial) *Pines of Westbury, Ltd. v. Paul Michael Const., Inc.*, 993 S.W.2d 291 (Tex. App. Eastland 1999, no writ) (summary judgment in favor of only venue defendant destroyed proper venue and made denial of another defendant's earlier motion to transfer improper). As these cases demonstrate, if there is no valid claim against the alleged venue defendants, venue is improper in the county of suit, and on appeal, the case must be reversed and remanded for a new trial in the proper county of venue.

**i.      Mystic Camps Family Partnership, Ltd. and Mystic Camps Management, LLC, are not proper parties and cannot serve as a basis to establish venue.**

6

Copy from re:SearchTX

18.     The principal offices of Mystic Camps Family Partnership, Ltd. and Mystic Camps Management, LLC should not be used to establish venue in Travis County because they are improper parties in this lawsuit. Neither of these entities has any employees. They do not own, operate, or control Camp Mystic, nor do they have any other connection to the facts underlying this lawsuit.

19.     The county of a defendant's principal office in the state, if the defendant is not a natural person, is a permissible county of venue. TEX. CIV. PRAC. & REM. CODE §15.002(a)(3). A "principal office" is defined as a principal office of a corporation in which the decision makers for the organization within this state conduct the daily affairs of the organization. The mere presence of an agency or a representative does not establish a principal office. TEX. CIV. PRAC. & REM. CODE §15.001(a). The Texas Supreme Court has concluded that a corporation may have more than one principal office. *In re Missouri Pacific Railroad Co.*, 998 S.W.2d 212, 217 (Tex. 1999). Specifically, to establish venue based upon a principal office, a plaintiff must show: (1) the employees in the county where the lawsuit was filed are "decision makers" for the company and (2) the employees in the county where the lawsuit was filed have "substantially equal responsibility and authority" relative to other company officials within the state. *Id.*

20.     The case law makes it clear that there must be evidence that corporate decision makers exist to establish venue against the corporation.  Here, there are no such corporate decision makers and no principal place of business for Mystic Camps Family Partnership, Ltd. and Mystic Camps Management, LLC because there is no business for either entity to conduct.  Mystic Camps Family Partnership, Ltd. is a holding company that has no employees, that owns no real property, and has no role in Camp operations. Mystic Camps Management, LLC is a holding company that has no employees, that owns no real property, and has no role in Camp operations. Plaintiffs'

7

Copy from re:SearchTX

strategic decision to include these entities in the suit was purely for venue purposes based on the mailing address of these holding companies.

### ii.    Plaintiffs' live pleading establishes venue is improper in Travis County.

21.    There is no dispute that the events which brought about this litigation occurred in Hunt, Kerr County, Texas. Plaintiffs' pleadings correctly assert that the Camp is operated by Camp Mystic, LLC and the property is owned by Natural Fountains Properties, Inc. Both of these entities operate their place of business in Kerr County, where the Camp is located. Plaintiffs assert no facts which demonstrate Mystic Camps Family Partnership, Ltd. or Mystic Camps Management, LLC had a role in Camp operations or in the alleged acts or omissions giving rise to Plaintiffs' causes of actions.

22.    Despite conceding that the Eastland family have controlled the operations of Camp Mystic, located in Kerr County, Texas, for generations, and alleging Willetta Eastland was involved in acts or omissions that occurred in Kerr County, Texas, Plaintiffs improperly seek to establish venue in Travis County. It is clear from the facts that the only proper venue for this case is in Kerr County, where the two entities responsible for Camp Mystic operations and control of Camp Mystic property maintain their principal place of business, and where administration of the estate of Richard Eastland is pending.

### C.    In the alternative, this case should be transferred to Kerr County for the convenience of the parties and witnesses.

23.    Under Texas Civil Practice and Remedies Code Section 15.002, a court may transfer venue to another county of proper venue for the convenience of the parties and the witnesses and in the interests of justice. As discussed above, substantially all of the relevant events that make up the basis of this suit took place in Kerr County, Texas. The flooding took place there and the relevant acts of the proper Defendants took place there.

<div align="center">8</div>

Copy from re:SearchTX

24.     Beyond the Eastland family members, other relevant non-party witnesses also reside and work in Kerr County. Potential witnesses include camp staff that live in Kerr County, who might be called upon to testify about camp conditions and procedures. They also include local Kerr County officials, who might be called upon to testify about conditions on July 4th, emergency responses, systems for notification and warning, and the causes and effects of the July 4th flood. None of them have any particular relation to Travis County.

25.     It may also be necessary or advisable for the factfinder to make a site visit in order to truly understand the camp layout and elevation, to see the relationships between the Guadalupe River and various camp buildings, and to understand the effects of the flooding, in a way that maps and two-dimensional representations cannot convey. Such a visit will only be possible if the case is transferred to Kerr County.

26.     Finally, there is no prejudice to the Plaintiffs for the case to be transferred to Kerr County. The Plaintiffs reside in numerous places around the state, and there is no particular connection between Travis County and the events of July 4th. The Court should therefore transfer the case to Kerr County for the convenience of the parties and witnesses and in the interests of justice.

## IV.    SUMMARY AND CONCLUSION

27.     Plaintiffs improperly seek to fix venue in Travis County based on the joinder of two corporate entities who have no employees, no principal place of business, no decision making employees, and no connection to the facts underlying this lawsuit. None of the acts out of which this lawsuit arose occurred in Travis County.  Accordingly, venue in Travis County is improper and maintenance of this suit in Travis County constitutes harmful and reversible error. Even if this case were properly in Travis County, it should be transferred to Kerr County, as substantially all

9

Copy from re:SearchTX

of the witnesses reside there and substantially all of the events took place there. For these reasons, this matter must be transferred to Kerr County.

**WHEREFORE, PREMISES CONSIDERED,** Defendants request that this matter be set for hearing with notice to all parties, and that after such hearing, that the Court grant Defendant's Motion to Transfer Venue, and transfer the above styled and numbered cause to Kerr County, Texas. Defendant further prays that any costs of court incurred before the transfer be taxed against Plaintiff and for such other and further relief, at law or in equity, to which Defendant may show itself justly entitled.

Respectfully submitted,

**RAY | PEÑA | MCCHRISTIAN, P.C.**
9601 McAllister Freeway, Suite 901
San Antonio, Texas 78216
P: (210) 341-3554
F: (210) 341-3557

By:    */s/ Jeff Ray*
JEFF RAY
State Bar No. 16604400
jray@raylaw.com
*Attorney for Camp Mystic, LLC and George Albritton Eastland, as Representative of the Estate of Richard Eastland, Deceased*

**WATTS LAW FIRM LLP**
110 Tributary Ranch Road
Mountain Home, Texas 78058
P: (512) 479-0500

*/s/Mikal Watts*
MIKAL WATTS
State Bar No. 20981820
mikal@wattsllp.com
*Attorney for Natural Fountains Properties, Inc.; Willetta A. Eastland, Individually and as Director and Vice President of Camp Mystic, LLC; Mystic Camps Family*

10

Copy from re:SearchTX

*Partnership, Ltd., and Mystic Camps Management, LLC*

**CASTAGNA SCOTT LLP**
1120 S. Capital of Texas Highway
Building 2, Suite 300
Austin, Texas 78746
512/329-3290
888/255-0132 fax

 */s/ Lynn S. Castagna*
LYNN S. CASTAGNA
State Bar No. 03980520
Lynn@texasdefense.com
*Attorney for Edward S. Eastland and Mary E. Eastland*

**WRIGHT CLOSE BARGER & GUZMAN, LLP**
One Riverway, Suite 2200
Houston, Texas 77056
Telephone: (713) 572-4321
Facsimile: (713) 572-4320

*/s/Thomas C. Wright*
Thomas C. Wright
State Bar No. 22059400
wright@wrightclosebarger.com
Jessica Z. Barger
State Bar No. 24032706
barger@wrightclosebarger.com
Kenneth J. Fair
State Bar No. 24007171
fair@wrightclosebarger.com
*Attorneys for Camp Mystic, LLC*

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that a true and correct copy of the foregoing instrument has been served to all counsel of record in accordance with Texas Rule of Civil Procedure 21 on December 12, 2025.

*/s/ Jeff Ray*
**JEFF RAY**

11

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Linda Gonzales on behalf of Jeff Ray
Bar No. 16604400
lgonzales@raylaw.com
Envelope ID: 109065744
Filing Code Description: Motion (No Fee)
Filing Description: CAMP MYSTIC DEFENDANTS' MOTION TO TRANSFER VENUE
Status as of 12/14/2025 3:12 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| W. Mark Lanier | | wml@lanierlawfirm.com | 12/12/2025 9:43:14 PM | SENT |
| Sam Taylor | | sam.taylor@lanierlawfirm.com | 12/12/2025 9:43:14 PM | SENT |
| Sara Abston | | sara.abston@lanierlawfirm.com | 12/12/2025 9:43:14 PM | SENT |
| Cris Garcia | | Cris.garcia@lanierlawfirm.com | 12/12/2025 9:43:14 PM | SENT |
| Jeff Ray | | jray@raylaw.com | 12/12/2025 9:43:14 PM | SENT |
| Linda Gonzales | | lgonzales@raylaw.com | 12/12/2025 9:43:14 PM | SENT |
| Katherine Estrada | | kestrada@raylaw.com | 12/12/2025 9:43:14 PM | SENT |
| Laura Rua | | lrua@raylaw.com | 12/12/2025 9:43:14 PM | SENT |
| Mikal Watts | | mikal@wattsllp.com | 12/12/2025 9:43:14 PM | SENT |
| Kenneth Fair | | fair@wrightclosebarger.com | 12/12/2025 9:43:14 PM | SENT |
| Tom Wright | | wright@wrightclosebarger.com | 12/12/2025 9:43:14 PM | SENT |
| Jessica Barger | | barger@wrightclosebarger.com | 12/12/2025 9:43:14 PM | SENT |
| Lynn Castagna | | lynn@texasdefense.com | 12/12/2025 9:43:14 PM | SENT |
| Larry Matthys | | lmatthys@raylaw.com | 12/12/2025 9:43:14 PM | SENT |
| Suzanne Goss | | goss@wrightclosebarger.com | 12/12/2025 9:43:14 PM | SENT |

Copy from re:SearchTX

12/12/2025 10:12 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016
Susan Poodiack

CAUSE NO. D-1-GN-25-010016

| | | |
|---|---|---|
| COLE and ALLISON NAYLOR, Individually | § | IN THE DISTRICT COURT OF |
| and as Representatives and Heirs of | § | |
| the Estate of VIRGINIA WYNNE NAYLOR; | § | |
| W. DOUGLAS and CARRIE HANNA, | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of HADLEY REBECCA HANNA; | § | |
| LARS and LACEY HOLLIS, Individually | § | |
| and as Representatives and Heirs of the | § | |
| Estate of VIRGINIA LARINS HOLLIS; | § | |
| DAVIN and ANNE LINDSEY HUNT, | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of JANE MARIE HUNT; | § | |
| BRANDT and LISA DILLON, Individually | § | |
| and as Representatives and Heirs of the | § | |
| Estate of LUCY LEE DILLON; J. WADE and | § | |
| MALORIE LYTAL, Individually and as | § | |
| Representatives and Heirs of the Estate of | § | |
| KELLYANNE ELIZABETH LYTAL, | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CAMP MYSTIC, LLC; | § | |
| MYSTIC CAMPS FAMILY | § | |
| PARTNERSHIP, LTD.; | § | |
| MYSTIC CAMPS MANAGEMENT, LLC; | § | |
| NATURAL FOUNTAINS PROPERTIES, INC; | § | |
| WILLETTA A. EASTLAND, Individually | § | |
| and as DIRECTOR and VICE PRESIDENT of | § | |
| CAMP MYSTIC, LLC, and as SECRETARY | § | |
| of NATURAL FOUNTAINS | § | |
| PROPERTIES, INC.; | § | |
| GEORGE ALBRITTON EASTLAND, | § | |
| AS REPRESENTATIVE OF THE | § | |
| ESTATE OF RICHARD G. EASTLAND; | § | |
| EDWARD S. EASTLAND and | § | |
| MARY E. EASTLAND, Individually, | § | |
| *Defendants*. | § | 200th JUDICIAL DISTRICT |

## CAMP MYSTIC DEFENDANTS' ORIGINAL ANSWER SUBJECT TO MOTION TO TRANSFER VENUE

To the Honorable District Court Judge:

1

Copy from re:SearchTX

Come now, CAMP MYSTIC, LLC; MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.; MYSTIC CAMPS MANAGEMENT, LLC; NATURAL FOUNTAINS PROPERTIES, INC.; WILLETTA A. EASTLAND, Individually and as DIRECTOR and VICE PRESIDENT of CAMP MYSTIC, LLC, and as SECRETARY of NATURAL FOUNTAINS PROPERTIES, INC., GEORGE ALBRITTON EASTLAND, as Representative of the Estate of RICHARD G. EASTLAND; EDWARD S. EASTLAND; and MARY E. EASTLAND, hereinafter referred to as CAMP MYSTIC DEFENDANTS, and file their Original Answer to Plaintiffs' Original Petition filed subject to their Motions to Transfer Venue, and would respectfully state the following:

## I.    TRCP 92 DEFENSES

1.    Camp Mystic defendants, pursuant to Texas Rule of Civil Procedure 92, invoke the protections available to them under Texas Law and demand legally sufficient proof of the accusations asserted against them by a preponderance of the legal evidence or clear and convincing evidence where required by Texas law, as opposed to speculation   or conjecture. Camp Mystic defendants respectfully request that the Court hold Plaintiffs to the burden required by the laws and the constitution of the State of Texas.

## II.    BACKGROUND AND AFFIRMATIVE DEFENSES

Camp Mystic defendants answer and provide background information and affirmative defenses in response to Plaintiffs' pleadings.

2.    On the morning of July 4, 2025, the most devasting flood known in the history of Kerr County, TX occurred. Extreme rainfall and massive surges of rapidly moving floodwaters devastated Kerr County, and the communities of Hunt, Ingram, and Kerrville, Texas. At least 135 people lost their lives, including 28 lives lost at Camp Mystic.  Weather data from multiple scientific sources confirmed and determined that a convergence of severe weather systems, rather

2

Copy from re:SearchTX

than continuing to move through the area (as was anticipated by weather and radar information), literally stopped and sat upstream and over Camp Mystic and surrounding areas, pouring over 100 billion gallons of water in the Kerr County area within hours.



USGS Stage Data



3

Copy from re:SearchTX

3.      Notably, over 10 billion gallons of water fell in less than 3 hours in the South Fork of the Guadalupe River, upstream from Camp Mystic.  This volume of water that fell in the South Fork is more than the amount of water that flows over Niagara Falls during  the same time period.



USGS Flow Data

4.      The Guadalupe River rose dramatically to more than 26 feet in less than 45 minutes. Kerrville recorded a rise in the Guadalupe River at over 32 feet in 1.5 hours. Camp Mystic, as well as other residences, experienced catastrophic and sudden flooding, combined with rapidly moving water that overwhelmed the camp, residences, and communities. As the chart below reveals, the gallons per second of rainfall was negligible at midnight. The gallons of rainfall per second at 3:00 AM had increased in intensity but would not have been expected to come near or reach any structures at Camp Mystic. Dramatically, and unexpectedly, according to  weather

4

Copy from re:SearchTX

data, shortly before 3:30 AM, the rainfall became catastrophic, unprecedented, and quickly overwhelmed the Kerr County area. The graphic below charts the unprecedented sudden rainfall event.



| | |
|---|---:|
| 12:00 AM | 53 |
| 3:00 AM | 264 |
| 3:30 AM | 125,000 |

5. The graphic below is provided by the National Oceanic and Atmospheric Administration (NOAA). A NOAA National Water Protection Service Gauge data visibly demonstrates the sudden and dramatic rise in the surge of water that overwhelmed Camp Mystic, residences and communities within its destructive path. During the critical times of evacuating all campers, Camp Mystic was hit with a sudden and overwhelming surge of water that engulfed the camp. Within a matter of moments, water levels at the Guadalupe River rose from less than 5 feet

5

Copy from re:SearchTX

to over 20 feet. Further, the flood waters continued to violently rise to higher and higher levels, cresting at over 34 feet.





6

Copy from re:SearchTX

6.      Scientific data further confirmed that this catastrophic flooding far exceeded any prior flood recorded in the Camp Mystic area by significant magnitudes. The historical data demonstrates that prior flood history, including the floods of 1932, 1978, and 1984 and 1987, were all below the elevations of Camp Mystic's Twins and Bubble Inn cabins, and below the 100-year floodplain. Twins Cabin has been in existence since at least 1927. Neither of these cabins had experienced previous flooding. On July 4, 2025, flood waters suddenly rose not only to the floor elevations of these cabins, but to the ceilings and beyond. Kerr County Engineers and officials documented and confirmed that the devasting flood is clearly beyond a 1,000-year flood event, completely off the charts, and never anticipated.



7.      Camp Mystic defendants therefore deny Plaintiffs' allegations that the cabins where the children, counselors and camp director perished had experienced prior flooding. These allegations are false.

8.      Camp Mystic was not provided with an evacuation notification until well after the sudden swell and surge of water had already engulfed the camp and lives were lost. Emergency personnel requested Code Red alerts at 4:22 AM; however, the authorization for such alert was not

7

Copy from re:SearchTX

issued until 40 minutes later, at approximately 5:02 AM. Regardless, Camp Mystic had suffered catastrophic flooding and loss of lives long before the evacuation alert.

9.      Camp Mystic and surrounding residences were not provided with sirens, flood warning systems, or floodwater monitoring systems that could have provided warnings of the surging waters moving toward Camp Mystic. Despite recommendations and proposals for state-of-the-art warning systems, warning systems along the waterways were not provided. Along with other camp directors in the area, Dick Eastland—who died while trying to rescue campers from the raging floodwaters, —advocated for such systems to be put in place.



10.     Weather alerts that were provided were issued after 1:14 AM. The notification was flash flood warning alerts for Highway 39. Highway 39 is located adjacent to the Guadalupe River around Camp Mystic, other camps, residences, and Hunt, TX.

8

Copy from re:SearchTX



11.    The flash flood warning of 1:14 AM was not an evacuation notice or evacuation alert. It was not a life-threatening situation notice. There were no alerts to evacuate or leave the area before the sudden and unexpected rush of floodwater occurred.

12.    While Camp Mystic was already engulfed by the surging waters at 3:35 AM,  the National Weather Service issued a warning at 3:35 AM, noting an Emergency Alert flash flood warning that was a dangerous and life-threatening situation. The Emergency Alert continued to warn people not to attempt to travel.

13.    Camp Mystic had already begun evacuations from the cabins near 3:00 AM and prior to the 3:35 A.M. warning. Over 150 campers and counselors had been evacuated before the sudden surge and rise of rapid floodwaters came through the camp. As images demonstrate below, by the time the 3:35 AM flash flood life-threatening warning was issued, Camp Mystic was already

9

experiencing the sudden surge and rise of rapid floodwaters that went from ground level to levels that reached ceilings and beyond in several cabins.

14.     The photograph below was taken at 3:23 AM and shows campers continuing to evacuate to the Rec Center.



The photograph below demonstrates that within a few minutes, the water level rose rapidly during the evacuations.

10

Copy from re:SearchTX



15.    Plaintiffs' accusations that Camp Mystic defendants were warned to evacuate and did virtually nothing, is  false.

16.    Plaintiffs' accusations that Dick Eastland, deceased, Edward Eastland, and other Camp Mystic personnel failed to monitor weather conditions is also false. On the contrary, camp personnel monitored the weather. Dick Eastland and others monitored weather information multiple times from a camp weather station, through the internet, and through other communications. Some cell phone data shown below from Dick Eastland's cell phone is just one example of ongoing monitoring of the weather by the camp.

11

Copy from re:SearchTX

| | | | |
|---|---|---|---|
| com.chaney.MyAcuRite | Start time: 7/4/2025 1:00:23 AM(UTC-5)<br><br>End time: 7/4/2025 1:01:41 AM(UTC-5) | | |
| com.geoterrestrial.noaaradar | Start time: 7/4/2025 12:56:36 AM(UTC-5)<br><br>End time: 7/4/2025 1:00:22 AM(UTC-5) | com.chaney.MyAcuRite | Start time: 7/4/2025 1:15:44 AM(UTC-5)<br><br>End time: 7/4/2025 1:16:25 AM(UTC-5) |
| com.chaney.MyAcuRite | Start time: 7/4/2025 12:55:15 AM(UTC-5)<br><br>End time: 7/4/2025 12:56:08 AM(UTC-5) | com.apple.weather | Start time: 7/4/2025 1:13:44 AM(UTC-5)<br><br>End time: 7/4/2025 1:15:11 AM(UTC-5) |
| com.geoterrestrial.noaaradar | Start time: 7/4/2025 12:53:06 AM(UTC-5)<br><br>End time: 7/4/2025 12:55:10 AM(UTC-5) | com.geoterrestrial.noaaradar | Start time: 7/4/2025 1:13:08 AM(UTC-5)<br><br>End time: 7/4/2025 1:13:40 AM(UTC-5) |
| com.chaney.MyAcuRite | Start time: 7/4/2025 12:42:38 AM(UTC-5)<br><br>End time: 7/4/2025 12:45:18 AM(UTC-5) | | |

| | | | |
|---|---|---|---|
| com.chaney.MyAcuRite | Start time: 7/4/2025 2:06:10 AM(UTC-5)<br><br>End time: 7/4/2025 2:06:18 AM(UTC-5) | com.chaney.MyAcuRite | Start time: 7/4/2025 2:26:54 AM(UTC-5)<br><br>End time: 7/4/2025 2:26:56 AM(UTC-5) |
| com.chaney.MyAcuRite | Start time: 7/4/2025 2:06:05 AM(UTC-5)<br><br>End time: 7/4/2025 2:06:07 AM(UTC-5) | com.chaney.MyAcuRite | Start time: 7/4/2025 2:13:01 AM(UTC-5)<br><br>End time: 7/4/2025 2:14:59 AM(UTC-5) |
| com.chaney.MyAcuRite | Start time: 7/4/2025 2:03:55 AM(UTC-5)<br><br>End time: 7/4/2025 2:06:05 AM(UTC-5) | com.geoterrestrial.noaaradar | Start time: 7/4/2025 2:12:21 AM(UTC-5)<br><br>End time: 7/4/2025 2:13:01 AM(UTC-5) |

12

Copy from re:SearchTX

17.    No weather service, no radar, and no governmental agency anticipated, forecasted nor expected the more than 1,000 year  unprecedented and historic flood of July 4, 2025.  The weather data demonstrates that the July 4, 2025 sudden flooding far exceeded any previous flood in the area.

18.    Camp Mystic is  regulated by the State of Texas through inspections of its facility, policies, and procedures. Two days prior to July 4, 2025, state inspections by DSHS were again conducted, and no deficiencies or violations were cited or noted.



**TEXAS DEPARTMENT OF STATE HEALTH SERVICES**
Consumer Protection Division
PO Box 149347, Austin, TX 78714
(512) 834-6660

| Facility Name | CAMP MYSTIC INC | License Type | Youth Camp License |
|---|---|---|---|
| Facility Address | 2689 HWY 39 HUNT TX 78024 | License Number | 133010 |
| Inspection Type | Discretionary/Special | Inspection Number | 15818 |
| Inspector | ZAMARRIPA, MARICELA | Inspection Date | 07/02/2025 |

This notice is to acknowledge that the Texas Department of State Health Services (DSHS) conducted an inspection of or visited your business on the date listed above. The information that has been gathered is subject to further department review, and you may receive additional correspondence as a result.

There is no deficiency/violation cited or noted within the scope of this inspection/visit.

19.    Plaintiffs' accusation that the Twins and Bubble Inn cabins are within the 100-year FEMA determined flood zone is false. Engineering surveys confirm that all cabin floor elevations are above the FEMA determined elevations, including  the Twins and Bubble Inn cabins.

13

Copy from re:SearchTX

Below is an illustration of the FEMA base flood elevation levels shaded in green.



The illustrations below show the contrast between the FEMA base flood elevations and the

historic flood levels of July 4, 2025, shaded in green.



14

Copy from re:SearchTX

The illustration below further shows the historic flooding level of July 4, 2025 compared to the FEMA base flood elevation.



The accusation that Camp Mystic somehow changed or altered the FEMA determined 100-year floodplain elevation is false. 100-year Floodplain elevation altitudes are set and determined by FEMA. These elevations have not changed. Any engineering or surveying professional who has performed such a survey confirms that elevations of structures are above the 100-year floodplain. FEMA confirmed that the surveys were correct. Plaintiffs were offered the opportunity to conduct surveys and inspections to confirm these elevations and findings that FEMA has also confirmed.

15

Copy from re:SearchTX

**DETERMINATION**

| LOT | BLOCK/ SECTION | SUBDIVISION | STREET | OUTCOME WHAT IS REMOVED FROM THE SFHA | FLOOD ZONE | 1% ANNUAL CHANCE FLOOD ELEVATION (NAVD 88) | LOWEST ADJACENT GRADE ELEVATION (NAVD 88) | LOWEST LOT ELEVATION (NAVD 88) |
|---|---|---|---|---|---|---|---|---|
| -- | -- | -- | 2689 Highway 39 | Structure (Building 13) | X (shaded) | 1838.5 feet | 1843.5 feet | -- |

**Special Flood Hazard Area (SFHA)** - The SFHA is an area that would be inundated by the flood having a 1-percent chance of being equaled or exceeded in any given year (base flood).

ADDITIONAL CONSIDERATIONS (Please refer to the appropriate section on Attachment 1 for the additional considerations listed below.)

DETERMINATION TABLE (CONTINUED)
PORTIONS REMAIN IN THE FLOODWAY

This document provides the Federal Emergency Management Agency's determination regarding a request for a Letter of Map Amendment for the property described above. Using the information submitted and the effective National Flood Insurance Program (NFIP) map, we have determined that the structure(s) on the property(ies) is/are not located in the SFHA, an area inundated by the flood having a 1-percent chance of being equaled or exceeded in any given year (base flood). This document amends the effective NFIP map to remove the subject property from the SFHA located on the effective NFIP map; therefore, the Federal mandatory flood insurance requirement does not apply. However, the lender has the option to continue the flood insurance requirement to protect its financial risk on the loan.

This determination is based on the flood data presently available. The enclosed documents provide additional information regarding this determination. If you have any questions about this document, please contact the FEMA Mapping and Insurance eXchange (FMIX) toll free at (877) 336-2627 (877-FEMA MAP) or by letter addressed to the Federal Emergency Management Agency, LOMC Clearinghouse, 3601 Eisenhower Avenue, Suite 500, Alexandria, VA 22304-6426.

Luis V. Rodriguez, P.E., Director
Engineering and Modeling Division
Federal Insurance and Mitigation Administration

20.     Unlike Camp Mystic, according to the Texas Water Development Board, there are millions of people in Texas who live near or within a 100-year floodplain map. These structures include houses, dormitories, living quarters and related housing. These structures have been deemed to be reasonably safe and adequate for housing.

16

Copy from re:SearchTX



Copy from re:SearchTX



21.     Plaintiffs' accusations that Camp Mystic has experienced floods similar to the magnitude of July 4, 2025, are false. As previously noted, scientific data clearly demonstrates that prior floods, including the floods of 1932, 1978, and 1985, were well below the elevations of Camp Mystic's Twins and Bubble Inn cabins, and well below the 100-year floodplain. Twins Cabin, in existence since at least 1927, has no flooding history. Bubble Inn, adjacent to Twins, likewise has no flooding history. Plaintiffs' accusation that the cabins where the children, counselors, and Dick Eastland perished had experienced prior flooding is false.

22.     Pleading further, Plaintiffs' damages were caused directly and exclusively by the violence of nature, without human intervention or cause, and could not have been prevented by reasonable foresight or care. Specifically, the damages for which Plaintiffs seek recovery were caused by a more than 1,000-year flood event which occurred on July 4, 2025.

18

Copy from re:SearchTX

23.     The flood event underlying this lawsuit was an event not proximately caused by the negligence of any party to the occurrence.

24.     Plaintiffs' damages were the result of independent, intervening, superseding, or supervening factors, occurrences, or conditions that were not caused by Camp Mystic, LLC.

25.     Camp Mystic Defendants plead and rely upon the legislative limitations on damages under Texas law as set forth in all applicable provisions of the Texas Civil Practice and Remedies Code, including but not limited to Section 41.0105.

26.     Camp Mystic defendants plead and rely upon the legislative limitations of liability and damages available under Chapter 75 of the Texas Civil Practice and Remedies Code.

27.      Camp Mystic defendants plead and rely upon the provisions of Civil Practice and Remedies Code Sec. 171 applicable to this matter and assert all defenses available under these sections.

28.      Camp Mystic defendants plead their compliance with FEMA's Letter of Map Amendment (LOMA), and as such, are excluded from FEMA's "floodplain," as defined in Section 762.001(4) of the Texas Health & Safety Code.  Any allegation alleging Camp Mystic's role concerning FEMA's Letter of Map Amendment is therefore preempted by the Supremacy Clause of Article VI, Clause 2 of the United States Constitution.

29.     Camp Mystic defendants hereby invoke the doctrine of comparative fault under applicable law, and request a determination of percentage of any responsibility among responsible third parties, any settling persons, and parties. Camp Mystic defendants plead any and all provisions of Chapters 32 and 33 of the Texas Civil Practice and Remedies Code applicable to this action.

19

Copy from re:SearchTX

30.     Under Texas law, any award of prejudgment interest must be governed and limited by the provisions of Chapter 304, Subchapter B of the Texas Finance Code.

31.     Camp Mystic defendants assert the affirmative defenses of waiver and release.

32.     Camp Mystic defendants assert, where applicable,  the exclusive remedy under Section 408.001 of the Texas Labor Code.

33.     Defendants assert that Mystic Camps Family Partnership, Ltd. and Mystic Camps Management, LLC, are not liable in the capacity in which they have been sued.

34.     Camp Mystic defendants reserve the right to assert such other defenses as continuing investigation and discovery may reveal, and the right to amend or supplement this Answer at any time.

35.     Camp Mystic defendants further plead that any exemplary damages, if plead and found, must be capped under applicable Texas law, and the Due Process Clause of the United States and Texas Constitutions.

WHEREFORE, PREMISES CONSIDERED, Defendant Camp Mystic defendants pray for judgment in their favor, that Defendants recover  costs, and for such other and further relief to which they may show themselves  justly entitled.

Respectfully submitted,

**WATTS LAW FIRM LLP**
110 Tributary Ranch Road
Mountain Home, Texas 78058
P: (512) 479-0500

*/s/Mikal Watts*
MIKAL WATTS
State Bar No. 20981820
mikal@wattsllp.com
*Attorney for Natural Fountains Properties,*
*Inc.; Willetta A. Eastland, Individually and*
*as Director and Vice President of Camp*

20

Copy from re:SearchTX

*Mystic, LLC; Mystic Camps Family Partnership, Ltd., and Mystic Camps Management, LLC*

**RAY | PEÑA, P.C.**
9601 McAllister Freeway, Suite 901
San Antonio, Texas 78216
P: (210) 341-3554
F: (210) 341-3557

*/s/ Jeff Ray*
JEFF RAY
State Bar No. 16604400
jray@raylaw.com
*Attorney for Camp Mystic, LLC and George Albritton Eastland, as Representative of the Estate of Richard Eastland, Deceased*


**CASTAGNA SCOTT LLP**
1120 S. Capital of Texas Highway
Building 2, Suite 300
Austin, Texas 78746
512/329-3290
888/255-0132 fax

*/s/ Lynn S. Castagna*
LYNN S. CASTAGNA
State Bar No. 03980520
Lynn@texasdefense.com
*Attorney for Edward S. Eastland and Mary E. Eastland*


**WRIGHT   CLOSE   BARGER   & GUZMAN, LLP**
One Riverway, Suite 2200
Houston, Texas 77056
Telephone: (713) 572-4321
Facsimile: (713) 572-4320

*/s/Thomas C. Wright*
Thomas C. Wright
State Bar No. 22059400
wright@wrightclosebarger.com
Jessica Z. Barger

21

Copy from re:SearchTX

State Bar No. 24032706
barger@wrightclosebarger.com
Kenneth J. Fair
State Bar No. 24007171
fair@wrightclosebarger.com
*Attorneys for Camp Mystic, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served to all counsel of record in accordance with Texas Rule of Civil Procedure 21 on December 12, 2025.


*/s/ Jeff Ray*
**JEFF RAY**

22

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Linda Gonzales on behalf of Jeff Ray
Bar No. 16604400
lgonzales@raylaw.com
Envelope ID: 109065909
Filing Code Description: Answer/Response
Filing Description: CAMP MYSTIC DEFENDANTS ORIGINAL ANSWER SUBJECT TO MOTION TO TRANSFER VENUE
Status as of 12/15/2025 9:39 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| W. Mark Lanier | | wml@lanierlawfirm.com | 12/12/2025 10:12:31 PM | SENT |
| Sam Taylor | | sam.taylor@lanierlawfirm.com | 12/12/2025 10:12:31 PM | SENT |
| Sara Abston | | sara.abston@lanierlawfirm.com | 12/12/2025 10:12:31 PM | SENT |
| Cris Garcia | | Cris.garcia@lanierlawfirm.com | 12/12/2025 10:12:31 PM | SENT |
| Jeff Ray | | jray@raylaw.com | 12/12/2025 10:12:31 PM | SENT |
| Linda Gonzales | | lgonzales@raylaw.com | 12/12/2025 10:12:31 PM | SENT |
| Katherine Estrada | | kestrada@raylaw.com | 12/12/2025 10:12:31 PM | SENT |
| Laura Rua | | lrua@raylaw.com | 12/12/2025 10:12:31 PM | SENT |
| Mikal Watts | | mikal@wattsllp.com | 12/12/2025 10:12:31 PM | SENT |
| Kenneth Fair | | fair@wrightclosebarger.com | 12/12/2025 10:12:31 PM | SENT |
| Tom Wright | | wright@wrightclosebarger.com | 12/12/2025 10:12:31 PM | SENT |
| Jessica Barger | | barger@wrightclosebarger.com | 12/12/2025 10:12:31 PM | SENT |
| Lynn Castagna | | lynn@texasdefense.com | 12/12/2025 10:12:31 PM | SENT |
| Larry Matthys | | lmatthys@raylaw.com | 12/12/2025 10:12:31 PM | SENT |
| Suzanne Goss | | goss@wrightclosebarger.com | 12/12/2025 10:12:31 PM | SENT |

Copy from re:SearchTX

3/2/2026 3:34 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016
Nancy Rodriguez

# REQUEST FOR ORDER PERMITTING RECORDING

# CAUSE NO. D-1-GN-26-000758

**STEWARD, CICI and STEWARD, WILL,** Plaintiffs v. **BONNER, WILLIAM NEELY, et al.,** Defendants

IN THE DISTRICT COURT OF TRAVIS COUNTY, TEXAS - **459TH JUDICIAL DISTRICT**

TO THE HONORABLE JUDGE OF SAID COURT:

My name is **William Crouse**. I am a documentary filmmaker/journalist and request a **written order** permitting limited **recording** of the court proceeding in the above-referenced cause currently set for **Wednesday, March 4, 2026, at 9:00 AM** (the "Proceeding"). The Proceeding is listed as a **Temporary Restraining Order** setting, with an estimated setting length of **three (3) hours**, set by **Plaintiff**.

This request is submitted pursuant to **Travis County Civil District Courts Local Rules, Chapter 16**, which provides that recording/photographing inside a physical or virtual courtroom is **not permitted absent prior Court authorization**, and is **permitted only on written order of the Court** following a filed request containing specific information.

**1) Required Information (Local Rule 16.3(b)) -** In compliance with Local Rule 16.3(b), I state the following:

1. **Case style and number:** *Steward, Cici, and Steward, Will v. Bonner, William Neely, et al.*, **Cause No. D-1-GN-26-000758**

2. **Date and time Proceeding begins: Wednesday, March 4, 2026 — 9:00 AM**

3. **Requesting individual/entity: William Crouse (Producer) & Richard Carpenter (Camera Operator) of We Are Lovely Days, LLC**

4. **Type of coverage requested: Audio-visual recording and/or broadcast** of the Proceeding, subject to all Court limitations and Local Rule restrictions

5. **Type and extent of equipment to be used:**

   ○ **In-person (if permitted):** one stationary, silent camera on tripod; one compact microphone mounted to camera; no external lighting; no flash; no roaming operator; no visible logos.

Copy from re:SearchTX

○ **Virtual (if applicable):** recording limited to the Court's authorized virtual access method and any Court-approved recording mechanism (e.g., Court-hosted stream or Court-permitted recording), with no third-party disruption.

**2) Alternative / Preferred Method: Court-Controlled Streaming**

If the Court intends to provide a **Court-controlled livestream or public viewing link** (e.g., a Court YouTube stream or Zoom/webinar access), I respectfully request confirmation of the official access method and any restrictions. If an official stream is available, I am willing to rely on that approach in lieu of any additional equipment.

**3) Compliance and Proposed Safeguards**

To minimize disruption and protect the administration of justice, I will comply with all Court directives and the Local Rules, including:

● **No recording without prior Court approval** and compliance with any conditions the Court imposes.

● **No coverage of prohibited matters**, including proceedings in chambers, closed proceedings, jury selection, and any attorney-client/bench conferences.

● **No disruption**: stationary equipment only; no distracting sound or light; equipment in place in advance; no movement during session; comply with any pooling directives.

● **No delay** of the Proceeding for recording logistics.

● Acknowledge that any recording/broadcast product is **not part of the official court record**.

A copy of this request is being delivered to the Court, the Court Administrator, all counsel of record, and any self-represented parties as required by the Local Rules.

For these reasons, I respectfully request that the Court enter a **written order** permitting recording and/or broadcasting of the Proceeding on **March 4, 2026 at 9:00 AM**, subject to any limitations the Court deems appropriate, and for such other relief to which I may be justly entitled.

Respectfully submitted,

**William Crouse**

We Are Lovely Days, LLC
941.320.3035
william@lovelydaysss.com

Copy from re:SearchTX



**AMY CLARK MEACHUM**
**Local Administrative Judge**
**DISTRICT COURTS**

**Civil and Family Courts Facility**
**P. O. Box 1748**
**Austin, TX 78767**

**(512) 854-9305**
**FAX (512) 854-9332**

March 4, 2026

W. Mark Lanier
Sam E. Taylor, II
Sara E. Abston
LANIER LAW FIRM, PC
10940 W. Sam Houston Pkwy N., Suite 100
Houston, TX 77064
*Via email:* *mark.lanier@lanierlawfirm.com*
*Via email:* *sam.taylow@lanierlawfirm.com*
*Via email:* *sara.abston@lanierlawfirm.com*

Thomas C. Wright
Jessica Z. Barger
Kenneth J. Fair
WRIGHT CLOSE BARGER & GUZMAN, LLP
1 Riverway, Suite 2200
Houston, TX 77056
*Via email:* *wright@wrightclosebarger.com*
*Via email:* *barger@wrightclosebarger.com*
*Via email:* *fair@wrightclosebarger.com*

Mikal Watts
WATTS LAW FIRM LLP
110 Tributary Ranch Rd.
Mountain Home, TX 78058
*Via email:* *mikal@wattsllp.com*

Jeff Ray
RAY PENA P.C.
9601 McAllister Fwy., Suite 901
San Antonio, TX 78216
*Via email:* *jray@raylaw.com*

Lynn S. Castagna
CASTAGNA SCOTT LLP
1120 S. Capital of TX Hwy, Bldg. 2, Suite 300
Austin, TX78746
*Via email:* *lynn@texasdefense.com*

Re: Cause No. D-1-GN-25-010016; Cole Naylor, et al v. Camp Mystic, Inc., et al. *in the 200th Judicial District, Travis County, Texas*

Dear Counsel:

The above case will be assigned to JUDGE MAYA GUERRA GAMBLE according to Chapters 2.6 of our Local Rules. Please refer to Chapter 2.6 of our Local Rules for the proper method of proceeding from this point.

Thank you.

Sincerely,

AMY CLARK MEACHUM
Local Administrative Judge
Travis County, Texas

ACM/ral
xc: Ms. Velva Price, District Clerk

Copy from re:SearchTX

09/13/2026 04:34:02 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016



**MAYA GUERRA GAMBLE**
**Judge, 459th District Court**
**Travis County Civil and Family Courts Facility, P.O. Box 1748**
**Austin, Texas 78767**
**512-854-9384**

March 12, 2026

W. Mark Lanier
Sam E. Taylor, II
Sara E. Abston
Lanier Law Firm, PC
10940 W. Sam Houston Pkwy N., Suite 100
Houston, TX 77064
*Via email: mark.lanier@lanierlawfirm.com*
*Via email: sam.taylor@lanierlawfirm.com*
*Via email: sara.abston@lanierlawfirm.com*

Mikal Watts
Watts Law Firm LLP
110 Tributary Ranch Rd.
Mountain Home, TX 78058
*Via email: mikal@wattsllp.com*

Thomas C. Wright
Jessica Z. Barger
Kenneth J. Fair
Wright Close Barger & Guzman, LLP
1 Riverway, Suite 2200
Houston, TX 77056
*Via email: wright@wrightclosebarger.com*
*Via email: barger@wrightclosebarger.com*
*Via email: fair@wrightclosebarger.com*

Jeff Ray
Ray Pena P.C.
9601 McAllister Fwy., Suite 901
San Antonio, TX 78216
*Via email: jray@raylaw.com*

Lynn S. Castagna
CASTAGNA SCOTT LLP
1120 S. Capital of TX Hwy, Bldg. 2, Suite 300
Austin, TX 78746
*Via email: lynn@texasdefense.com*

**RE: Cause No. D-1-GN-25-010016; Cole Naylor, et al v. Camp Mystic, Inc., et al.** *in the 200th Judicial District, Travis County, Texas*

Dear Counsel:

This case has been assigned to the 459th District Court pursuant to Travis County Local Rule 2.6. All matters, including agreed motions and orders, as well as any final proceedings, shall be heard and considered **by this Court only**. Please note that simply filing a document with the District Clerk does not bring it to the court's attention as I do not receive these documents automatically. You must file pleadings with the District Clerk, then deliver them directly to the 459th District Court. You may deliver documents by email if their combined length is less than 15 pages; otherwise, they must be delivered in printed-out

Copy from re:SearchTX

form to the District Judges' Office on the 4th floor, Attn: 459th District Court. All hearings are in-person unless a virtual setting is requested and approved in advance. Note that, while this case is assigned to the 459th District Court, filings should still be captioned with the 200th designation.

Our Judicial Executive Assistant, Shannon Matusek-Steele, is the primary point of contact for this Court. Contact her with any questions, for coordinating dates and times of any hearings, and to provide copies of filings. She may be reached by telephone at (512) 854-9384 or by email at shannon.matusek-steele@traviscountytx.gov. Specifically, please coordinate with Ms. Matusek-Steele for dates and times of any hearings that you may need to set. Please do not use the 459 submission email as that may cause a delay.

Counsel must attempt to agree on a briefing schedule, including a trial date, which should be provided to the Court **within 60 days** of the date of this letter. The trial date must be obtained from Ms. Matusek-Steele.

For any setting, you must announce in compliance with Chapter 3 of the Local Rules of the District Courts of Travis County.  I look forward to working with you on this case.

Very Truly Yours,

Maya Guerra Gamble
Judge, 459th District Court

MGG/sms
cc: Velva Price, District Clerk

Copy from re:SearchTX

3/24/2026 9:46 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016
Candy Schmidt

**CAUSE NO. D-1-GN-25-010016**

| | | |
|---|---|---|
| COLE and ALLISON NAYLOR, Individually | § | IN THE DISTRICT COURT OF |
| and as Representatives and Heirs of | § | |
| the Estate of VIRGINIA WYNNE NAYLOR; | § | |
| W. DOUGLAS and CARRIE HANNA, | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of HADLEY REBECCA HANNA; | § | |
| LARS and LACEY HOLLIS, Individually | § | |
| and as Representatives and Heirs of the | § | |
| Estate of VIRGINIA LARINS HOLLIS; | § | |
| DAVIN and ANNE LINDSEY HUNT, | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of JANE MARIE HUNT; | § | |
| BRANDT and LISA DILLON, Individually | § | |
| and as Representatives and Heirs of the | § | |
| Estate of LUCY LEE DILLON; J. WADE and | § | |
| MALORIE LYTAL, Individually and as | § | |
| Representatives and Heirs of the Estate of | § | |
| KELLYANNE ELIZABETH LYTAL, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CAMP MYSTIC, LLC; | § | |
| MYSTIC CAMPS FAMILY | § | |
| PARTNERSHIP, LTD.; | § | |
| MYSTIC CAMPS MANAGEMENT, LLC; | § | |
| NATURAL FOUNTAINS PROPERTIES, INC; | § | |
| WILLETTA A. EASTLAND, Individually | § | |
| and as DIRECTOR and VICE PRESIDENT of | § | |
| CAMP MYSTIC, LLC, and as SECRETARY | § | |
| of NATURAL FOUNTAINS | § | |
| PROPERTIES, INC.; | § | |
| GEORGE ALBRITTON EASTLAND, | § | |
| AS REPRESENTATIVE OF THE | § | |
| ESTATE OF RICHARD G. EASTLAND; | § | |
| EDWARD S. EASTLAND and | § | |
| MARY E. EASTLAND, Individually, | § | |
| | § | 200th JUDICIAL DISTRICT |
| *Defendants.* | § | |

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY**

Copy from re:SearchTX

Defendants Camp Mystic, LLC ("Camp Mystic"), Natural Fountains Properties, Inc. ("Natural Fountains"), Mystic Camps Family Partnership, Ltd. (the "Family Partnership"), Mystic Camps Management LLC, George Albritton Eastland, as Independent Executor of the Estate of Richard G. Eastland, Willetta A. Eastland, Individually and as Secretary of Natural Fountains, Edward S. Eastland, and Mary E. Eastland (collectively "Defendants")[1] file this Motion to Compel Arbitration and Motion to Stay, respectfully showing the Court the following:

## I. **Introduction**

This case arises from the tragic loss of Virginia Wynne Naylor, Hadley Rebecca Hanna, Virginia Larins Hollis, Jane Marie Hunt, Lucy Lee Dillon, and Kellyanne Elizabeth Lytal during the July 2025 flooding of the Guadalupe River while they were attending summer camp at Camp Mystic. Several other lives were lost in the historic flood, including Camp Mystic's Director, Dick Eastland, as he was trying to save the campers. The girls' parents have asserted claims arising out of these events.

When Plaintiffs registered their daughters to attend camp that year, one parent for each of the girls signed a Participation Agreement as part of that registration. *See* Naylor Participation Agreement at 3 (signed by Allison Naylor) (attached as Exhibit A-3); Hanna Participation Agreement (signed by Carrie Hanna) (attached as Exhibit A-4); Hollis Participation Agreement (signed by Lacey Hollis) (attached as Exhibit A-5); Hunt Participation Agreement (signed by Anne L. Hunt) (attached as Exhibit A-6); Dillon Participation Agreement (signed by Lisa Dillon) (attached as Exhibit A-7); and Lytal Participation Agreement (signed by Malorie Lytal) (attached as Exhibit A-8).

---

[1] Defendant George Albritton Eastland, as Independent Executor of the Estate of Richard G. Eastland, Deceased, is incorrectly named as Defendant George Albritton Eastland, as Representative of the Estate of Richard G. Eastland, Deceased. Defendant Willetta A. Eastland is incorrectly named as Defendant Willetta A. Eastland, Individually and as Director and Vice President of Camp Mystic, LLC.

Copy from re:SearchTX

The Participation Agreement contains an arbitration clause, requiring the arbitration of all claims that arise "out of or in connection with this Agreement." *See* Exhs. A-3–8 at 2. The arbitration clause also requires any arbitration to be conducted in accordance with the American Arbitration Association's Commercial Rules. *Id.*

When a contract contains an arbitration clause, a court must resolve two questions: (1) whether the parties entered into an arbitration agreement and (2) who decides whether the plaintiff's claims are arbitrable: an arbitrator or the court. The first question is easily resolved. Camp Mystic and Natural Fountains, and therefore their owners, members, directors, and employees, unmistakably entered into the Participation Agreement with Plaintiffs.

The Participation Agreement's incorporation of the AAA's rules resolves the second question. Under black letter Texas and federal law, incorporation of the AAA rules reflects unambiguous intent that the arbitrator—not the Court—must determine whether Plaintiffs' claims are arbitrable. Defendants' motion to compel must therefore be granted on that basis.

Pending the outcome of arbitration, Defendants request a stay of these proceedings.

## II.  **Background Facts**

As part of the registration process to attend camp at Camp Mystic, parents or legal guardians of the campers must sign a Participation Agreement. *See, generally*, Exhs. A-3–8. The Agreement highlights the various risks of attending camp, including the risk of serious injury due to floods and other camp hazards:

> Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning) . . . all manner of other injuries or illness which, in extraordinary cases, may be serious.

Exhs. A-3–8 at 1.

3

Copy from re:SearchTX

The Agreement also contains an arbitration clause, which states:

Binding Arbitration: . . .

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding.

This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Exhs. A-3–8 at 2.

Richard Eastland, Deceased, George Albritton Eastland, Willetta A. Eastland, Edward S. Eastland, and Mary E. Eastland (the "Eastlands") worked for Camp Mystic in the summer of 2025 and at all relevant times. *See* Declaration of George Albritton Eastland at ¶¶ 2-3 (attached as Exhibit A).

4

Copy from re:SearchTX

### III.  Legal Standard

Under both the Federal Arbitration Act ("FAA") and the Texas Arbitration Act ("TAA"), when a party moves to compel arbitration, a court must resolve two related questions: (1) whether the parties entered into any arbitration agreement at all, and (2) whether the parties delegated to the arbitrator the issue of who determines a claim's arbitrability. *See IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017); *see also RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018).

"When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. 63, 68 (2019) (holding that a court may not override a delegation clause even if the court thinks that the arbitrability of the claims "is wholly groundless."); *see also Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 532 (Tex. 2019) (noting that a court has *no* discretion to deny a motion to compel arbitration that contains a delegation clause).

Because the arbitration agreement here incorporates the AAA rules, that is in effect a delegation to the arbitrator to determine arbitrability. *See TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 711 (Tex. 2023), *reh'g denied* (June 9, 2023) ("[A]n agreement to arbitrate in accordance with the AAA or similar rules **clearly and unmistakably delegates arbitrability issues to the arbitrator**.") (emphasis added).

5

Copy from re:SearchTX

## IV.  <u>Argument</u>

The Participation Agreement contains a valid arbitration clause between Plaintiffs and the named released and indemnified parties in the Participation Agreement, which includes Camp Mystic, Natural Fountains, and their respective owners, members, directors, and employees. Because all of the Eastlands worked for Camp Mystic during the relevant events, Texas law permits them to invoke the arbitration clause as well.

The Family Partnership and Mystic Camps Management LLC (collectively the "Holding Companies") and Natural Fountains are also entitled to invoke the arbitration clause under equitable estoppel principles.

### A.    The FAA governs the arbitration clause

The arbitration clause is governed by the FAA because the Participation Agreement is a written contract involving interstate commerce. *See* Exhs. A-3–8; *see also Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 573 (1997). When an arbitration clause falls within the FAA's scope, the FAA supplies the governing law and requires enforcement according to its terms.

Courts may presume that both the FAA and the TAA apply when an arbitration agreement does not specify which applies. *See Moody Nat'l Grapevine MT, LP v. TIC Grapevine 2, LP*, 651 S.W.3d 450, 455 (Tex. App.—Houston [14th Dist.] 2022, pet. denied). But that does not limit a movant to the TAA or require satisfaction of additional state-law requirements. A party seeking to compel arbitration may choose to invoke the FAA rather than the TAA when an arbitration agreement is silent. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 98 n.64 (Tex. 2011) ("The TAA and the FAA may both be applicable to an agreement, absent the parties' choice of one or the other.").

6

Copy from re:SearchTX

Here, the Participation Agreement is in writing and governs camping activities that are open to campers across state lines. The FAA therefore applies and requires enforcement of the arbitration clause.

To the extent the TAA would impose additional requirements for personal injury claims, such as a counsel signature requirement, those requirements do not limit enforcement under the FAA. Texas courts have recognized that such provisions are preempted where they conflict with the FAA's mandate to enforce arbitration clauses according to their terms. *See In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005), *as supplemented on denial of reh'g* (Oct. 14, 2005) ("The TAA interferes with the enforceability of the arbitration agreement by adding an additional requirement—the signature of a party's counsel—to arbitration agreements in personal injury cases. . . . Thus, the TAA is preempted by the FAA.").

**B.    There is a valid agreement to arbitrate in the Participation Agreement**

The Participation Agreement contains a valid agreement to arbitration. Whether a valid arbitration agreement exists is, at this stage, simply a "question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Products Co.*, 871 F.3d at 348. For this question, the only issue before the court is whether there is a valid agreement to arbitrate any possible claim; the court is *not* determining whether a plaintiff's specific claims fall within the scope of an arbitration clause. *See id.*

The Participation Agreement contains a valid arbitration clause:

Binding Arbitration: . . .

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall

7

Copy from re:SearchTX

be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

. . . .

Exhs. A-3–8 at 2. The Participation Agreement is signed by one parent for each of the campers. *See* Exhs. A-3–8 at 3.

To be enforceable under the FAA, the Participation Agreement need only be in writing and affect interstate commerce. *See* 9 U.S.C.A. § 2. "The law presumes the existence of an arbitration agreement, and any doubts regarding the existence or scope of an agreement are resolved in favor of arbitration." *In re Border Steel, Inc.*, 229 S.W.3d 825, 832 (Tex. App.—El Paso 2007, no pet.). Because the Participation Agreement is in writing and affects interstate commerce, it is valid and enforceable. *See* Exhs. A-3–8; *see also Camps Newfound/Owatonna, Inc.*, 520 U.S. at 573.

1.     **Camp Mystic, Natural Fountains, the Family Partnership, and the Eastlands may enforce the arbitration clause with Plaintiffs**

Camp Mystic, Natural Fountains, the Family Partnership, and the Eastlands are party to the arbitration clause. *See* Exhs. A-3–8 at 1-3. The agreement states that "[i]n consideration of the services of Camp Mystic, I, parent, acknowledge and agree as follows . . .". *See* Exhs. A-3–8 at 1. The agreement thereafter states that the parent agrees to indemnify and release Camp Mystic, Natural Fountains, and their respective owners, members, directors, officers, employees, contractors and volunteers. Exhs. A-3–8 at 2. For the arbitration clause, the agreement states that "[t]he parties hereto"—as defined in the release to include Camp Mystic, Natural Fountains, and their owners, members, employees, and directors—also agree to submit all claims to binding arbitration. Exhs. A-3–8 at 2.

8

Copy from re:SearchTX

The Eastlands are members or employees of Camp Mystic. *See* Exh. A at ¶¶ 2-3. The Family Partnership is the owner of Camp Mystic and Natural Fountains. *See* Exh. A at ¶ 5. The Participation Agreement therefore includes (1) Camp Mystic and Natural Fountains, as named parties, (2) the Family Partnership, as the owner of Camp Mystic, and (3)the Eastlands, as members or employees of Camp Mystic, and these parties may invoke its arbitration clause.

Because one parent signed the Participation Agreements on behalf of each minor daughter, all Plaintiffs are bound by the arbitration agreement they consented to in the Participation Agreement. *See* Exh. A-3 (signed by Allison Naylor); Exh. A-4 (signed by Carrie Hanna); Exh. A-5 (signed by Lacey Hollis); Exh. A-6 (signed by Anne L. Hunt); Exh. A-7 (signed by Lisa Dillon); Exh. A-8 (signed by Malorie Lytal).

Texas Family Code § 151.001(a)(7) grants parents comprehensive authority, including "the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child." TEX. FAM. CODE § 151.001(a)(7). The Texas Supreme Court in *Ha* established that "as a general matter, parents may sign arbitration agreements on behalf of their children" based on this statutory provision. *Ha*, 660 S.W.3d at 534 (Tex. 2023). The court emphasized that "fit parents are presumed to act in their children's best interests" and have both the authority and duty to make important legal decisions for their minor children. *Id.*

Recent Texas appellate decisions have consistently held that a single parent can bind minor children to arbitration agreements. In *Pearland Urban Air, LLC v. Cerna*, the court held that an arbitration agreement signed by a mother on behalf of her minor son constituted a valid agreement binding the child, even though he did not personally sign the agreement. 693 S.W.3d 711, 716 (Tex. App.—Houston [14th Dist.] 2024), *aff'd sub nom. Cerna as Next Friend of R.W. v. Pearland Urban Air, LLC*, 714 S.W.3d 585 (Tex. 2025). Similarly, in *BFS Group LLC v. De Leon*, the court

9

reaffirmed that "as a general matter, a parent may sign an arbitration agreement on behalf of the parent's child, and only in 'rare case[s]' is such an agreement unenforceable." No. 14-24-00548-CV, 2025 WL 2394091, at *12 (Tex. App.—Houston [14th Dist.] Aug. 19, 2025, pet. filed) (quoting TEX. FAMILY CODE ANN. § 151.001(a)(7)).

Because one parent Plaintiff executed the Participation Agreement on behalf of each minor daughter, all parent Plaintiffs are bound by the arbitration agreement. *See Pearland Urban Air, LLC*, 693 S.W.3d at 716. There is therefore a valid and enforceable arbitration agreement among Camp Mystic, Natural Fountains, the Family Partnership, the Eastlands, and all Plaintiffs.

### 2. The Eastlands, as employees of Camp Mystic, may invoke the arbitration clause

The Eastlands, as employees, agents, or representatives of Camp Mystic, are also entitled to arbitrate Plaintiffs' claims under Texas law. *See* Exh. A at ¶¶ 2-3. The Austin Court of Appeals has extended arbitration clauses to all agents and employees of a signatory:

> When the principal is bound by the terms of a valid arbitration agreement, its agents, employees, and representatives are also covered by the agreement.

*SEB, Inc. v. Campbell*, No. 03-10-00375-CV, 2011 WL 749292, at *4 (Tex. App.—Austin Mar. 2, 2011, no pet.) (mem. op.); *see also Design Tech Homes of Tex., LLC v. Siemens*, No. 03-23-00735-CV, 2025 WL 62967, at *6 n.3 (Tex. App.—Austin Jan. 10, 2025, no pet.); *Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 462 (Tex. App.—Dallas 2011, no pet.).

This is consistent with the Texas Supreme Court's conclusion that employees may invoke an employer's arbitration clause when a plaintiff's claims against the employee arise out of actions taken by the employee on behalf of the employer. *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 190 (Tex. 2007) (noting that plaintiffs cannot avoid arbitration clauses by artfully suing

10

Copy from re:SearchTX

individual agents of an entity with whom they've agreed to arbitrate in order to avoid arbitrating their claims.).

Plaintiffs have sued the Eastlands for their actions taken due to their employment or agency with Camp Mystic. *See* Plaintiffs' Original Petition at 9-32. Accordingly, as employees or agents of a party to the arbitration agreement, the Eastlands are entitled to arbitrate Plaintiffs' claims against them, as well. *SEB, Inc.*, 2011 WL 749292 at *4.

### 3. The Holding Companies and Natural Fountains are entitled to compel arbitration under intertwined claims estoppel

Because the Plaintiffs' claims against the Holding Companies and Natural Fountains are factually intertwined with the Participation Agreement, they may also invoke its arbitration clause. Federal law recognizes that non-signatories to an arbitration clause may compel arbitration under an intertwined claims estoppel theory, which applies when "(1) they have a close relationship with a signatory to a contract with an arbitration agreement and (2) the claims are intimately founded in and intertwined with the underlying contract obligations." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 640 (Tex. 2018) (quotations omitted) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)).

While the Texas Supreme Court did not find it necessary to adopt that theory in *Jody James Farms*, the Fifth Circuit has predicted that Texas will adopt the equitable estoppel theory. *See Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016). And the Court should do so here. The Holding Companies and Natural Fountains have a close relationship with Camp Mystic, and Plaintiffs' claims against them are intertwined with the Participation Agreement's underlying contractual release of claims. *See* Exh. A at ¶¶ 5-6. Under the intertwined claims estoppel theory, the Holding Companies and Natural Fountains are entitled to have Plaintiffs' claims resolved in arbitration, as well.

11

Copy from re:SearchTX

**C.    The arbitration clause delegates the issue of arbitrability to the arbitrator by incorporating the AAA's rules**

The Participation Agreement's arbitration clause requires the arbitrator, not the Court, to determine whether Plaintiffs' claims are arbitrable because it incorporates the AAA's rules by reference. The Court must therefore compel this case to arbitration for that determination.

When an arbitration clause incorporates the AAA's rules by reference, this reflects unmistakable intent that the arbitrator, not the Court, must determine whether the plaintiff's claims are subject to arbitration. *See TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 711 (Tex. 2023), *reh'g denied* (June 9, 2023) ("[A]n agreement to arbitrate in accordance with the AAA or similar rules **clearly and unmistakably delegates arbitrability issues to the arbitrator**.") (emphasis added); *see also Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("[T]he express adoption of these [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

This is because the AAA's rules require that an arbitrator determine all threshold issues, including the arbitrability of a plaintiff's claims:

> R-7(a): The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim or counterclaim*.

*See* AAA's Commercial Arbitration Rules at 13 (attached as Exhibit B) (emphasis added).

The United States Supreme Court has instructed that, under the FAA, when a contract delegates the threshold issue of arbitrability to the arbitrator, a court may *not* override the clause's delegation of that issue even if the court believes that the argument that a plaintiff's claims are arbitrable is "wholly groundless":

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the

12

Copy from re:SearchTX

argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein, Inc.*, 586 U.S. 63, 68 (2019).

Here, the Participation Agreement incorporates the AAA's Commercial Rules by reference. *See* Exhs. A-3–8 at 2 ("All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement . . . . shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association."). The clause does not merely reference the AAA's rules. Instead, it states that any dispute arising out of or in connection with the Participation Agreement "shall be determined in accordance" with those rules. *Id.* The clause's incorporation of the AAA's rules is dispositive on *who* decides whether Plaintiffs' claims are arbitrable: the arbitrator, not the Court, must make that threshold determination. *See TotalEnergies E&P USA, Inc.*, 667 S.W.3d at 711.

Defendants therefore respectfully request that the Court grant this motion to compel arbitration so that the arbitrator may determine the arbitrability of Plaintiffs' claims and all other jurisdictional issues, including "any objections with respect to the existence, scope, or validity of the arbitration agreement . . . ." *See* Exh. B at 13.

13

Copy from re:SearchTX

## V.  **Motion to Stay**

Defendants also request that the Court stay all of the proceedings in this matter pending the outcome of arbitration. *See* 9 U.S.C. § 3; *see also* TEX. CIV. PRAC. & REM. CODE § 171.021(c).

If a court determines that a party's claims are subject to arbitration, then under both the FAA and TAA, the court must stay all proceedings on those arbitrable claims pending the outcome of the arbitration. *See* 9 U.S.C. § 3 (stating that when an issue is referrable to arbitration, a court must stay proceedings on the issue until after the arbitration has concluded); TEX. CIV. PRAC. & REM. CODE § 171.021(c) (stating that a court is required to sign an order staying proceedings pending the outcome of arbitration); *see also Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002) (FAA); *Cash Am. Int'l v. Exchange Servs.*, 83 S.W.2d 183, 186–87 (Tex. App.— Amarillo 2002, no pet.) (TAA).

If the Court grants Defendants' motion to compel arbitration, the Court is required by both the FAA and TAA to stay all proceedings pending the outcome of the arbitration. Defendants therefore respectfully request that the Court grant Defendants' motion to stay pending the outcome of the parties' arbitration.

## VI.  **Conclusion**

Defendants Camp Mystic, LLC, Natural Fountains Properties, Inc., Mystic Camps Family Partnership, Ltd., Mystic Camps Management LLC, George Albritton Eastland, as Independent Executor of the Estate of Richard G. Eastland, Willetta A. Eastland, Individually and as Secretary of Natural Fountains Properties, Inc., Edward S. Eastland, and Mary E. Eastland therefore respectfully request that the Court grant this motion to compel arbitration and stay all proceedings against Defendants pending the outcome of arbitration.

14

Copy from re:SearchTX

Respectfully submitted,

**RAY | PEÑA, P.C.**
9601 McAllister Freeway, Suite 901
San Antonio, Texas 78216
P: (210) 341-3554
F: (210) 341-3557

*/s/ Jeff Ray*
JEFF RAY
State Bar No. 16604400
jray@raylaw.com
*Attorney for Camp Mystic, LLC and George Albritton Eastland, as Independent Executor of the Estate of Richard Eastland, Deceased*

**WATTS LAW FIRM LLP**
110 Tributary Ranch Road
Mountain Home, Texas 78058
P: (512) 479-0500

*/s/Mikal Watts*
MIKAL WATTS
State Bar No. 20981820
mikal@wattsllp.com
*Attorney for Natural Fountains Properties, Inc.; Willetta A. Eastland, Individually and as Secretary of Natural Fountains Properties, Inc.; Mystic Camps Family Partnership, Ltd., and Mystic Camps Management, LLC*

**CASTAGNA SCOTT LLP**
1120 S. Capital of Texas Highway
Building 2, Suite 300
Austin, Texas 78746
512/329-3290
888/255-0132 fax

*/s/ Lynn S. Castagna*
LYNN S. CASTAGNA
State Bar No. 03980520
Lynn@texasdefense.com
*Attorney for Edward S. Eastland and Mary E. Eastland*

15

Copy from re:SearchTX

**WRIGHT CLOSE BARGER & GUZMAN, LLP**
One Riverway, Suite 2200
Houston, Texas 77056
Telephone: (713) 572-4321
Facsimile: (713) 572-4320

*/s/Thomas C. Wright*
Thomas C. Wright
State Bar No. 22059400
wright@wcbglaw.com
Jessica Z. Barger
State Bar No. 24032706
barger@wcbglaw.com
Kenneth J. Fair
State Bar No. 24007171
fair@wcbglaw.com
Joshua Fiveson
State Bar No. 24093438
jfiveson@wcbglaw.com
*Attorneys for Camp Mystic, LLC*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon all known counsel of record via electronic means in accordance with the Texas Rules of Civil Procedure on this the 24th day of March, 2026.

*/s/ Thomas C. Wright*
Thomas C. Wright

16

Copy from re:SearchTX

# EXHIBIT A

Copy from re:SearchTX

## DECLARATION OF GEORGE ALBRITTON EASTLAND

My name is George Albritton Eastland. My date of birth is September 26, 1978. My address is 186 Felix Fisher Road S., Hunt, Texas 78024. I am over the age of 21 and am in all respects capable of making this declaration. In compliance with Texas Civil Practice and Remedies Code § 132.001, I declare under penalty of perjury that I have personal knowledge of the facts stated herein and declare them to be true and correct.

1.    My family and I have worked for Camp Mystic, LLC ("Camp Mystic") for many years.

2.    My brother and his wife are Edward Eastland ("Edward") and Mary Liz Eastland ("Mary Liz"). Edward, Mary Liz, and I were employed by Camp Mystic in 2025 when the events underlying this suit occurred. Edward, Mary Liz, and I were Directors of Camp Mystic at that time and remain Directors.

3.    My mother is Willetta Eastland ("Tweety"), and my father was Richard Eastland ("Dick"). Tweety served as a Co-Executive Director of Camp Mystic with Dick in 2025 when the events underlying this suit occurred. Tweety and Dick were also managing members of Camp Mystic at that time.

4.    I know William Neely Bonner, III ("Neel"). Neel is the current President of Natural Fountains Properties, Inc. and was its President in 2025 when the events underlying this suit occurred.

5.    Mystic Camps Family Partnership, LTD., is the owner of Camp Mystic, LLC, and of Natural Fountains Properties, Inc.

6.    Mystic Camps Management, LLC is the general partner of Mystic Camps Family Partnership, LTD.

Copy from re:SearchTX

-2-

7.     Attached as Exhibit A are true and correct copies of Participation Agreements that were signed as part of campers' enrollment at Camp Mystic.

Executed in Hunt, Kerr County, Texas, on this, the 22nd day of March, 2026.

Signature: _George a. Eastland_

Printed Name: George Albritton Eastland

-2-

Copy from re:SearchTX

**Cile Steward**, Jan 24, 2017 (9.00)

## Participation Agreement 2025

for Cile Steward, 2025 Season

Participation Agreement for Cile Steward:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Cile Steward, (Cile), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Cile.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Cile and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

EXHIBIT A-1

CM 000740

Copy from re:SearchTX

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Cile, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Cile MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Cile, use interviews with and photographic images of Cile, including videotape, for its website, brochures and other, including promotional, materials.

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

EXHIBIT A-1

CM 000741

Copy from re:SearchTX

**Cile Steward**, Jan 24, 2017 (9.00)                                    Page: 3

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Cile, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Cile, and our respective heirs, personal representatives, estates and family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature                Catherine C. Williams
                         (06/15/2025)

EXHIBIT A-1                                              CM 000742

Copy from re:SearchTX

**Eloise Peck**, Sep 18, 2016 (9.05)                                        Page: 1

## Participation Agreement 2025

for Eloise Peck, 2025 Season

Participation Agreement for Eloise Peck:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Eloise Peck, (Eloise), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Eloise.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Eloise and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

EXHIBIT A-2

CM 000746

**Eloise Peck**, Sep 18, 2016 (9.05)                                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Eloise, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Eloise MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Eloise, use interviews with and photographic images of Eloise, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-2                                                                CM 000747

Copy from re:SearchTX

**Eloise Peck**, Sep 18, 2016 (9.05)                                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Eloise, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Eloise, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature                Missy Rogers Peck
                         (02/21/2025)

EXHIBIT A-2                                                          CM 000748

Copy from re:SearchTX

## Participation Agreement 2025

for Wynne Naylor, 2025 Season

Participation Agreement for Wynne Naylor:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Wynne Naylor, (Wynne), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Wynne.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Wynne and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-3

Copy from re:SearchTX

CM 000791

**Wynne Naylor**, Sep 16, 2016 (9.05)                                              Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Wynne, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Wynne MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Wynne, use interviews with and photographic images of Wynne, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-3                                                                    CM 000792

Copy from re:SearchTX

**Wynne Naylor**, Sep 16, 2016 (9.05)                                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Wynne, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Wynne, and our respective heirs, personal representatives, estates and family members.

  [X] I have read and agree to the terms and conditions above.
  [] I do not give permission to my child.

**Signature**              Alli Naylor (04/14/2025)

EXHIBIT A-3                                                    CM 000793

Copy from re:SearchTX

**Hadley Hanna,** Feb 13, 2017 (9.00)                                    Page: 1

## Participation Agreement 2025

for Hadley Hanna, 2025 Season

Participation Agreement for Hadley Hanna:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Hadley Hanna, (Hadley), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Hadley.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Hadley and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

**EXHIBIT A-4**                                                          CM 000752

**Hadley Hanna**, Feb 13, 2017 (9.00)                                                        Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Hadley, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Hadley MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Hadley, use interviews with and photographic images of Hadley, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-4                                       CM 000753

Copy from re:SearchTX

**Hadley Hanna**, Feb 13, 2017 (9.00)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Hadley, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Hadley, and our respective heirs, personal representatives, estates and family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

**Signature**               Carrie Hanna (04/13/2025)

EXHIBIT A-4

CM 000754

Copy from re:SearchTX

**Virginia Hollis**, Mar 23, 2017 (8.10)                                          Page: 1

## Participation Agreement 2025

for Virginia Hollis, 2025 Season

Participation Agreement for Virginia Hollis:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Virginia Hollis, (Virginia), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Virginia.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Virginia and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

EXHIBIT A-5                                                                      CM 000788

**Virginia Hollis**, Mar 23, 2017 (8.10)                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Virginia, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Virginia MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Virginia, use interviews with and photographic images of Virginia, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-5                                                      CM 000789

Copy from re:SearchTX

**Virginia Hollis**, Mar 23, 2017 (8.10)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.


I, Parent or legal guardian of Virginia, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Virginia, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature              Lacey Hollis (03/20/2025)

EXHIBIT A-5                                                    CM 000790

Copy from re:SearchTX

**Janie Hunt**, May 8, 2016 (9.09)                                                    Page: 1

## Participation Agreement 2025

for Janie Hunt, 2025 Season

Participation Agreement for Janie Hunt:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Janie Hunt, (Janie), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Janie.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Janie and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-6

Copy from re:SearchTX

CM 000755

**Janie Hunt**, May 8, 2016 (9.09)                                          Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Janie, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Janie MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Janie, use interviews with and photographic images of Janie, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-6                                          CM 000756

Copy from re:SearchTX

**Janie Hunt**, May 8, 2016 (9.09)                                        Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.


I, Parent or legal guardian of Janie, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Janie, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

**Signature**              Anne L Hunt (05/19/2025)

Copy from re:SearchTX

EXHIBIT A-6                                              CM 000757

**Lucy Dillon**, Dec 17, 2016 (9.02)                                          Page: 1

## Participation Agreement 2025

for Lucy Dillon, 2025 Season

Participation Agreement for Lucy Dillon:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Lucy Dillon, (Lucy), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Lucy.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Lucy and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

EXHIBIT A-7

CM 000770

Copy from re:SearchTX

**Lucy Dillon**, Dec 17, 2016 (9.02)                                                    Page: 2

Acknowledgment and Assumption of Risks:


I have read and understand, and have discussed with my child, Lucy, the Camp activities and
risks described in this Agreement and in other materials provided by the Camp including
activities described on the Camp's website, www.campmystic.com. She understands them and wishes
to participate. I acknowledge and assume the risks and dangers described above, and all others
associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity
of the Camp, and on or off the Camp premises.


AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND
DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES,
INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND
VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY
AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Lucy MAY SUFFER,
ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A
SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE
AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE
NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE
RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN
DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR
GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this
Agreement in an amicable way through discussions then mediation before a mutually acceptable
mediator whose name appears on the registry of names recognized by Texas courts as qualified
persons for mediation assignments.


All disputes, controversies or differences which may arise between the parties out of or in
connection with this Agreement or breach thereof, and which cannot be settled through
discussions and mediation, shall be determined in accordance with the rules of the Commercial
Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall
be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties
hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner
as judgments. This provision to arbitrate shall survive any termination of this Agreement. The
provisions of this Agreement shall remain in full force and effect pending any arbitration
hereunder.


The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney
and who is licensed to practice and on the arbitration list before a Texas or United States
District Court. Unless the parties can agree on an arbitrator, the appointing authority for the
implementation of such procedure shall be the American Arbitration Association, who shall
appoint an independent arbitrator who does not have any financial interest in the dispute,
controversy or claim. All decisions and awards by the arbitrator shall be final and binding.
This Agreement shall be governed by and construed in accordance with the laws of the State of
Texas. All pleadings and documents of any nature submitted by the parties hereto in connection
with such arbitration shall be submitted in the English language.


Enforcement of the award of the arbitrator may be obtained in any court or competent
jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the
arbitration, including without limitation reasonable legal and accounting fees, if any, such
designation to be based to the extent possible upon the relative merits of the parties'
respective cases and the manner in which the parties have conducted themselves.


Additional Provisions:
The Camp may, without compensation to me or Lucy, use interviews with and photographic images of
Lucy, including videotape, for its website, brochures and other, including promotional,
materials.


If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

<span style="color:red">EXHIBIT A-7</span>                                                    CM 000771

Copy from re:SearchTX

**Lucy Dillon**, Dec 17, 2016 (9.02)                                    Page: 3

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Lucy, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Lucy, and our respective heirs, personal representatives, estates and family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

**Signature**             Lisa Dillon (05/30/2025)

EXHIBIT A-7                                    CM 000772

Copy from re:SearchTX

## Participation Agreement 2025

for Kellyanne Lytal, 2025 Season

Participation Agreement for Kellyanne Lytal:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Kellyanne Lytal, (Kellyanne), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Kellyanne.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Kellyanne and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

EXHIBIT A-8

CM 000758

**Kellyanne Lytal**, May 25, 2017 (8.08)                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Kellyanne, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Kellyanne MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Kellyanne, use interviews with and photographic images of Kellyanne, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

**Kellyanne Lytal**, May 25, 2017 (8.08)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Kellyanne, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Kellyanne, and our respective heirs, personal representatives, estates and family members.

  [X] I have read and agree to the terms and conditions above.
  [] I do not give permission to my child.

Signature              Malorie Lytal (02/22/2025)

EXHIBIT A-8                                                    CM 000760

Copy from re:SearchTX

**Ellen Getten**, Jun 7, 2016 (9.08)                                          Page: 1

## Participation Agreement 2025

for Ellen Getten, 2025 Season

Participation Agreement for Ellen Getten:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Ellen Getten, (Ellen), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Ellen.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Ellen and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

EXHIBIT A-9                                                                    CM 000743

**Ellen Getten**, Jun 7, 2016 (9.08)                                          Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Ellen, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Ellen MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Ellen, use interviews with and photographic images of Ellen, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-9                                          CM 000744

Copy from re:SearchTX

**Ellen Getten**, Jun 7, 2016 (9.08)                                         Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.


I, Parent or legal guardian of Ellen, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Ellen, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.


**Signature**            Jennifer Getten (05/30/2025)

EXHIBIT A-9                                         CM 000745

Copy from re:SearchTX

**Linnie McCown**, Jan 6, 2017 (9.01)                                        Page: 1

# Participation Agreement 2025

for Linnie McCown, 2025 Season

Participation Agreement for Linnie McCown:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Linnie McCown, (Linnie), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Linnie.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Linnie and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

EXHIBIT A-10                                        CM 000767

**Linnie McCown**, Jan 6, 2017 (9.01)                                        Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Linnie, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Linnie MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Linnie, use interviews with and photographic images of Linnie, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

EXHIBIT A-10                                        CM 000768

**Linnie McCown**, Jan 6, 2017 (9.01)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Linnie, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Linnie, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature                Callie McCown (05/31/2025)

EXHIBIT A-10                                                        CM 000769

Copy from re:SearchTX

**Abby Pohl**, Dec 20, 2016 (9.02)                                    Page: 1

## Participation Agreement 2025

for Abby Pohl, 2025 Season

Participation Agreement for Abby Pohl:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Abby Pohl, (Abby), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Abby.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Abby and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

EXHIBIT A-11

Copy from re:SearchTX

CM 000734

**Abby Pohl**, Dec 20, 2016 (9.02)                                      Page: 2

Acknowledgment and Assumption of Risks:


I have read and understand, and have discussed with my child, Abby, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.


AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Abby MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.


All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.


The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.


Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.


Additional Provisions:
The Camp may, without compensation to me or Abby, use interviews with and photographic images of Abby, including videotape, for its website, brochures and other, including promotional, materials.


If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

Copy from re:SearchTX

EXHIBIT A-11                                              CM 000735

**Abby Pohl**, Dec 20, 2016 (9.02)                                                    Page: 3

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Abby, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Abby, and our respective heirs, personal representatives, estates and
family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

**Signature**            Kristin Pohl (03/24/2025)

EXHIBIT A-11                                                    CM 000736

Copy from re:SearchTX

# Participation Agreement 2025

for Margaret Sheedy, 2025 Season

Participation Agreement for Margaret Sheedy:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Margaret Sheedy, (Margaret), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Margaret.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Margaret and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

EXHIBIT A-12

CM 000776

**Margaret Sheedy**, Jul 29, 2016 (9.06)                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Margaret, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Margaret MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Margaret, use interviews with and photographic images of Margaret, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-12                                                           CM 000777

Copy from re:SearchTX

**Margaret Sheedy**, Jul 29, 2016 (9.06)                              Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.


I, Parent or legal guardian of Margaret, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Margaret, and our respective heirs, personal representatives, estates and
family members.

  [X] I have read and agree to the terms and conditions above.
  [] I do not give permission to my child.

**Signature**              Ellen Sheedy (04/28/2025)

EXHIBIT A-12

Copy from re:SearchTX

CM 000778

**Mary Stevens**, Dec 6, 2016 (9.02)                                      Page: 1

# Participation Agreement 2025

for Mary Stevens, 2025 Season

Participation Agreement for Mary Stevens:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Mary Stevens, (Mary), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Mary.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Mary and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

Copy from re:SearchTX

EXHIBIT A-13                                              CM 000782

**Mary Stevens**, Dec 6, 2016 (9.02)                                              Page: 2

Acknowledgment and Assumption of Risks:


I have read and understand, and have discussed with my child, Mary, the Camp activities and
risks described in this Agreement and in other materials provided by the Camp including
activities described on the Camp's website, www.campmystic.com. She understands them and wishes
to participate. I acknowledge and assume the risks and dangers described above, and all others
associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity
of the Camp, and on or off the Camp premises.


AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND
DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES,
INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND
VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY
AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Mary MAY SUFFER,
ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A
SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE
AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE
NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE
RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN
DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR
GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this
Agreement in an amicable way through discussions then mediation before a mutually acceptable
mediator whose name appears on the registry of names recognized by Texas courts as qualified
persons for mediation assignments.


All disputes, controversies or differences which may arise between the parties out of or in
connection with this Agreement or breach thereof, and which cannot be settled through
discussions and mediation, shall be determined in accordance with the rules of the Commercial
Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall
be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties
hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner
as judgments. This provision to arbitrate shall survive any termination of this Agreement. The
provisions of this Agreement shall remain in full force and effect pending any arbitration
hereunder.


The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney
and who is licensed to practice and on the arbitration list before a Texas or United States
District Court. Unless the parties can agree on an arbitrator, the appointing authority for the
implementation of such procedure shall be the American Arbitration Association, who shall
appoint an independent arbitrator who does not have any financial interest in the dispute,
controversy or claim. All decisions and awards by the arbitrator shall be final and binding.
This Agreement shall be governed by and construed in accordance with the laws of the State of
Texas. All pleadings and documents of any nature submitted by the parties hereto in connection
with such arbitration shall be submitted in the English language.


Enforcement of the award of the arbitrator may be obtained in any court or competent
jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the
arbitration, including without limitation reasonable legal and accounting fees, if any, such
designation to be based to the extent possible upon the relative merits of the parties'
respective cases and the manner in which the parties have conducted themselves.


Additional Provisions:
The Camp may, without compensation to me or Mary, use interviews with and photographic images of
Mary, including videotape, for its website, brochures and other, including promotional,
materials.


If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

EXHIBIT A-13                                      CM 000783

Copy from re:SearchTX

**Mary Stevens**, Dec 6, 2016 (9.02)                                                    Page: 3

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Mary, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Mary, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

**Signature**            Stacy Stevens (04/27/2025)

EXHIBIT A-13                                                        CM 000784

Copy from re:SearchTX

**Greta Toranzo**, Nov 28, 2014 (11.02)    Page: 1

## Participation Agreement 2025

for Greta Toranzo, 2025 Season

Participation Agreement for Greta Toranzo:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Greta Toranzo, (Greta), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Greta.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Greta and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

EXHIBIT A-14

CM 000749

**Greta Toranzo**, Nov 28, 2014 (11.02)                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Greta, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Greta MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Greta, use interviews with and photographic images of Greta, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

EXHIBIT A-14                                                    CM 000750

**Greta Toranzo**, Nov 28, 2014 (11.02)                                        Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Greta, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Greta, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature                Ellen Kolpin Toranzo
                         (05/30/2025)

EXHIBIT A-14

CM 000751

Copy from re:SearchTX

**Margaret Bellows,** Oct 27, 2016 (9.03)                                        Page: 1

# Participation Agreement 2025

for Margaret Bellows, 2025 Season

Participation Agreement for Margaret Bellows:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Margaret Bellows, (Margaret), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Margaret.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Margaret and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

**Margaret Bellows,** Oct 27, 2016 (9.03)                                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Margaret, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Margaret MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Margaret, use interviews with and photographic images of Margaret, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-15                                                             CM 000774

Copy from re:SearchTX

**Margaret Bellows**, Oct 27, 2016 (9.03)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.


I, Parent or legal guardian of Margaret, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Margaret, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.


**Signature**               Patricia Bellows
                            (06/20/2025)


EXHIBIT A-15

Copy from re:SearchTX

CM 000775

**Lila Bonner**, Jun 26, 2016 (9.07)                                                    Page: 1

# Participation Agreement 2025

for Lila Bonner, 2025 Season

Participation Agreement for Lila Bonner:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Lila Bonner, (Lila), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Lila.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Lila and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

Copy from re:SearchTX

EXHIBIT A-16

CM 000764

**Lila Bonner**, Jun 26, 2016 (9.07)                                                    Page: 2

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Lila, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Lila MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Lila, use interviews with and photographic images of Lila, including videotape, for its website, brochures and other, including promotional, materials.

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

Copy from re:SearchTX

EXHIBIT A-16                                                    CM 000765

**Lila Bonner**, Jun 26, 2016 (9.07)                                    Page: 3

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Lila, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Lila, and our respective heirs, personal representatives, estates and family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

**Signature**                Caitlin Bonner (02/21/2025)

EXHIBIT A-16                                    CM 000766

Copy from re:SearchTX

# Participation Agreement 2024

for Chloe Childress, 2024 Season

Participation Agreement for Chloe Childress:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Chloe Childress, (Chloe), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Chloe.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Chloe and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

<div align="center" style="color:red">EXHIBIT A-17</div>

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.


Acknowledgment and Assumption of Risks:


I have read and understand, and have discussed with my child, Chloe, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.


AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Chloe MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.


All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.


The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.


Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.


Additional Provisions:
The Camp may, without compensation to me or Chloe, use interviews with and photographic images of Chloe, including videotape, for its website, brochures and other, including promotional, materials.


<span style="color:red">EXHIBIT A-17</span>

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.


I, Parent or legal guardian of Chloe, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Chloe, and our respective heirs, personal representatives, estates and family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.


**Signature**            Wendie Childress
                         (03/31/2024)


EXHIBIT A-17

Copy from re:SearchTX

**Molly DeWitt**, Jun 10, 2016 (9.08)                                                          Page: 1

## Participation Agreement 2025

for Molly DeWitt, 2025 Season

Participation Agreement for Molly DeWitt:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Molly DeWitt, (Molly), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Molly.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Molly and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

EXHIBIT A-18                                                                    CM 000785

**Molly DeWitt**, Jun 10, 2016 (9.08)                                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Molly, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Molly MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Molly, use interviews with and photographic images of Molly, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-18                                                                 CM 000786

Copy from re:SearchTX

**Molly DeWitt**, Jun 10, 2016 (9.08)                                      Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Molly, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Molly, and our respective heirs, personal representatives, estates and family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

**Signature**              Ryan DeWitt (06/03/2025)

EXHIBIT A-18

Copy from re:SearchTX

CM 000787

# Participation Agreement 2024

for Katherine Ferruzzo, 2024 Season

Participation Agreement for Katherine Ferruzzo:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Katherine Ferruzzo, (Katherine), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Katherine.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Katherine and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

<span style="color:red">EXHIBIT A-19</span>

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Katherine, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Katherine MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Katherine, use interviews with and photographic images of Katherine, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-19

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.


I, Parent or legal guardian of Katherine, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Katherine, and our respective heirs, personal representatives, estates and family members.

  [X] I have read and agree to the terms and conditions above.
  [] I do not give permission to my child.


**Signature**          Andrea Ferruzzo (04/07/2024)

EXHIBIT A-19

Copy from re:SearchTX

Lainey Landry, Mar 30, 2016 (9.10)

## Participation Agreement 2025

for Lainey Landry, 2025 Season

Participation Agreement for Lainey Landry:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Lainey Landry, (Lainey), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Lainey.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Lainey and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

EXHIBIT A-20

CM 000761

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Lainey, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Lainey MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Lainey, use interviews with and photographic images of Lainey, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-20

CM 000762

Copy from re:SearchTX

**Lainey Landry**, Mar 30, 2016 (9.10)                              Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Lainey, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Lainey, and our respective heirs, personal representatives, estates and family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

**Signature**            Natalie Landry (05/14/2025)

EXHIBIT A-20                                    CM 000763

Copy from re:SearchTX

**Blakely McCrory**, Apr 10, 2017 (8.10)                                    Page: 1

## Participation Agreement 2025

for Blakely McCrory, 2025 Season

Participation Agreement for Blakely McCrory:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Blakely McCrory, (Blakely), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Blakely.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Blakely and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

**EXHIBIT A-21**

CM 000737

**Blakely McCrory**, Apr 10, 2017 (8.10)                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Blakely, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Blakely MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Blakely, use interviews with and photographic images of Blakely, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-21                                    CM 000738

Copy from re:SearchTX

**Blakely McCrory**, Apr 10, 2017 (8.10)                                          Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Blakely, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Blakely, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

**Signature**                 Lindsey McLeod McCrory
                              (06/09/2025)

EXHIBIT A-21                                                    CM 000739

Copy from re:SearchTX

**Mary Kate Jacobe**, Oct 27, 2016 (9.03)                                                   Page: 1

## Participation Agreement 2025

for Mary Kate Jacobe, 2025 Season

Participation Agreement for Mary Kate Jacobe:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Mary Kate Jacobe, (Mary Kate), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Mary Kate.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Mary Kate and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

EXHIBIT A-22

CM 000779

**Mary Kate Jacobe**, Oct 27, 2016 (9.03)                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Mary Kate, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Mary Kate MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Mary Kate, use interviews with and photographic images of Mary Kate, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-22                                                        CM 000780

Copy from re:SearchTX

**Mary Kate Jacobe**, Oct 27, 2016 (9.03)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.


I, Parent or legal guardian of Mary Kate, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Mary Kate, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

**Signature**              Samantha Jacobe (06/17/2025)

EXHIBIT A-22

Copy from re:SearchTX

CM 000781

# EXHIBIT B

Copy from re:SearchTX

COMMERCIAL



# Commercial

## Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Commercial Disputes**



American Arbitration Association®

Available online at **adr.org/commercial**
Rules Amended and Effective September 1, 2022

Copy from re:SearchTX

If you would like to speak to a member of the AAA Commercial Team, please visit **https://go.adr.org/commercial-contact.html**.

Copy from re:SearchTX

# Table of Contents

Important Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Standard Arbitration Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Large, Complex Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Commercial Arbitration Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

   R-1. Agreement of Parties*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

   R-2. AAA, Delegation of Duties, Conduct of Parties, Administrative Review Council . .  11

   R-3. National Roster of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

   R-4. Filing Requirements and Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

   R-5. Answers and Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

   R-6. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

   R-7. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

   R-8. Consolidation and Joinder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

   R-9. Interpretation and Application of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

   R-10. Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

   R-11. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

   R-12. Fixing of Locale. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

   R-13. Appointment from National Roster. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

   R-14. Direct Appointment by Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

   R-15. Appointment of Chairperson by Party-Appointed Arbitrators, Parties, or
   the AAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

   R-16. Nationality of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

   R-17. Number of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

   R-18. Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

   R-19. Disqualification of Arbitrator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

   R-20. Communication with Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

   R-21. Vacancies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

   R-22. Preliminary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

   R-23. Pre-Hearing Exchange and Production of Information. . . . . . . . . . . . . . . . .  22

Copy from re:SearchTX

R-24. Enforcement Powers of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

R-25. Date, Time, Place, and Method of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

R-26. Attendance at Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-27. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-28. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-29. Official Record of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-30. Interpreters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-31. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-32. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . . . . 25

R-33. Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-34. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-35. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-36. Evidence by Written Statements and Post-Hearing Filing of Documents or Other

Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-37. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-38. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-39. Emergency Measures of Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-40. Closing of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-41. Reopening of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-42. Waiver of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-43. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-44. Serving of Notice and Communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-45. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-46. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-47. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

R-48. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

R-49. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

R-50. Award Upon Settlement – Consent Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-51. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-52. Modification of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-53. Release of Documents for Judicial Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-54. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

R-55. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

R-56. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

R-57. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

R-58. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Copy from re:SearchTX

R-59. Remedies for Nonpayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

R-60. Sanctions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## Preliminary Hearing Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

P-1. General  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

P-2. Checklist  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## Expedited Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

E-1. Limitation on Extensions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

E-2. Changes of Claim or Counterclaim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

E-3. Serving of Notice  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

E-4. Appointment and Qualifications of Arbitrator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

E-5. Discovery, Motions, and Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

E-6. Proceedings on Documents and Procedures for the Resolution of Disputes Through

Document Submission. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

E-7. Date, Time, Place, and Method of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

E-8. The Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

E-9. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

E-10. Arbitrator's Compensation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

## Procedures for Large, Complex Commercial Disputes. . . . . . . . . . . . . . . . . . . . . . . . . . 42

L-1. Administrative Conference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

L-2. Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

L-3. Management of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

## Administrative Fee Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

## Commercial Mediation Procedures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

M-1. Agreement of Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

M-3. Representation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

M-4. Appointment of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

M-5. Mediator's Impartiality and Duty to Disclose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

M-6. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

M-7. Duties and Responsibilities of the Mediator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

M-8. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

M-9. Privacy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

M-10. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Copy from re:SearchTX

M-11. No Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

M-12. Termination of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

M-13. Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

M-14. Interpretation and Application of Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

M-15. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

M-16. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

M-17. Cost of the Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Copy from re:SearchTX



# Commercial Arbitration Rules and Mediation Procedures

(Including Procedures for Large, Complex Commercial Disputes)

## Important Notice

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA®. To ensure that you have the most current information, see our web site at [www.adr.org](www.adr.org).

## Introduction

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association® (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government. Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on various forms of alternative dispute resolution.

Copy from re:SearchTX

## Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

*Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

*We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following Controversy: (describe briefly). We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

## Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees. The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

## Mediation

Subject to the right of any party to opt out, in cases where a claim or counterclaim exceeds $100,000, the Rules provide that the parties shall mediate their dispute upon the administration of the arbitration or at any time when the arbitration is pending. In mediation, the neutral mediator assists the parties in reaching a

Copy from re:SearchTX

settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation Procedures. There is no additional filing fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

Although these rules include a mediation procedure that will apply to many cases, parties may still want to incorporate mediation into their contractual dispute settlement process. Parties can do so by inserting the following mediation clause into their contract in conjunction with a standard arbitration provision:

> *If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission agreement:

> *The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

## Large, Complex Cases

Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $1,000,000 exclusive of claimed interest, arbitration fees and costs. The key features of these Procedures include:

> A highly qualified, trained Roster of Neutrals;

> A mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference or other electronic means;

> Broad arbitrator authority to order and control the exchange of information, including depositions;

> A presumption that hearings will proceed on a consecutive or block basis.

Copy from re:SearchTX

# Commercial Arbitration Rules

## R-1. Agreement of Parties*

**(a)** The parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These Rules and any amendment to them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration or Submission Agreement received by the AAA. Any disputes regarding which AAA rules shall apply shall be decided by the AAA. The parties, by written agreement, may vary the procedures set forth in these Rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

**(b)** Unless the parties agree or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $100,000, exclusive of interest, attorneys' fees, and arbitration fees and costs. Parties may also agree to use these Procedures in larger cases. Unless the parties agree otherwise, these Procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Procedures E-1 through E-10, in addition to any other portion of these Rules that is not in conflict with the Expedited Procedures.

**(c)** Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $1,000,000, exclusive of claimed interest, attorneys' fees, arbitration fees and costs. Parties may also agree to use the Procedures in cases involving claims or counterclaims under $1,000,000 or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Procedures L-1 through L-3 in addition to any other portion of these Rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

**(d)** Parties may, by agreement, apply the Expedited Procedures; the Procedures for Large, Complex Commercial Disputes; or the Procedures for the Resolution of Disputes Through Document Submission (Procedure E-6) to any dispute.

**(e)** All other cases shall be administered in accordance with Rules R-1 through R-60 of these Rules.

*\* The AAA will apply the Employment/Workplace Rules to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements. Should a contract call for the Consumer Rules, and the dispute is not between a consumer and a business, the AAA has the discretion to apply the Commercial Rules and Commercial Fee schedule. (Revised 5/1/25)*

*\* Beginning June 1, 2021, the AAA will apply the Consumer Arbitration Fee Schedule to any dispute between an online marketplace or platform and an individual user or subscriber (using or subscribed to the service as an individual and not incorporated) and the dispute does not involve work or work-related claims.*

Copy from re:SearchTX

## R-2. AAA, Delegation of Duties, Conduct of Parties, Administrative Review Council

**(a)** When parties agree to arbitrate under these Rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these Rules, they thereby authorize the AAA to administer the arbitration.

**(b)** The authority and duties of the AAA are prescribed in the agreement of the parties and in these Rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

**(c)** The AAA requires that parties and their representatives conduct themselves in accordance with the AAA's *Standards of Conduct for Parties and Representatives* when utilizing the AAA's services. Failure to do so may result in the AAA's declining to further administer a particular case or caseload.

**(d)** For cases proceeding under the Procedures for Large, Complex Commercial Disputes, and for other cases where the AAA, in its sole discretion, deems it appropriate, the AAA may act through its Administrative Review Council to take the following administrative actions:

   **i)**   determine challenges to the appointment or continuing service of an arbitrator;

   **ii)**  make an initial determination as to the locale of the arbitration, subject to the power of the arbitrator to make a final determination; or

   **iii)** decide whether a party has met the administrative requirements to file an arbitration under these Rules.

## R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators as provided in these Rules. The term "arbitrator" in these Rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

## R-4. Filing Requirements and Procedures

**(a)** Filing Requirements

   **i)**   Arbitration under an arbitration provision in a contract shall be initiated by the initiating party ("claimant") filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration. The filing fee must be paid before a matter is considered properly filed.

Rules Amended and Effective September 1, 2022.                                COMMERCIAL RULES   **11**

Copy from re:SearchTX

ii) Arbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of any applicable arbitration agreement from the parties' contract which provides for arbitration.

    a) The filing party shall include a copy of the court order.

    b) The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party to either make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

    c) The party filing the Demand with the AAA is the claimant and the opposing party is the respondent regardless of which party initiated the court action. Parties may request that the arbitrator alter the order of proceedings if necessary pursuant to Rule R-33.

iii) Parties to any existing dispute who have not previously agreed to use these Rules may commence an arbitration under these Rules by filing a written Submission Agreement and the administrative filing fee. To the extent that the parties' Submission Agreement contains any variances from these Rules, such variances should be clearly stated in the Submission Agreement.

iv) Information to be included with any arbitration filing includes:

    a) the name of each party;

    b) the address of each party and, if known, the telephone number and email address;

    c) if applicable, the name, address, telephone number, and email address of any known representative for each party;

    d) a statement setting forth the nature of the claim including the relief sought and the amount involved; and

    e) the locale requested if the arbitration agreement does not specify one.

**(b)** Filing Procedures

i) The initiating party may file or submit a dispute to the AAA in the following manner:

    a) through AAA WebFile®, located at www.adr.org;

    b) by filing the complete Demand or Submission with any AAA office, regardless of the intended locale of hearing; or

    c) by emailing the complete Demand or Submission to casefiling@adr.org, with payment to follow as directed by the AAA.

ii) The filing party shall simultaneously provide a copy of the Demand and any supporting documents to the opposing party.

Copy from re:SearchTX

iii) Any papers, notices, or process necessary or proper for the initiation of an arbitration under this Rule may be served on a party:

   a) by mail addressed to the party or its authorized representative at their last known address;

   b) by electronic service/email, with the prior agreement of the party being served;

   c) by personal service; or

   d) by any other service methods provided for under the applicable procedures of the courts of the state where the party to be served is located.

iv) The AAA shall provide notice to the parties (or their representatives if so named) of the receipt of a Demand or Submission when the administrative filing requirements have been satisfied. The date on which the filing requirements are satisfied shall establish the date of filing the dispute for administration. However, all disputes in connection with the AAA's determination of the date of filing may be decided by the arbitrator.

v) It is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing an arbitration, as well as any time requirements associated with the filing. Any dispute regarding whether a condition precedent has been met may be raised with the arbitrator for determination.

vi) The AAA has the authority to make an administrative determination whether the filing requirements set forth in this Rule have been met.

vii) If the filing does not satisfy the filing requirements set forth in Section (a) above, the AAA shall acknowledge to all named parties receipt of the incomplete filing, and the filing may be returned to the initiating party.

(c) *Authority of arbitrator.* Any decision made by the AAA regarding filing requirements and procedures shall not interfere with the arbitrator's authority to determine jurisdiction pursuant to Rule R-7.

## R-5. Answers and Counterclaims

(a) A respondent may file an answering statement with the AAA within 14 calendar days after notice of the filing of the Demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of any answering statement to the claimant and to all other parties to the arbitration. If no answering statement is filed within the stated time, the respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

(b) A respondent may file a counterclaim at any time after notice of the filing of the Demand is sent by the AAA, subject to the limitations set forth in Rule R-6. The respondent shall send a copy of the counterclaim to the claimant and all other parties to the arbitration. If a counterclaim is asserted, it shall include a statement setting forth the nature of the counterclaim including the relief sought and the

Copy from re:SearchTX

amount involved. The filing fee as specified in the applicable AAA Fee Schedule must be paid at the time of filing.  The claimant may file an answering statement or reply in response to the counterclaim with the AAA within 14 calendar days after notice of the filing of the counterclaim is sent by the AAA.

**(c)** If the respondent alleges that a different arbitration provision is controlling, the matter will be administered in accordance with the arbitration provision submitted by the initiating party subject to a final determination by the arbitrator.

**(d)** If the counterclaim does not meet the requirements for filing a claim and the deficiency is not cured by the date specified by the AAA, it may be returned to the filing party.

## R-6. Changes of Claim

**(a)** A party may at any time prior to the close of the hearing or by any earlier date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in the administrative fee, the balance of the fee is due before the change of claim or counterclaim amount may be accepted by the arbitrator.  After the arbitrator is appointed, however, a party may increase the amount of its claim or counterclaim, or alter its request for non-monetary relief, only with the arbitrator's consent.

**(b)** Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent.

**(c)** A party that filed a claim or counterclaim of an undisclosed or undetermined amount must specify the amount of the claim or counterclaim to the AAA, all parties, and the arbitrator at least seven calendar days prior to the commencement of the hearing or by any other date established by the arbitrator. If the disclosed amount of the claim or counterclaim results in an increased filing fee, that fee must be paid at the time the claim or counterclaim amount is disclosed. For good cause shown and with the consent of the arbitrator, a party may proceed to the hearing with an undisclosed or undetermined claim or counterclaim, provided that the final amount of the claim or counterclaim is set forth in a post-hearing brief or submission and any appropriate filing fee is paid.

## R-7. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.

Copy from re:SearchTX

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## R-8. Consolidation and Joinder

**(a)** Consolidation

**i)** Two or more arbitrations may be consolidated if all parties to all of the arbitrations to be consolidated so agree.

**ii)** Unless all parties agree to consolidation, the party requesting consolidation of two or more arbitrations must file with the AAA and serve on all other parties a written request for consolidation with the supporting reasons for such request within 90 days of the date the AAA determines that all administrative filing requirements were satisfied for the last-filed case that is part of the consolidation request. Such time limit may be extended by the arbitrator appointed in the first-filed case upon a showing of good cause for the late request. The other parties to the arbitrations shall provide their written responses to the consolidation request within 10 calendar days after the AAA sends notice of receipt of the request.

**iii)** At its discretion, the AAA either may direct that the consolidation request be decided by the arbitrator appointed in the first-filed case or may appoint a consolidation arbitrator for the sole purpose of deciding the consolidation request.

**iv)** The arbitrator deciding consolidation may order consolidation of two or more cases for all purposes or for such limited purposes and under such conditions as the arbitrator may direct.

**v)** Absent agreement of all parties, an arbitrator appointed for the sole purpose of deciding the consolidation request shall have no further power to act, and shall be removed from the case, after the consolidation request is decided.

**vi)** In deciding whether to consolidate, the arbitrator or consolidation arbitrator shall take into account all relevant circumstances, including:

**a)** the terms and compatibility of the agreements to arbitrate,

**b)** applicable law,

**c)** the timeliness of the request to consolidate and the progress already made in the arbitrations,

**d)** whether the arbitrations raise common issues of law and/or fact, and

Copy from re:SearchTX

**e)**  whether consolidation of the arbitrations would serve the interests of justice and efficiency.

**(b)**  Joinder

**i)**  Additional parties may be joined to an arbitration if all parties to the arbitration and the parties proposed to be joined so agree.

**ii)**  Absent such consent, all requests for joinder must be submitted to the AAA prior to the appointment of an arbitrator pursuant to these Rules or within 90 days of the date the AAA determines that all administrative filing requirements have been satisfied. The arbitrator may extend this deadline on a showing of good cause for the late request.

**iii)**  If the existing parties and the parties proposed to be joined are unable to agree to the joinder of those additional parties to an ongoing arbitration, the arbitrator shall decide whether parties should be joined. If an arbitrator has not yet been appointed in the case, the AAA may appoint an arbitrator for the sole purpose of deciding the joinder request. Absent agreement of all parties, the arbitrator appointed for the sole purpose of deciding the joinder request shall have no further power to act, and shall be removed from the case, after the joinder request is decided.

**iv)**  The party requesting the joinder of one or more parties to a pending arbitration must file with the AAA a written request that provides the names and contact information for such parties; the names and contact information for the parties' representatives, if known; and the supporting reasons for such request, including applicable law. The requesting party must provide a copy of the joinder request to all parties in the arbitration and all parties it seeks to join at the same time it files the request with the AAA. The other parties to the arbitration and the parties sought to be joined shall provide their written responses to the joinder request within 14 days after the AAA sends notice of receipt of the request for joinder.

**v)**  The requesting party shall comply with the provisions of Rule R-4(a) as to all parties sought to be joined.

**(c)**  If an arbitrator determines that separate arbitrations shall be consolidated or that the joinder of additional parties is permissible, that arbitrator may also determine:

**i)**  whether any arbitrator previously appointed to an existing case that was consolidated shall remain on the newly constituted case;

**ii)**  whether any arbitrator previously appointed to a case where additional parties have been joined shall remain;

**iii)**  if appropriate, a process for selecting the arbitrator(s) to fill any vacancies; and

**iv)**  unless agreed otherwise by the parties, the allocation among the parties of arbitrator compensation and expenses, subject to reapportionment by the arbitrator appointed to the ongoing or newly constituted case in the final award.

Copy from re:SearchTX

**(d)** The AAA may take reasonable administrative actions to accomplish any consolidation or joinder ordered by the arbitrator or as agreed to by the parties. Pending the determination on a consolidation or joinder request, the AAA shall have the authority to stay the arbitration or arbitrations impacted by the consolidation or joinder request, at its sole discretion.

## R-9. Interpretation and Application of Rules

The arbitrator shall interpret and apply these Rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

## R-10. Mediation

In all cases where a claim or counterclaim exceeds $100,000, upon the AAA's administration of the arbitration or at any time while the arbitration is pending, the parties shall mediate their dispute pursuant to the applicable provisions of the AAA's Commercial Mediation Procedures, or as otherwise agreed by the parties. Absent an agreement of the parties to the contrary, the mediation shall take place concurrently with the arbitration and shall not serve to delay the arbitration proceedings. However, any party to an arbitration may unilaterally }opt out of this Rule upon notification to the AAA and the other parties to the arbitration. The parties shall confirm the completion of any mediation or any decision to opt out of this Rule to the AAA. Unless agreed to by all parties and the mediator, the mediator shall not be appointed as an arbitrator to the case.

## R-11. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person, by videoconference or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, mediation of the dispute, potential exchange of information, a timetable for hearings, and any other administrative matters.

## R-12. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. When the parties' arbitration agreement requires a specific locale, absent the parties' agreement to change it, or a determination by the arbitrator that

Copy from re:SearchTX

applicable law requires a different locale, the locale shall be that specified in the arbitration agreement.

Any disputes regarding the locale that are to be decided by the AAA must be submitted to the AAA and all other parties within 14 calendar days after the AAA sends notice of the filing of the Demand or by the date established by the AAA. Disputes regarding locale shall be determined in the following manner:

**(a)** When the parties' arbitration agreement is silent with respect to locale, and if the parties disagree as to the locale, the AAA shall initially determine the locale of arbitration, subject to the power of the arbitrator after appointment to make a final determination on the locale.

**(b)** If the reference to a locale in the arbitration agreement is ambiguous, and the parties are unable to agree to a specific locale, the AAA shall determine the locale, subject to the power of the arbitrator to finally determine the locale.

**(c)** If the parties' arbitration agreement specifies more than one possible locale, the filing party may select any of the specified locales at the time of filing, subject to the power of the arbitrator to finally determine the locale.

The arbitrator, at the arbitrator's sole discretion, shall have the authority to conduct special hearings for document production purposes or otherwise at other locations if reasonably necessary and beneficial to the process.

## R-13. Appointment from National Roster

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

**(a)** The AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

**(b)** If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 14 calendar days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. At its discretion, the AAA may limit the number of strikes permitted. The parties are not required to exchange selection lists. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable to that party. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if

Copy from re:SearchTX

for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.

**(c)** Unless the parties agree otherwise, when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

## R-14. Direct Appointment by Party

**(a)** If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed. If a party selects an arbitrator for appointment, it shall file the name, address, telephone number, and email address of the arbitrator with the AAA. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

**(b)** Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Rule R-19 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Rule R-19(b) that the party-appointed arbitrators are to be non-neutral and need not meet those standards.

**(c)** If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

**(d)** If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 14 calendar days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

## R-15. Appointment of Chairperson by Party-Appointed Arbitrators, Parties, or the AAA

**(a)** Where there is a panel of three or more arbitrators, one arbitrator will be designated as the panel chairperson. Such designation will be according to the terms of the parties' arbitration agreement. However, if the parties' arbitration agreement does not specify how the chairperson is to be selected, the chairperson can be designated, at the AAA's discretion, by the party-appointed arbitrators, the parties, the panel, or the AAA.

**(b)** If the arbitration agreement specifies a period of time for appointment of the chairperson and no appointment is made within that period or any agreed extension, the AAA may appoint the chairperson. If no period of time is specified for appointment of the chairperson, and the party-appointed arbitrators or the parties do not make the appointment within 14 calendar days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

Copy from re:SearchTX

**(c)** Absent the agreement of the parties, the chairperson shall be appointed from the National Roster, and the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Rule R-13, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Rule.

## R-16. Nationality of Arbitrator

Where the parties are nationals of different countries, the AAA, at the request of any party or on its own initiative, may appoint as arbitrator a national of a country other than that of any of the parties. The request must be made before the time set for the appointment of the arbitrator as agreed by the parties or set by these Rules.

## R-17. Number of Arbitrators

**(a)** The parties may agree on the number of arbitrators to hear and determine the case. If the arbitration agreement does not specify the number of arbitrators or is ambiguous, and the parties do not otherwise agree, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed. A party may request three arbitrators in the Demand or Answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.

**(b)** Use of terms such as "the arbitrator", "an arbitrator", or "the arbitrators" in the arbitration agreement, without further specifying the number of arbitrators, shall not be deemed by the AAA to reflect an agreement as to the number of arbitrators.

**(c)** Any request for a change in the number of arbitrators as a result of an increase or decrease in the amount of a claim or a new or different claim must be made to the AAA and other parties to the arbitration no later than seven calendar days after receipt of the Rule R-6-required notice of change of claim amount. If the parties are unable to agree with respect to the request for a change in the number of arbitrators, the AAA shall make that determination.

## R-18. Disclosure

**(a)** Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration. Failure on the part of a party or a representative to comply with the requirements of this Rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-42.

Copy from re:SearchTX

**(b)** Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

**(c)** Disclosure of information pursuant to this Rule R-18 is not an indication that the arbitrator considers the disclosed circumstance likely to affect impartiality or independence.

## R-19. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

    **i)** partiality or lack of independence,

    **ii)** inability or refusal to perform his or her duties with diligence and in good faith, and

    **iii)** any grounds for disqualification provided by applicable law.

**(b)** The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Rule R-14 shall be non-neutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

**(c)** Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified on the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## R-20. Communication with Arbitrator

**(a)** No party and no one acting on behalf of any party shall communicate *ex parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate *ex parte* with a candidate for direct appointment pursuant to Rule R-14 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

**(b)** Rule R-20(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Rule R-19(b), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Rule R-19(b), the AAA shall as an administrative practice suggest to the parties that they agree further that Rule R-20(a) should nonetheless apply prospectively.

**(c)** As set forth in Rule R-44, unless otherwise instructed by the AAA, in the Rules, or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

Copy from re:SearchTX

## R-21. Vacancies

**(a)** If for any reason an arbitrator is unable or unwilling to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these Rules.

**(b)** In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

**(c)** In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## R-22. Preliminary Hearing

**(a)** At the discretion of the arbitrator, and depending on the size and complexity of the arbitration, a preliminary hearing should be scheduled as soon as practicable after the arbitrator has been appointed. The parties should be invited to attend the preliminary hearing along with their representatives. The preliminary hearing may be conducted in person, by video conference or by telephone.

**(b)** At the preliminary hearing, the parties and the arbitrator should be prepared to discuss and establish a procedure for the conduct of the arbitration that is appropriate to achieve a fair, efficient, and economical resolution of the dispute. Procedures P-1 and P-2 of these Rules address the issues to be considered at the preliminary hearing.

## R-23. Pre-Hearing Exchange and Production of Information

**(a)** *Authority of arbitrator.* The arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses.

**(b)** *Documents.* The arbitrator may, on application of a party or on the arbitrator's own initiative:

  **i)** require the parties to exchange documents in their possession or custody on which they intend to rely;

  **ii)** require the parties to update their exchanges of the documents on which they intend to rely as such documents become known to them;

  **iii)** require the parties, in response to reasonable document requests, to make available to the other party documents in the responding party's possession or custody, not otherwise readily available to the party seeking the documents, and reasonably believed by the party seeking the documents to exist and to be relevant and material to the outcome of disputed issues; and

Copy from re:SearchTX

**iv)** require the parties, when documents to be exchanged or produced are maintained in electronic form, to make such documents available in the form most convenient and economical for the party in possession of such documents, unless the arbitrator determines that there is good cause for requiring the documents to be produced in a different form. The parties should attempt to agree in advance upon, and the arbitrator may determine, reasonable search parameters to balance the need for production of electronically stored documents relevant and material to the outcome of disputed issues against the cost of locating and producing them.

## R-24. Enforcement Powers of Arbitrator

The arbitrator shall have the authority to issue any orders necessary to enforce the provisions of Rules R-22 and R-23 and any other rule or procedure and to otherwise achieve a fair, efficient and economical resolution of the case, including, without limitation:

**(a)** conditioning any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing, on appropriate orders to preserve such confidentiality;

**(b)** imposing reasonable search parameters for electronic and other documents if the parties are unable to agree;

**(c)** allocating costs of producing documentation, including electronically stored documentation;

**(d)** in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and

**(e)** issuing any other enforcement orders which the arbitrator is empowered to issue under applicable law.

## R-25. Date, Time, Place, and Method of Hearing

The arbitrator shall set the date, time, place, and method (including video, audio or other electronic means when appropriate) for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 calendar days in advance of the hearing date, unless otherwise agreed by the parties.

Copy from re:SearchTX

### R-26. Attendance at Hearing

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person.

### R-27. Representation

Any party may participate without representation (*pro se*), or by counsel or any other representative of the party's choosing, unless such choice is prohibited by applicable law. A party intending to be so represented shall notify the other party and the AAA of the name, telephone number and address, and email address if available, of the representative at least seven calendar days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

### R-28. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

### R-29. Official Record of Proceedings

**(a)** Any party desiring a transcribed record of a hearing shall make arrangements directly with a transcriber or transcription service and shall notify the arbitrator and the other parties of these arrangements at least seven calendar days in advance of the hearing. The requesting party or parties shall pay the cost of the record.

**(b)** No other means of recording any proceeding will be permitted absent the agreement of the parties or per the direction of the arbitrator.

**(c)** If the transcript or any other recording is agreed by the parties or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties at the direction of the arbitrator.

**(d)** The arbitrator may resolve any disputes with regard to apportionment of the costs of the transcription or other recording.

Copy from re:SearchTX

## R-30. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

## R-31. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.

## R-32. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

## R-33. Conduct of Proceedings

**(a)** The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

**(b)** The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

**(c)** The arbitrator may also allow for some or all of the presentation of evidence by alternative means including video, audio or other electronic means other than an in-person presentation. Such alternative means must afford a full opportunity for all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and, when involving witnesses, provide an opportunity for cross-examination.

**(d)** The parties may agree to waive oral hearings in any case and may also agree to utilize the *Procedures for Resolution of Disputes Through Document Submission*, found in Procedure E-6.

Copy from re:SearchTX

## R-34. Dispositive Motions

**(a)** The arbitrator may allow the filing of and make rulings upon a dispositive motion only if the arbitrator determines the moving party has shown that the motion is likely to succeed and to dispose of or narrow the issues in the case.

**(b)** Consistent with the goal of achieving an efficient and economical resolution of the dispute, the arbitrator shall consider the time and cost associated with the briefing of a dispositive motion in deciding whether to allow any such motion.

**(c)** Fees, expenses, and compensation associated with a motion or an application to make a motion may be assessed as provided for in Rule R-49(c).

## R-35. Evidence

**(a)** The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default, or has waived the right to be present.

**(b)** The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

**(c)** The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

**(d)** An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

## R-36. Evidence by Written Statements and Post-Hearing Filing of Documents or Other Evidence

**(a)** At a date agreed upon by the parties or ordered by the arbitrator, the parties shall give written notice for any witness or expert witness who has provided a written witness statement to appear in person at the arbitration hearing for examination. If such notice is given, and the witness fails to appear, the arbitrator may disregard the written witness statement and/or expert report of the witness or make such other order as the arbitrator may consider to be just and reasonable.

**(b)** If a witness whose testimony is represented by a party to be essential is unable or unwilling to testify at the hearing, either in person or through electronic or other means, either party may request that the arbitrator order the witness to appear in person for examination before the arbitrator at a time and location where the witness is willing and able to appear voluntarily or can legally be compelled to do so. Any such order may be conditioned upon payment by the requesting party of all reasonable costs associated with such examination.

Copy from re:SearchTX

**(c)** If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

## R-37. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## R-38. Interim Measures

**(a)** The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

**(b)** Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

**(c)** A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

## R-39. Emergency Measures of Protection

**(a)** Unless the parties agree otherwise, the provisions of this Rule shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after October 1, 2013. This Rule shall not apply to cases administered pursuant to the Expedited Procedures.

**(b)** A party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile or email or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

Copy from re:SearchTX

**(c)** Within one business day of receipt of notice from the AAA initiating the request referenced in section (b), the AAA shall appoint a single emergency arbitrator designated to rule on emergency applications. The emergency arbitrator shall expeditiously disclose any circumstance likely, on the basis of the facts disclosed on the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

**(d)** The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such a schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone or video conference or on written submissions as alternatives to a formal hearing. The emergency arbitrator shall have the authority vested in the tribunal under Rule R-7, including the authority to rule on her or his own jurisdiction, and shall resolve any disputes over the applicability of this Rule R-39.

**(e)** If, after consideration, the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage shall result in the absence of emergency relief, and that such party is entitled to such relief under applicable law, the emergency arbitrator may enter an interim order or award granting the relief and stating the reason therefore.

**(f)** Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the non-emergency ("merits") arbitrator is appointed; thereafter such a request shall be addressed to the merits arbitrator. The emergency arbitrator shall have no further power to act after the merits arbitrator is appointed unless the emergency arbitrator is named as the merits arbitrator or as a member of the panel.

**(g)** Any interim award of emergency relief may be conditioned on provision by the party seeking such relief for appropriate security.

**(h)** A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this Rule, the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in this Rule, and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

**(i)** The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the merits arbitrator to determine finally the apportionment of such costs. The emergency arbitrator may take into consideration whether the request for emergency relief was made in good faith.

Copy from re:SearchTX

## R-40. Closing of Hearing

**(a)** The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

**(b)** If documents or responses are to be filed as provided in Rule R-36, or if briefs are to be filed, the hearing shall be declared closed as of the date the arbitrator is satisfied that the record is complete, and such date shall occur no later than seven calendar days from the date of receipt of the last such submissions or hearing transcript.

**(c)** The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing. The AAA may extend the time limit for rendering of the award only in unusual and extreme circumstances.

## R-41. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or by the direction of the arbitrator upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed to by the parties in the arbitration agreement, the matter may not be reopened unless the parties agree to an extension of time. When no specific date is fixed by agreement of the parties, the arbitrator shall have 30 calendar days from the closing of the reopened hearing within which to make an award (or 14 calendar days if the case is governed by the Expedited Procedures).

## R-42. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

## R-43. Extensions of Time

The parties may modify by mutual agreement any period of time established by these Rules or the parties' arbitration agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

Copy from re:SearchTX

## R-44. Serving of Notice and Communications

**(a)** The service methods set forth in Rule R-4(b)(iii) may also be used for the delivery of any filing, notice or communication throughout the course of the arbitration proceeding.

**(b)** The AAA, the arbitrator, and the parties may also use alternative methods of communication or other platforms as directed by the AAA or as agreed by the parties or directed by the arbitrator to exchange any communication or other notice required by these Rules during the course of the arbitration.

**(c)** Unless otherwise instructed by the AAA or by the arbitrator, any party submitting any document or written communication to another party, the AAA or the arbitrator, shall simultaneously provide that material to all other participants, including the AAA.

**(d)** Failure to provide the other party with copies of communications provided to the AAA or the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained therein.

**(e)** The AAA may direct that any oral or written communications sent by a party or their representative shall be sent in a particular manner. The failure of a party or their representative to comply with any such direction may result in the AAA's refusal to consider the issue raised in the communication

**(f)** The AAA may initiate administrative communications with the parties or their representatives either jointly or individually.

**(g)** Any method of service on or notice to a party must be made in such a manner to provide that party with reasonable opportunity to be heard with regard to the dispute.

## R-45. Confidentiality

**(a)** Unless otherwise required by applicable law, court order, or the parties' agreement, the AAA and the arbitrator shall keep confidential all matters relating to the arbitration or the award.

**(b)** Upon the agreement of the parties or the request of any party, the arbitrator may make orders concerning the confidentiality of the arbitration proceedings or of any other matters in connection with the arbitration and may take measures for protecting trade secrets and confidential information.

## R-46. Majority Decision

**(a)** When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement or section (b) of this Rule, a majority of the arbitrators must make all decisions.

**(b)** Where there is a panel of three arbitrators, absent an objection of a party or another member of the panel, the chairperson of the panel is authorized to

Copy from re:SearchTX

resolve any disputes related to the exchange of information or procedural matters without the need to consult the full panel.

**(c)** Absent an objection of a party or another member of the panel, the chairperson may sign any order on behalf of the panel.

## R-47. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the hearing, or, if oral hearings have been waived, from the due date set for receipt of the parties' final statements and proofs.

## R-48. Form of Award

**(a)** Any award shall be in writing and signed by a majority of the arbitrators. Signatures may be executed in electronic or digital form. The award shall be executed in the form and manner required by law.

**(b)** The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

## R-49. Scope of Award

**(a)** The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

**(c)** In the final award or any order disposing of all of the case, the arbitrator shall assess the fees, expenses, and compensation provided in Rules R-55, R-56, and R-57. The arbitrator may also assess such fees, expenses, and compensation in any order or award disposing of part of the case. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

**(d)** The award of the arbitrator may include:

    **i)** interest at such rate and from such date as the arbitrator may deem appropriate; and

    **ii)** an award of attorneys' fees if all parties have requested such an award or it is authorized by law or the parties' arbitration agreement.

Copy from re:SearchTX

### R-50. Award Upon Settlement – Consent Award

(a) If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses as set forth in Rule R-49(c).

(b) The consent award shall not be released to the parties until all administrative fees and all arbitrator compensation have been paid in full.

### R-51. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at their last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

### R-52. Modification of Award

(a) Within 20 calendar days after the transmittal of any award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, interpret the award or correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to re-determine the merits of any claim already decided. The other parties shall be given 10 calendar days to respond to the request. The arbitrator shall dispose of the request within 20 calendar days after transmittal by the AAA to the arbitrator of the request and any response thereto.

(b) If the arbitrator has established a different schedule for such requests, responses, and disposition, the arbitrator's schedule will supersede the deadlines set forth in this Rule.

### R-53. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party to the arbitration, furnish to the party, at its expense, copies or certified copies of any papers in the AAA's possession that are not determined by the AAA to be privileged or confidential.

### R-54. Applications to Court and Exclusion of Liability

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in any judicial proceedings relating to the arbitration or any other services provided by the AAA.

Copy from re:SearchTX

**(c)** Parties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

**(d)** Parties to an arbitration under these Rules shall be deemed to have consented that the AAA shall not be liable to any party in any action for damages, or injunctive or other relief, for any act or omission in connection with any arbitration administered in whole or in part by the AAA or conducted under these Rules. Parties shall also be deemed to have consented that the arbitrator shall not be liable to any party in any action for damages, or injunctive or other relief, for an act or omission in connection with any arbitration administered in whole or in part by the AAA.

**(e)** Parties to an arbitration under these Rules may not call the arbitrator, the AAA, or AAA employees as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

## R-55. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe administrative fees to compensate it for the cost of providing administrative services. The fee schedule in effect when the Demand is filed will apply throughout the pendency of the case. The administrative fees shall be paid initially by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

## R-56. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

## R-57. Neutral Arbitrator's Compensation

**(a)** Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation at the time their AAA resume is presented to the parties for consideration pursuant to Rule R-13, unless otherwise determined by the AAA. Such compensation will be consistent with the provisions of the arbitrator's executed *Notice of Compensation Arrangements.*

Rules Amended and Effective September 1, 2022.

Copy from re:SearchTX

**(b)** If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

**(c)** Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

## R-58. Deposits

**(a)** The AAA will require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's compensation and expenses, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case. A party's failure to make the requested deposits by the date established by the AAA may result in the AAA's or the arbitrator's taking any appropriate steps as set forth in Rule R-59.

**(b)** Other than in cases where the arbitrator serves for a flat fee, deposit amounts requested will be based on estimates provided by the arbitrator. The arbitrator will determine the estimated amount of deposits using the information provided by the parties with respect to the complexity of each case.

**(c)** The AAA shall request from the arbitrator an itemization or explanation for the arbitrator's request for deposits.

**(d)** The AAA will allocate the deposits requested among the parties and will establish due dates for the collection of those deposits.

## R-59. Remedies for Nonpayment

If arbitrator compensation or expenses or the AAA's administrative fees have not been paid in full, the AAA may so inform the parties so that one of them may advance the required payment.

**(a)** Upon receipt of information from the AAA that payment for administrative fees or deposits for arbitrator compensation or expense have not been paid in full, to the extent the law allows, a party may request that the arbitrator take specific measures relating to a party's non-payment. Such measures may include, but are not limited to:

    **i)** limiting a party's ability to assert or pursue its claim, and

    **ii)** prohibiting a non-paying party from filing any motion.

**(b)** In no event, however, shall a party be precluded from defending a claim or counterclaim.

**(c)** The arbitrator must provide the party opposing a request for such measures with the opportunity to respond prior to making any ruling regarding the same.

Copy from re:SearchTX

**(d)** In the event that the arbitrator grants any request for relief which limits any party's participation in the arbitration, the arbitrator shall require the party who is making a claim and who has made appropriate payments to submit such evidence as the arbitrator may require for the making of an award.

**(e)** Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative or at the request of the AAA or a party, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

**(f)** If the arbitration has been suspended by either the AAA or the arbitrator and the parties have failed to make the full payments requested within the time provided after the suspension, the arbitrator, or the AAA if an arbitrator has not been appointed, may terminate the proceedings.

## R-60. Sanctions

**(a)** The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these Rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

**(b)** The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application.

Copy from re:SearchTX

# Preliminary Hearing Procedures

## P-1. General

**(a)** In all but the simplest cases, holding a preliminary hearing as early in the process as possible will help the parties and the arbitrator organize the proceeding in a manner that will maximize efficiency and economy, and will provide each party a fair opportunity to present its case.

**(b)** Care must be taken to avoid importing procedures from court systems, as such procedures may not be appropriate to the conduct of arbitrations as an alternative form of dispute resolution that is designed to be simpler, less expensive and more expeditious.

## P-2. Checklist

**(a)** The following checklist suggests subjects that the parties and the arbitrator should address at the preliminary hearing, in addition to any others that the parties or the arbitrator believe to be appropriate to the particular case. The items to be addressed in a particular case will depend on the size, subject matter, and complexity of the dispute, and are subject to the discretion of the arbitrator:

    **i)** the possibility of other non-adjudicative methods of dispute resolution, including mediation pursuant to Rule R-10;

    **ii)** whether all necessary or appropriate parties are included in the arbitration;

    **iii)** whether a party will seek a more detailed statement of claims, counterclaims or defenses;

    **iv)** whether there are any anticipated amendments to the parties' claims, counterclaims, or defenses;

    **v)** which

        **a)** arbitration rules;

        **b)** procedural law; and

        **c)** substantive law govern the arbitration;

    **vi)** issues related to cybersecurity, privacy and data protection to provide for an appropriate level of security and compliance in connection with the proceeding;

    **vii)** whether there are any threshold or dispositive issues that can efficiently be decided without considering the entire case, including without limitation,

        **a)** any preconditions that must be satisfied before proceeding with the arbitration;

        **b)** whether any claim or counterclaim falls outside the arbitrator's jurisdiction or is otherwise not arbitrable;

Copy from re:SearchTX

**c)** consolidation of the claims or counterclaims with another arbitration; or

**d)** bifurcation of the proceeding.

**viii)** whether the parties will exchange documents, including electronically stored documents, on which they intend to rely in the arbitration, and/or make written requests for production of documents within defined parameters;

**ix)** whether to establish any additional procedures to obtain information that is relevant and material to the outcome of disputed issues;

**x)** how costs of any searches for requested information or documents that would result in substantial costs should be borne;

**xi)** whether any measures are required to protect confidential information;

**xii)** Whether the parties shall disclose:

**a)** whether any non-party (such as a third-party funder or an insurer) has undertaken to pay or to contribute to the cost of a party's participation in the arbitration, and if so, to identify the person or entity concerned and to describe the nature of the undertaking; and

**b)** whether any non-party (such as a funder, insurer, parent company, or ultimate beneficial owner) has an economic interest in the outcome of the arbitration, and if so, to identify the person or entity concerned and to describe the nature of the interest;

**xiii)** whether the parties intend to present evidence from expert witnesses, and if so, whether to establish a schedule for the parties to identify their experts and exchange expert reports;

**xiv)** whether, according to a schedule set by the arbitrator, the parties will:

**a)** identify all witnesses, the subject matter of their anticipated testimonies, exchange written witness statements, and determine whether written witness statements will replace direct testimony at the hearing;

**b)** exchange and pre-mark documents that each party intends to submit; and

**c)** exchange pre-hearing submissions, including exhibits;

**xv)** the date, time and place of the arbitration hearing;

**a)** whether, at the arbitration hearing,

**b)** testimony may be presented in person, in writing, by videoconference, via the internet, telephonically, or by other reasonable means;

**xvi)** there will be a stenographic transcript or other record of the proceeding and, if so, who will make arrangements to provide it;

**xvii)** whether any procedure needs to be established for the issuance of subpoenas;

**xviii)** the identification of any ongoing, related litigation or arbitration;

**xix)** whether post-hearing submissions will be filed;

Rules Amended and Effective September 1, 2022.

Copy from re:SearchTX

**xx)** the form of the arbitration award; and

**xxi)** any other matter the arbitrator considers appropriate or a party wishes to raise.

**(b)** The arbitrator shall issue a written order memorializing decisions made and agreements reached during or following the preliminary hearing.

Copy from re:SearchTX

# Expedited Procedures

## E-1. Limitation on Extensions

**(a)** Except in extraordinary circumstances, the AAA or the arbitrator may grant a party no more than one seven-day extension of time to respond to the Demand for Arbitration or counterclaim as provided in Rule R-5.

**(b)** Any other extension requests may be granted only after consideration of Procedure E-7.

## E-2. Changes of Claim or Counterclaim

A claim or counterclaim may be increased in amount, or a new or different claim or counterclaim added, any time prior to the appointment of the arbitrator. However, after the arbitrator is appointed, no new or different claim or counterclaim may be submitted except with the arbitrator's consent. If an increased claim or counterclaim exceeds $100,000, the case will be administered under the regular Commercial Arbitration Rules unless all parties and the arbitrator agree that the case may continue to be administered under the Expedited Procedures.

## E-3. Serving of Notice

In addition to notice provided by Rule R-44, the parties shall also accept notice by telephone. Telephonic notices by the AAA shall subsequently be confirmed in writing to the parties. Should there be a failure to confirm in writing any such oral notice, the proceeding shall nevertheless be valid if notice has, in fact, been given by telephone.

## E-4. Appointment and Qualifications of Arbitrator

**(a)** The AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its National Roster from which one arbitrator shall be appointed.

**(b)** The parties are encouraged to agree to an arbitrator from this list and to advise the AAA of their agreement. If the parties are unable to agree upon an arbitrator, each party may strike two names from the list and return it to the AAA within seven days from the date of the AAA's mailing to the parties. If for any reason the appointment of an arbitrator cannot be made from the list, the AAA may make the appointment from other members of the panel without the submission of additional lists.

**(c)** The parties will be given notice by the AAA of the appointment of the arbitrator, who shall be subject to disqualification for the reasons specified in Rule R-19.

Copy from re:SearchTX

The parties shall notify the AAA within seven calendar days of any objection to the arbitrator appointed. Any such objection shall be for cause and shall be confirmed in writing to the AAA with a copy to the other party or parties.

## E-5. Discovery, Motions, and Conduct of Proceedings

**(a)** At least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator shall resolve disputes concerning the exchange of exhibits.

**(b)** No other discovery shall be permitted except as allowed by the arbitrator for good cause shown. If the arbitrator allows additional discovery, the AAA, in consultation with the arbitrator, may remove the case from the Expedited Procedures.

**(c)** There shall be no motions except as allowed by the arbitrator for good cause shown.

## E-6. Proceedings on Documents and Procedures for the Resolution of Disputes Through Document Submission

Where no party's claim exceeds $25,000, exclusive of interest, attorneys' fees and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary. Where cases are resolved by submission of documents, the following procedures may be utilized at the agreement of the parties or the discretion of the arbitrator:

**(a)** Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator may convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

**(b)** The arbitrator has the discretion to remove the case from the documents-only process if the arbitrator determines that an in-person hearing is necessary.

**(c)** If the parties agree to in-person hearings after a previous agreement to proceed under this Procedure, the arbitrator shall conduct such hearings. If a party seeks to have in-person hearings after agreeing to this Procedure, but there is not agreement among the parties to proceed with in-person hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

**(d)** The arbitrator shall establish the date for either written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing and the time for the rendering of the award shall commence.

**(e)** Unless the parties have agreed to a form of award other than that set forth in Rule R-48, when the parties have agreed to resolve their dispute by this Procedure, the

Copy from re:SearchTX

arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

**(f)** If the parties agree to a form of award other than that described in Rule R-48, the arbitrator shall have 30 calendar days from the date the hearing is declared closed in which to render the award.

**(g)** The award is subject to all other provisions of the regular Commercial Arbitration Rules which pertain to awards.

## E-7. Date, Time, Place, and Method of Hearing

In cases in which a hearing is to be held, the arbitrator shall set the date, time, place, and method of the hearing, to be scheduled to take place no more than 60 days after the preliminary hearing or as otherwise mutually agreed to between the parties and the arbitrator. The AAA will notify the parties in advance of the hearing date.

## E-8. The Hearing

**(a)** Absent good cause shown, the hearing shall not exceed one day. Each party shall have equal opportunity to submit its proofs and complete its case. The arbitrator shall determine the order of the hearing, and may require further submission of documents within two business days after the hearing.

**(b)** For good cause shown, the arbitrator may schedule one additional day of hearings to be completed within seven business days after the initial day of hearing or as soon as practicable as determined by the arbitrator. In cases where the hearing is scheduled to exceed one day, the AAA, in consultation with the arbitrator, may remove the case from the Expedited Procedures.

**(c)** Generally, there will be no stenographic record. Any party desiring a transcribed record of the hearing may arrange for one pursuant to the provisions of Rule R-29.

## E-9. Time of Award

Unless otherwise agreed by the parties and arbitrator, the award shall be rendered not later than 14 calendar days from the date of the closing of the hearing or, if oral hearings have been waived, from the due date established for the receipt of the parties' final statements and proofs.

## E-10. Arbitrator's Compensation

**(a)** Arbitrators will receive compensation at a rate to be suggested by the AAA regional office.

**(b)** For cases that are removed from the Expedited Procedures after the preliminary hearing is held, the arbitrator shall be compensated pursuant to Rule R-57.

Copy from re:SearchTX

# Procedures for Large, Complex Commercial Disputes

## L-1. Administrative Conference

Prior to the dissemination of a list of potential arbitrators, the AAA may, unless the parties agree otherwise, conduct an administrative conference with the parties and/or their attorneys or other representatives by conference call or video conference. The conference will take place as soon as practicable after the commencement of the arbitration. In the event the parties are unable to agree on a mutually acceptable time for the conference, the AAA may contact the parties individually to discuss the issues contemplated herein. Such administrative conference shall be conducted for the following purposes and for such additional purposes as the parties or the AAA may deem appropriate:

**(a)** to obtain additional information about the nature and magnitude of the dispute and the anticipated length of hearing and scheduling;

**(b)** to discuss the views of the parties about the technical and other qualifications of the arbitrators;

**(c)** to obtain conflicts statements from the parties; and

**(d)** to consider, with the parties, whether mediation or other non-adjudicative methods of dispute resolution might be appropriate.

## L-2. Arbitrators

**(a)** Large, complex commercial cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. With the exception in paragraph (b) below, if the parties do not agree upon the number of arbitrators and a claim or counterclaim involves at least $3,000,000 then three arbitrators shall hear and determine the case; otherwise one arbitrator shall hear and determine the case.

**(b)** In cases involving the financial hardship of a party or other circumstance, the AAA at its discretion may require that only one arbitrator hear and determine the case, regardless of the amount of the claim and counterclaim.

**(c)** The AAA shall appoint the arbitrator as agreed by the parties. If they are unable to agree on a method of appointment, the AAA shall appoint arbitrators from the Large, Complex Commercial Case Panel, in the manner provided in the regular Commercial Arbitration Rules. Absent agreement of the parties, the arbitrator shall not have served as the mediator in the mediation phase of the instant proceeding.

Copy from re:SearchTX

## L-3. Management of Proceedings

**(a)** The arbitrator shall take such steps as deemed necessary or desirable to avoid delay and to achieve a fair, speedy and cost-effective resolution of a Large, Complex Commercial Dispute.

**(b)** As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be scheduled in accordance with Procedures P-1 and P-2 of these rules.

**(c)** The parties shall exchange copies of all exhibits they intend to submit at the hearing at least 10 calendar days prior to the hearing unless the arbitrator determines otherwise.

**(d)** The parties and the arbitrator shall address issues pertaining to the pre-hearing exchange and production of information in accordance with Rule R-23 of the AAA Commercial Rules, and the arbitrator's determinations on such issues shall be included within a scheduling order.

**(e)** The arbitrator, or any single member of the panel, shall be authorized to resolve any disputes concerning the pre-hearing exchange and production of documents and information by any reasonable means within their discretion, including, without limitation, the issuance of orders set forth in Rules R-23 and R-24 of the AAA Commercial Rules.

**(f)** In exceptional cases, at the discretion of the arbitrator, upon good cause shown and consistent with the expedited nature of arbitration, the arbitrator may order depositions to obtain the testimony of a person who may possess information determined by the arbitrator to be relevant and material to the outcome of the case. The arbitrator may allocate the cost of taking such a deposition.

**(g)** Generally, hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.

## Administrative Fee Schedule

FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT www.adr.org/feeschedule.

Copy from re:SearchTX

# Commercial Mediation Procedures

## M-1. Agreement of Parties*

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedural guidelines, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

## M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a request for mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for mediation may also be filed online via AAA WebFile at www.adr.org.

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

**(i)** A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.

**(ii)** The names, regular mail addresses, email addresses, and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.

*If a contract calls for the Commercial Mediation Procedures, and the dispute is between a consumer and a business or between an online marketplace or platform and an individual user or subscriber (using or subscribed to the service as an individual and not incorporated) and the dispute does not involve work or work-related claims, the AAA has the discretion to apply the Consumer Mediation Procedures and Consumer Fee Schedule.

If the dispute is between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements, the AAA has the discretion to apply the Employment/Workplace Mediation Procedures and Employment/Workplace Fee Schedule.

If a contract calls for the Consumer Mediation Procedures, and the dispute is not between a consumer and a business, the AAA has the discretion to apply the Commercial Mediation Procedures and Commercial Fee schedule

Copy from re:SearchTX

**(iii)** A brief statement of the nature of the dispute and the relief requested.

**(iv)** Any specific qualifications the mediator should possess.

## M-3. Representation

Subject to any applicable law, any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

## M-4. Appointment of the Mediator

If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

**(i)** Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

**(ii)** If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

**(iii)** If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-5. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the *Model Standards of Conduct for Mediators* in effect at the time a mediator is appointed to a case. Where there is a conflict between the *Model Standards* and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Rules Amended and Effective September 1, 2022.

Copy from re:SearchTX

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

## M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-4.

## M-7. Duties and Responsibilities of the Mediator

**(i)** The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.

**(ii)** The mediator is authorized to conduct separate or *ex parte* meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email, online, in person or otherwise.

**(iii)** The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

**(iv)** The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make

Copy from re:SearchTX

oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

**(v)** In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

**(vi)** The mediator is not a legal representative of any party and has no fiduciary duty to any party.

## M-8. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-9. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-10. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

Copy from re:SearchTX

**(i)** Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;

**(ii)** Admissions made by a party or other participant in the course of the mediation proceedings;

**(iii)** Proposals made or views expressed by the mediator; or

**(iv)** The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-11. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-12. Termination of Mediation

The mediation shall be terminated:

**(i)** By the execution of a settlement agreement by the parties; or

**(ii)** By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

**(iii)** By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

**(iv)** When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

## M-13. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures.

## M-14. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

Copy from re:SearchTX

## M-15. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

## M-16. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

## M-17. Cost of the Mediation

FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT www.adr.org/feeschedule.

Copy from re:SearchTX

*© 2025 American Arbitration Association, Inc. All rights reserved. These rules are the copyrighted property of the*
*American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.*
*Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws.*
*Please contact 800.778.7879 or websitemail@adr.org for additional information.*

Copy from re:SearchTX



800.778.7879 | websitemail@adr.org | adr.org

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kimberly Cuellar-Jimenez on behalf of Thomas Wright
Bar No. 22059400
cuellar@wcbglaw.com
Envelope ID: 112823165
Filing Code Description: Motion (No Fee)
Filing Description: DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY
Status as of 3/29/2026 10:46 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| W. Mark Lanier | | wml@lanierlawfirm.com | 3/24/2026 9:46:16 PM | SENT |
| Sam Taylor | | sam.taylor@lanierlawfirm.com | 3/24/2026 9:46:16 PM | SENT |
| A. Arnold | | arnold@arnoldfreemanlaw.com | 3/24/2026 9:46:16 PM | SENT |
| Christopher Freeman | | cfreeman@arnoldfreemanlaw.com | 3/24/2026 9:46:16 PM | SENT |
| Abby Heath | | aheath@arnoldfreemanlaw.com | 3/24/2026 9:46:16 PM | SENT |
| Sara Abston | | sara.abston@lanierlawfirm.com | 3/24/2026 9:46:16 PM | SENT |
| Cris Garcia | | Cris.garcia@lanierlawfirm.com | 3/24/2026 9:46:16 PM | SENT |
| Jeff Ray | | jray@raylaw.com | 3/24/2026 9:46:16 PM | SENT |
| Linda Gonzales | | lgonzales@raylaw.com | 3/24/2026 9:46:16 PM | SENT |
| Katherine Estrada | | kestrada@raylaw.com | 3/24/2026 9:46:16 PM | SENT |
| Laura Rua | | lrua@raylaw.com | 3/24/2026 9:46:16 PM | SENT |
| Mikal Watts | | mikal@wattsllp.com | 3/24/2026 9:46:16 PM | SENT |
| Kenneth Fair | | fair@wrightclosebarger.com | 3/24/2026 9:46:16 PM | SENT |
| Tom Wright | | wright@wrightclosebarger.com | 3/24/2026 9:46:16 PM | SENT |
| Jessica Barger | | barger@wrightclosebarger.com | 3/24/2026 9:46:16 PM | SENT |
| Lynn Castagna | | lynn@texasdefense.com | 3/24/2026 9:46:16 PM | SENT |
| Larry Matthys | | lmatthys@raylaw.com | 3/24/2026 9:46:16 PM | SENT |
| Suzanne Goss | | goss@wrightclosebarger.com | 3/24/2026 9:46:16 PM | SENT |
| Joshua Fiveson | | jfiveson@wcbglaw.com | 3/24/2026 9:46:16 PM | SENT |

Copy from re:SearchTX

04/01/2026 03:38:45 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016



**MAYA GUERRA GAMBLE**
Judge, 459th District Court
Travis County Civil and Family Courts Facility, P.O. Box 1748
Austin, Texas 78767
512-854-9384

April 1, 2026

Bradley E. Beckworth
Christina Yarnell
Nix Patterson, LLP
8701 Bee Cave Rd.
Seven Oaks East, Suite 500
Austin, TX 78746
*Via email:* bbeckworth@nixlaw.com
*Via email:* cyarnell@nixlaw.com

Mikal Watts
Watts Law Firm LLP
110 Tributary Ranch Rd.
Mountain Home, TX 78058
*Via email:* mikal@wattsllp.com

Blair Townsend
The Townsend Law Firm, LLC
50 SW Pine St., Suite 400
Portland, OR 97204
*Via email:* blair@thetownsendlawfirm.com

Jeff Ray
Ray Pena P.C.
9601 McAllister Fwy., Suite 901
San Antonio, TX 78216
*Via email:* jray@raylaw.com

Thomas C. Wright
Jessica Z. Barger
Kenneth J. Fair
Wright Close Barger & Guzman, LLP
1 Riverway, Suite 2200
Houston, TX 77056
*Via email:* wright@wrightclosebarger.com
*Via email:* barger@wrightclosebarger.com
*Via email:* fair@wrightclosebarger.com

Lynn S. Castagna
CASTAGNA SCOTT LLP
1120 S. Capital of TX Hwy, Bldg. 2, Suite 300
Austin, TX 78746
*Via email:* lynn@texasdefense.com

R. Paul Yetter
Justin P. Tschoepe
J. Reid Simpson
Shannon N. Smith
YETTER COLEMAN LLP
811 Main St., Suite 4100
Houston, TX 77002
*Via email:* pyetter@yettercoleman.com
*Via email:* jtschoepe@yettercoleman.com
*Via email:* jrsimpson@yettercoleman.com
*Via email:* ssmith@yettercoleman.com

John W. Stevenson, Jr.
W. Robert Hand
STEVENSON & MURRAY
24 Greenway Plaza, Suite 750
Houston, TX 77046
*Via email:* jstevenson@stevensonmurray.com
*Via email:* rhand@stevensonmurray.com

Copy from re:SearchTX

Kurt Arnold
J. Kyle Findley
Kala F. Sellers
John G. Grinnan
Arnold & Itkin, LLP
6009 Memorial Dr.
Houston, TX 77007
*Via email:* e-service@arnolditkin.com

Daniel C. Bitting
Ferguson Braswell Fraser Kubasta PC
4301 Westbank Dr., Bldg. A, Suite 225
Austin, TX 78746
*Via email:* dbitting@fbfk.law

Randy R. Howry
Sean E. Breen
Howry Breen & Herman, LLP
1900 Pearl St.
Austin, TX 78705
*Via email:* rhowry@howrybreen.com
*Via email:* sbreen@howrybreen.com

Jarom Tefteller
TEFTELLER LAW, PLLC
403 W. Tyler St.
Gilmer, TX 75644
*Via email:* jt@tlaw-pllc.com

Ron Armstrong, II
The Armstrong Firm, PLLC
109 Yoalana St., Suite 210
Boerne, TX 78006
*Via email:* rwaii@tafpllc.com

W. Mark Lanier
Sam E. Taylor, II
Sara E. Abston
Lanier Law Firm, PC
10940 W. Sam Houston Pkwy N., Suite 100
Houston, TX 77064
*Via email:* mark.lanier@lanierlawfirm.com
*Via email:* sam.taylow@lanierlawfirm.com
*Via email:* sara.abston@lanierlawfirm.com

Re:
 Cause No. D-1-GN-26-000758; **Will Steward, et al v. Camp Mystic, Inc.,** et al. *in the 200th Judicial District, Travis County, Texas;*
 Cause No. D-1-GN-25-009963; **Warren Bellows, et al v. Camp Mystic, Inc.,** et al. *in the 455th Judicial District, Travis County, Texas;*
 **Cause No. D-1-GN-25-009976; Ellen Elizabeth Getten, et al v. Camp Mystic, Inc.,** et al. *in the 459th Judicial District, Travis County, Texas*
 **Cause No. D-1-GN-25-009983; Timothy Peck, et al v. Camp Mystic, Inc.,** et al.*in the 261st Judicial District, Travis County, Texas*
 **Cause No. D-1-GN-25-010016; Cole Naylor, et al v. Camp Mystic, Inc.,** et al. *in the 200th Judicial District, Travis County, Texas*

Dear Counsel:

Due to the nature and complexity of these cases, I have set aside a date each month when the parties may request a setting.  The dates are as follows:

- Wednesday, May 13
- Wednesday, June 10
- Wednesday, July 15

Copy from re:SearchTX

- Thursday, August 13
- Thursday, September 24
- Thursday, October 22
- Monday, November 23
- Monday, December 21

Any request can be confirmed by contacting my Judicial Executive Assistant, Ms. Shannon Matusek-Steele, through an email that includes all parties to the case(s) seeking a hearing. Any motion(s) to be discussed must be provided to my office at least 2 weeks in advance. Instructions on how to provide copies of documents were provided in assignment letters that have already been provided to the parties. These hearings may be cancelled if they are unnecessary; however, I anticipate that we may need some of these days to act as a status conference of sorts and therefore request that each party arrange for at least one attorney to be available on each of these dates. Your cooperation is greatly appreciated, and I look forward to a just resolution to these cases in an efficient manner.

Very Truly Yours,

Maya Guerra Gamble
Judge, 459th District Court

cc: Velva Price, District Clerk

Copy from re:SearchTX

Filed in the District Court
Of Travis County, Texas

At___4/3/26 8:00AM JAL

Velva L. Price, District Clerk

CAUSE NO. D-1-GN-25-010016

| | | |
|---|---|---|
| COLE NAYLOR, ALLISON NAYLOR, W. DOUGLAS HANNA, CARRIE HANNA, LARS HOLLIS, LACEY HOLLIS, DAVIN HUNT, ANNE LINDSEY HUNT, BRANDT DILLON, LISA DILLON, J. WADE LYTAL, MALORIE LYTAL, ALLISON NAYLOR REPRESENTATIVE AND HEIR OF THE ESTATE OF VIRGINIA WYNNE NAYLOR, COLE NAYLOR REPRESENTATIVE AND HEIR OF THE ESTATE OF VIRGINIA WYNNE NAYLOR, CARRIE HANNA REPRESENTATIVE AND HEIR OF THE ESTATE OF HADLEY REBECCA HANNA, W. DOUGLAS HANNA REPRESENTATIVE AND HEIR OF THE ESTATE OF HADLEY REBECCA HANNA, LACEY HOLLIS REPRESENTATIVE AND HEIR OF THE ESTATE OF VIRGINIA LARINS HOLLIS, LARS HOLLIS REPRESENTATIVE AND HEIR OF THE ESTATE OF VIRGINIA LARINS HOLLIS, ANNE LINDSEY HUNT REPRESENTATIVE AND HEIR OF THE ESTATE OF JANE MARIE HUNT, DAVIN HUNT REPRESENTATIVE AND HEIR OF THE ESTATE OF JANE MARIE HUNT, BRANDT DILLON REPRESENTATIVE AND HEIR OF THE ESTATE OF LUCY LEE DILLON, LISA DILLON REPRESENTATIVE AND HEIR OF THE ESTATE OF LUCY LEE DILLON, MALORIE LYTAL REPRESENTATIVE AND HEIR OF THE ESTATE OF KELLYANNE ELIZABETH LYTAL, J. WADE LYTAL REPRESENTATIVE AND HEIR OF THE ESTATE OF KELLYANNE ELIZABETH LYTAL | § § § § § § § § § | IN THE DISTRICT COURT OF<br><br>TRAVIS COUNTY, TEXAS<br><br>200TH JUDICIAL DISTRICT |

VS.

CAMP MYSTIC, LLC, MYSTIC CAMPS FAMILY PARTNERSHIP, LTD., MYSTIC CAMPS MANAGEMENT, LLC, NATURAL FOUNTAINS PROPERTIES, INC., WILLETTA A. EASTLAND, GEORGE ALBRITTON EASTLAND REPRESENTATIVE OF THE ESTATE OF

Copy from re:SearchTX

RICHARD G. EASTLAND, EDWARD S. EASTLAND, MARY E. EASTLAND, WILLETTA A. EASTLAND, AS DIRECTOR OF CAMP MYSTIC, LLC, WILLETTA A. EASTLAND, AS VICE PRESIDENT OF CAMP MYSTIC, LLC, WILLETTA A. EASTLAND, AS SECRETARY OF NATURAL FOUNTAINS PROPERTIES, INC.

## ORDER TRANSFERRING CASE

ON THIS DAY, IT IS HEREBY ORDERED that the above styled and numbered case be transferred to 459TH District Court, Travis County, Texas.

SIGNED 31 day of March, 2026.

SIGNED 31 day of March, 2026.

Judge JESSICA MANGRUM
200TH Judicial District Court

Judge MAYA GUERRA GAMBLE
459TH Judicial District Court

Copy from re:SearchTX

04/09/2026 03:26:42 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016

CAUSE NO. D-1-GN-25-010016

| | | |
|---|---|---|
| COLE and ALLISON NAYLOR, Individually | § | IN THE DISTRICT COURT OF |
| and as Representatives and Heirs of the Estate of | § | |
| VIRGINIA WYNNE NAYLOR; | § | |
| W. DOUGLAS and CARRIE HANNA | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of HADLEY REBECCA HANNA; | § | |
| LARS and LACEY HOLLIS, Individually | § | |
| and as Representatives and Heirs of the | § | |
| Estate of VIRGINA LARINS HOLLIS; | § | |
| DAVIN and ANNE LINDSEY HUNT, | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of JANE MARIE HUNT; | § | |
| BRANDT and LISA DILLON, Individually | § | |
| and as Representatives and Heirs of the Estate | § | |
| of LUCY LEE DILLON; J. WADE and | § | |
| MALORIE LYTAL, Individually and as | § | |
| Representatives and Heirs of the Estate of | § | |
| KELLYANNE ELIZABETH LYTAL, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | 459TH DISTRICT COURT |
| | § | |
| CAMP MYSTIC, LLC; | § | |
| MYSTIC CAMPS FAMILY | § | |
| PARTNERSHIP, LTD.; | § | |
| MYSTIC CAMPS MANAGEMENT, LLC; | § | |
| NATURAL FOUNTAINS PROPERTIES, INC; | § | |
| WILLETA A. EASTLAND, Individually and | § | |
| As Director and Vice President of CAMP | § | |
| MYSTIC, LLC and Secretary of NATURAL | § | |
| FOUNTAINS PROPERTIES, INC., | § | |
| GEORGE ALBRITTON EASTLAND, | § | |
| as Representative of the Estate of | § | |
| RICHARD G. EASTLAND; EDWARD | § | |
| S. EASTLAND, MARY E. EASTLAND, | § | |
| Individually, | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## ORDER ALLOWING AUDIO RECORDINGS
## OF COURT PROCEEDINGS

On this day, the Court considered Non-Party San Antonio Express-News' Request to Allow

Audio Recording of Court Proceedings pursuant to Tex. R. Civ. Proc. 18c and Travis County Local

Page 1 of 2

Copy from re:SearchTX

Rule 16 ("Request").  After considering the Request and the relevant factors, the Court finds that the Request should be and is hereby GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that San Antonio Express-News' Request to Allow Audio Recording of Court Proceedings pursuant to Tex. R. Civ. P, 18c and Travis County Local Rule 16 is GRANTED.

IT IS FURTHER ORDERED that the San Antonio Express-News is entitled to record and broadcast all proceedings in the above-captioned lawsuit through audio[1] coverage.

The San Antonio Express-News shall be entitled to install equipment in the courtroom for the purpose of such coverage, such equipment subject to further restrictions by the Court.  The use of any equipment shall not disturb the court proceedings and can be revoked by the Court at any time.

IT IS FURTHER ORDERED that should other news organizations (other stations or outlets) also solicit access to the Court for these same proceedings that a sharing agreement will be ordered.

IT IS FURTHER ORDERED all media personnel covering the proceedings will comply with applicable provisions of the Texas Rules of Civil Procedure and Travis County Local Rules.

IT IS SO ORDERED.


SIGNED on this ___9th___ day of ____April_____ 2026.


_____
Maya Guerra Gamble
Judge Presiding


---

[1] Pursuant to Travis County Local Rule 16.1, "audio coverage" shall mean coverage by equipment that has the capacity to reproduce or broadcast sounds, and includes digital, tape, and cassette sound recorders, and radio and video equipment.

Copy from re:SearchTX

**CAUSE NO. D-1-GN-25-010016**

| | | |
|---|---|---|
| COLE and ALLISON NAYLOR, Individually | § | IN THE DISTRICT COURT OF |
| and as Representatives and Heirs of the Estate of | § | |
| VIRGINIA WYNNE NAYLOR; | § | |
| W. DOUGLAS and CARRIE HANNA | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of HADLEY REBECCA HANNA; | § | |
| LARS and LACEY HOLLIS, Individually | § | |
| and as Representatives and Heirs of the | § | |
| Estate of VIRGINA LARINS HOLLIS; | § | |
| DAVIN and ANNE LINDSEY HUNT, | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of JANE MARIE HUNT; | § | |
| BRANDT and LISA DILLON, Individually | § | |
| and as Representatives and Heirs of the Estate | § | |
| of LUCY LEE DILLON; J. WADE and | § | |
| MALORIE LYTAL, Individually and as | § | |
| Representatives and Heirs of the Estate of | § | |
| KELLYANNE ELIZABETH LYTAL, | § | |
|    Plaintiffs, | § | |
| | § | |
| VS. | § | 459TH DISTRICT COURT |
| | § | |
| CAMP MYSTIC, LLC; | § | |
| MYSTIC CAMPS FAMILY | § | |
| PARTNERSHIP, LTD.; | § | |
| MYSTIC CAMPS MANAGEMENT, LLC; | § | |
| NATURAL FOUNTAINS PROPERTIES, INC; | § | |
| WILLETA A. EASTLAND, Individually and | § | |
| As Director and Vice President of CAMP | § | |
| MYSTIC, LLC and Secretary of NATURAL | § | |
| FOUNTAINS PROPERTIES, INC., | § | |
| GEORGE ALBRITTON EASTLAND, | § | |
| as Representative of the Estate of | § | |
| RICHARD G. EASTLAND; EDWARD | § | |
| S. EASTLAND, MARY E. EASTLAND, | § | |
| Individually, | § | |
|    Defendants. | § | TRAVIS COUNTY, TEXAS |

## ORDER ALLOWING RECORDING
## OF COURT PROCEEDINGS

On this day, the Court considered Non-Party Margaret (Maisie) Frances Crow, Abigail

(Abbie) Perrault, and Out of Nowhere LLC's Request to Record Proceedings Pursuant to Travis

Page 1 of 2

Copy from re:SearchTX

County District Court Local Rule 16 ("Request").  After considering the Request and the relevant factors, the Court finds that the Request should be and is hereby GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that Margaret (Maisie) Frances Crow, Abigail (Abbie) Perrault, and Out of Nowhere LLC's Request pursuant to Tex. R. Civ. P, 18c and Travis County Local Rule 16 is GRANTED.

IT IS FURTHER ORDERED that Margaret (Maisie) Frances Crow, Abigail (Abbie) Perrault, and Out of Nowhere LLC is entitled to record and broadcast all proceedings in the above-captioned lawsuits through both visual[1] coverage and audio[2] coverage.

Margaret (Maisie) Frances Crow, Abigail (Abbie) Perrault, and Out of Nowhere LLC shall be entitled to install equipment in the courtroom for the purpose of such coverage, such equipment subject to further restrictions by the Court.  The use of any equipment shall not disturb the court proceedings and can be revoked by the Court at any time.

IT IS FURTHER ORDERED all media personnel covering the proceedings will comply with applicable provisions of the Texas Rules of Civil Procedure and Travis County Local Rules.

IT IS SO ORDERED.

SIGNED on this ___9th___ day of ____April_____ 2026.

_____
Maya Guerra Gamble
Judge Presiding

---

[1] Pursuant to Travis County Local Rule 16.1, "visual coverage" shall mean and include coverage by equipment that has the capacity to reproduce or telecast an image and includes still and moving picture photographic equipment and video equipment.

[2] Pursuant to Travis County Local Rule 16.1, "audio coverage" shall mean coverage by equipment that has the capacity to reproduce or broadcast sounds, and includes digital, tape, and cassette sound recorders, and radio and video equipment.

Copy from re:SearchTX

**CAUSE NO. D-1-GN-25-010016**

| | | |
|---|---|---|
| COLE and ALLISON NAYLOR, Individually | § | IN THE DISTRICT COURT OF |
| and as Representatives and Heirs of the Estate of | § | |
| VIRGINIA WYNNE NAYLOR; | § | |
| W. DOUGLAS and CARRIE HANNA | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of HADLEY REBECCA HANNA; | § | |
| LARS and LACEY HOLLIS, Individually | § | |
| and as Representatives and Heirs of the | § | |
| Estate of VIRGINA LARINS HOLLIS; | § | |
| DAVIN and ANNE LINDSEY HUNT, | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of JANE MARIE HUNT; | § | |
| BRANDT and LISA DILLON, Individually | § | |
| and as Representatives and Heirs of the Estate | § | |
| of LUCY LEE DILLON; J. WADE and | § | |
| MALORIE LYTAL, Individually and as | § | |
| Representatives and Heirs of the Estate of | § | |
| KELLYANNE ELIZABETH LYTAL, | § | |
|     Plaintiffs, | § | |
| | § | |
| VS. | § | **459TH DISTRICT COURT** |
| | § | |
| CAMP MYSTIC, LLC; | § | |
| MYSTIC CAMPS FAMILY | § | |
| PARTNERSHIP, LTD.; | § | |
| MYSTIC CAMPS MANAGEMENT, LLC; | § | |
| NATURAL FOUNTAINS PROPERTIES, INC; | § | |
| WILLETA A. EASTLAND, Individually and | § | |
| As Director and Vice President of CAMP | § | |
| MYSTIC, LLC and Secretary of NATURAL | § | |
| FOUNTAINS PROPERTIES, INC., | § | |
| GEORGE ALBRITTON EASTLAND, | § | |
| as Representative of the Estate of | § | |
| RICHARD G. EASTLAND; EDWARD | § | |
| S. EASTLAND, MARY E. EASTLAND, | § | |
| Individually, | § | |
|     Defendants. | § | **TRAVIS COUNTY, TEXAS** |

**<u>ORDER ALLOWING STILL PHOTOGRAPHY</u>**
**<u>OF COURT PROCEEDINGS</u>**

On this day, the Court considered Non-Party Austin American-Statesman's Request to Allow

Still Photography of Court Proceedings pursuant to Tex. R. Civ. Proc. 18c and Travis County Local

Copy from re:SearchTX

Rule 16 ("Request"). After considering the Request and the relevant factors, the Court finds that the Request should be and is hereby GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that Austin American-Statesman's Request to Allow Still Photography of Court Proceedings pursuant to Tex. R. Civ. P, 18c and Travis County Local Rule 16 is GRANTED.

IT IS FURTHER ORDERED that the Austin American-Statesman is entitled to record and broadcast all proceedings in the above-captioned lawsuits through visual[1] coverage.

The Austin American-Statesman shall be entitled to install equipment in the courtroom for the purpose of such coverage, such equipment subject to further restrictions by the Court. The use of any equipment shall not disturb the court proceedings and can be revoked by the Court at any time.

IT IS FURTHER ORDERED that should other news organizations (other stations or outlets) also solicit access to the Court for these same proceedings that a sharing agreement will be ordered.

IT IS FURTHER ORDERED all media personnel covering the proceedings will comply with applicable provisions of the Texas Rules of Civil Procedure and Travis County Local Rules.

IT IS SO ORDERED.

SIGNED on this __9th____ day of ___April_____ 2026.

_____
Maya Guerra Gamble
Judge Presiding

---

[1] Pursuant to Travis County Local Rule 16.1, "visual coverage" shall mean and include coverage by equipment that has the capacity to reproduce or telecast an image and includes still and moving picture photographic equipment and video equipment.

Copy from re:SearchTX

**CAUSE NO. D-1-GN-25-010016**

| | | |
|---|---|---|
| COLE and ALLISON NAYLOR, Individually and as Representatives and Heirs of the Estate of VIRGINIA WYNNE NAYLOR; W. DOUGLAS and CARRIE HANNA Individually and as Representatives and Heirs of the Estate of HADLEY REBECCA HANNA; LARS and LACEY HOLLIS, Individually and as Representatives and Heirs of the Estate of VIRGINA LARINS HOLLIS; DAVIN and ANNE LINDSEY HUNT, Individually and as Representatives and Heirs of the Estate of JANE MARIE HUNT; BRANDT and LISA DILLON, Individually and as Representatives and Heirs of the Estate of LUCY LEE DILLON; J. WADE and MALORIE LYTAL, Individually and as Representatives and Heirs of the Estate of KELLYANNE ELIZABETH LYTAL, Plaintiffs, | § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| VS. | § § § | 459TH DISTRICT COURT |
| CAMP MYSTIC, LLC; MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.; MYSTIC CAMPS MANAGEMENT, LLC; NATURAL FOUNTAINS PROPERTIES, INC; WILLETA A. EASTLAND, Individually and As Director and Vice President of CAMP MYSTIC, LLC and Secretary of NATURAL FOUNTAINS PROPERTIES, INC., GEORGE ALBRITTON EASTLAND, as Representative of the Estate of RICHARD G. EASTLAND; EDWARD S. EASTLAND, MARY E. EASTLAND, Individually, Defendants. | § § § § § § § § § § § § § § § § | TRAVIS COUNTY, TEXAS |

**ORDER ALLOWING RECORDING OF COURT PROCEEDINGS**

On this day, the Court considered Non-Party Dateline NBC's Request to Record Proceedings

Pursuant to Travis County District Court Local Rule 16 ("Request"). After considering the Request and

Page 1 of 2

Copy from re:SearchTX

the relevant factors, the Court finds that the Request should be and is hereby GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that Dateline NBC's Request pursuant to Tex. R. Civ. P, 18c and Travis County Local Rule 16 is GRANTED.

IT IS FURTHER ORDERED that Dateline NBC is entitled to record and broadcast all proceedings in the above-captioned lawsuits through both visual[1] coverage and audio[2] coverage.

Dateline NBC shall be entitled to install equipment in the courtroom for the purpose of such coverage, such equipment subject to further restrictions by the Court. The use of any equipment shall not disturb the court proceedings and can be revoked by the Court at any time.

IT IS FURTHER ORDERED all media personnel covering the proceedings will comply with applicable provisions of the Texas Rules of Civil Procedure and Travis County Local Rules.

IT IS SO ORDERED.

SIGNED on this ___13___ day of ___April___ 2026.

Maya Guerra Gamble
Judge Presiding

---

[1] Pursuant to Travis County Local Rule 16.1, "visual coverage" shall mean and include coverage by equipment that has the capacity to reproduce or telecast an image and includes still and moving picture photographic equipment and video equipment.
[2] Pursuant to Travis County Local Rule 16.1, "audio coverage" shall mean coverage by equipment that has the capacity to reproduce or broadcast sounds, and includes digital, tape, and cassette sound recorders, and radio and video equipment.

Copy from re:SearchTX

04/13/2026 04:44:38 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016

CAUSE NO. D-1-GN-25-010016

| | | |
|---|---|---|
| COLE and ALLISON NAYLOR, Individually | § | IN THE DISTRICT COURT OF |
| and as Representatives and Heirs of the Estate of | § | |
| VIRGINIA WYNNE NAYLOR; | § | |
| W. DOUGLAS and CARRIE HANNA | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of HADLEY REBECCA HANNA; | § | |
| LARS and LACEY HOLLIS, Individually | § | |
| and as Representatives and Heirs of the | § | |
| Estate of VIRGINA LARINS HOLLIS; | § | |
| DAVIN and ANNE LINDSEY HUNT, | § | |
| Individually and as Representatives and Heirs | § | |
| of the Estate of JANE MARIE HUNT; | § | |
| BRANDT and LISA DILLON, Individually | § | |
| and as Representatives and Heirs of the Estate | § | |
| of LUCY LEE DILLON; J. WADE and | § | |
| MALORIE LYTAL, Individually and as | § | |
| Representatives and Heirs of the Estate of | § | |
| KELLYANNE ELIZABETH LYTAL, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | 459TH DISTRICT COURT |
| | § | |
| CAMP MYSTIC, LLC; | § | |
| MYSTIC CAMPS FAMILY | § | |
| PARTNERSHIP, LTD.; | § | |
| MYSTIC CAMPS MANAGEMENT, LLC; | § | |
| NATURAL FOUNTAINS PROPERTIES, INC; | § | |
| WILLETA A. EASTLAND, Individually and | § | |
| As Director and Vice President of CAMP | § | |
| MYSTIC, LLC and Secretary of NATURAL | § | |
| FOUNTAINS PROPERTIES, INC., | § | |
| GEORGE ALBRITTON EASTLAND, | § | |
| as Representative of the Estate of | § | |
| RICHARD G. EASTLAND; EDWARD | § | |
| S. EASTLAND, MARY E. EASTLAND, | § | |
| Individually, | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## ORDER ALLOWING RECORDING
## OF COURT PROCEEDINGS

On this day, the Court considered Non-Party KXAN News; Nexstar Media Group, Inc.'s

Request to Record Proceedings Pursuant to Travis County District Court Local Rule 16

Page 1 of 2

Copy from re:SearchTX

("Request").  After considering the Request and the relevant factors, the Court finds that the Request should be and is hereby GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that KXAN News; Nexstar Media Group, Inc.'s Request pursuant to Tex. R. Civ. P, 18c and Travis County Local Rule 16 is GRANTED.

IT IS FURTHER ORDERED that KXAN News; Nexstar Media Group, Inc. is entitled to record and broadcast all proceedings in the above-captioned lawsuits through both visual[1] coverage and audio[2] coverage.

KXAN News; Nexstar Media Group, Inc. shall be entitled to install equipment in the courtroom for the purpose of such coverage, such equipment subject to further restrictions by the Court.  The use of any equipment shall not disturb the court proceedings and can be revoked by the Court at any time.

IT IS FURTHER ORDERED all media personnel covering the proceedings will comply with applicable provisions of the Texas Rules of Civil Procedure and Travis County Local Rules.

IT IS SO ORDERED.

SIGNED on this __13__ day of __April__ 2026.

_____
Maya Guerra Gamble
Judge Presiding

---

[1] Pursuant to Travis County Local Rule 16.1, "visual coverage" shall mean and include coverage by equipment that has the capacity to reproduce or telecast an image and includes still and moving picture photographic equipment and video equipment.

[2] Pursuant to Travis County Local Rule 16.1, "audio coverage" shall mean coverage by equipment that has the capacity to reproduce or broadcast sounds, and includes digital, tape, and cassette sound recorders, and radio and video equipment.

Copy from re:SearchTX

5/6/2026 8:43 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016
Susan Schmidt

459TH, DISTRICT COURT

D-1-GN-25-010016

COLE NAYLOR,ALLISON NAYLOR,W. DOUGLAS HANNAvs.CAMP MYSTIC, LLC,MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.,MYSTIC CAMPS MANAGEMENT, LLC

Exhibits 12-15 to
PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY

Copy from re:SearchTX

Exhibit 12

Copy from re:SearchTX



Copy from re:SearchTX

Exhibit 13

Copy from re:SearchTX



Central Case Management Center
13727 Noel Road
Suite 1025
Dallas, TX 75240
Telephone: (972)702-8222

March 27, 2026

Mikal Watts, Esq.
Watts Law Firm LPP
811 Barton Springs Road #725
Austin, TX 78704
Via Email to: Mikal@wattsllp.com

Jeff Ray, Esq.
Ray Pena, P.C.
9601 McAllister Freeway
Suite 901
San Antonio, TX 78216
Via Email to: Jray@raylaw.com

Lynn S. Castagna, Esq.
Castagna Scott LLP
1120 South Capital of Texas Highway
Building 2, Suite 300
Austin, TX 78746
Via Email to: Lynn@texasdefense.com

Thomas C. Wright, Esq.
Wright Close, Barger & Guzman, LLP
One Riverway
Suite 2200
Houston, TX 77056
Via Email to: Wright@wcbglaw.com

Paul Yetter, Esq.
Yetter Coleman, LLP
811 Main Street
Suite 4100
Houston, TX 77002
Via Email to: Pyetter@yettercoleman.com

W. Mark Lanier, Esq.
Lanier Law Firm, PC
10940 West Sam Houston Parkway North
Suite 100
Houston, TX 77064
Via Email to: Mark.lanier@lanierlawfirm.com

John Stevenson, Esq.
Stevenson & Murray LLP
24 Greenway Plaza
Suite 750

Copy from re:SearchTX

Houston, TX 77046
Via Email to: JStevenson@stevensonmurray.com

Bradley E. Beckworth
Nix Patterson, LLP
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Via Email to: Bbeckworth@nixlaw.com

Randy Howry, Esq.
Howry Breen & Herman, LLC
1900 Pearl Street
Austin, TX 78705
Via Email to: Rhowry@howrybreen.com

Kurt Arnold, Esq.
Arnold & Itkin, LLP
6009 Memorial Drive
Houston, TX 77007
Via Email to: Karnold@arnolditkin.com


Case Number: 01-26-0001-3888


Natural Fountains Properties, Inc.,
Mystic Camps Family Partnership, Ltd.,
Mystic Camps Management, LLC
and Willeta A. Eastland, Individually and as
Director and Vice President of Camp Mystic, LLC,
and as Secretary of Natural Fountains
Properties, Inc.
-vs-
Camp Mystic, LLC and George Albritton Eastland, as
Representative of Richard G. Eastland., Deceased
-vs-
Edward S. Eastland, Mary E. Eastland
and William Neely Bonner III
-vs-
Camp Mystic, LLC
-vs-
Warren Bellows and Patricia Bellows, Individually
and as Representatives of Anna Margaret Bellows,
Deceased, Blake Bonner and Caitlin Bonner,
Individually and as Representatives of Lila
Bonner, Deceased, Matthew Childress and Wendie
Childress, Individually and as Representatives of
Chloe Childress, Deceased, Ryan Dewitt and
and Elizabeth Dewitt, Individually and as
Representatives of Molly Dewitt, Deceased et al.
-vs-
Cole Naylor and Allison Naylor, Individually and
as Representatives and Heirs of the Estate of

Copy from re:SearchTX

Virginia Wynne Naylor, W. Douglas Hanna and Carrie
Hanna, Individually and as Representatives and
Heirs of the Estate Hadley Rebecca Hanna, Lars
Hollis and Lacy Hollis, Individually and as
Representatives and Heirs of the Estate Virginia
Larins Hollis, Davin Hunt and Anne Lindsey Hunt,
Individually and as Representatives and Heirs of
of the Estate of Jane Marie Hunt et al.
-vs-
Christopher Jacobe, Individually and as Personal
Representative of the Estate of Mary Kathryn Jacob
and Samantha Jordan
-vs-
Will Steward and CiCi Steward, Individually and as
Representatives of the Estate of Cile Steward, a
Deceased Minor
-vs-
Eloise "Lulu" Peck, Deceased, by and through
Timothy Peck, Individually and on Behalf of the
Estate of Eloise "Lulu" Peck, Deceased Minor, and
Melissa Peck, Individually and on Behalf of the
Estate of Eloise "Lulu" Peck, Deceased Minor
-vs-
Ellen Elizabeth Getten, Deceased, by and through
Douglas Getten, individually and on behalf of the
Estate of Ellen Elizabeth Getten, and Jennifer
Getten, Linnie Anne McCown, Deceased, by and
through Michael McCown, individually and on behalf
of the Estate of Linnie Anne McCown, and Callie
McCown, Abby Lynn Pohl, Deceased, by and through
Matthew Pohl, individually and on behalf of the
Estate of Abby Lynn Pohl, and Kristin Pohl et al.

Dear Parties:

The American Arbitration Association (AAA) acknowledges receipt of a Demand for Arbitration and an arbitration clause providing for administration by the AAA. We trust a copy has been sent to the Respondent per the Rules. The AAA further acknowledges that the filing requirements have been met.

Your case is assigned to me for administration. I will be your primary contact for this matter and will serve as a resource to you throughout the administration of your case. Occasionally, a staff member may reach out to you on my behalf. However, please contact me with any questions, issues, or concerns.

The Consumer Arbitration Rules amended and effective May 1, 2025, and the Consumer Fee Schedule, amended and effective January 15, 2024, apply to this matter.

**<u>Answer</u>**
- The Respondent has 14 calendar days from the date of this letter to file an answer to the claim. Answers received after the due date will still be provided to the arbitrator.
- Per Consumer Rule R-5, "If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant."
- Please reference the Rules if filing a counterclaim.

Copy from re:SearchTX

**Checklist for Conflicts Form**

- Please complete and return the enclosed Checklist for Conflicts Form within 14 calendar days from the date of this letter. Instructions are provided on the form.
- You may complete this form online through your AAA WebFile® account.

**AAA WebFile®**

- If you have an AAA WebFile account, you should see this case listed when you log in. Please contact me if you do not see the case number when you log in.
- If you do not have an AAA WebFile account, please navigate to our website and register by entering your email.

**AAA WebFile® Electronic Case Filing Guidelines**

- The AAA WebFile® Electronic Case Filing Guidelines apply to this dispute. The AAA requires the parties to use AAA WebFile® to file online their pleadings, including claims, counterclaims, answers, motion briefings, pre- and post-hearing briefs, and other substantive filings. To e-file or view documents on AAA WebFile, case participants must have an active AAA WebFile account and must have previously filed a notice of appearance or otherwise appeared in the case.
- If you have any questions, please refer to the AAA WebFile® Electronic Case Filing ("ECF") Guidelines FAQ or contact me.

**Hearing Type and Locale of In-Person Hearing**

- If an in-person hearing is to be held, the requested hearing locale is Kerrville, TX.
- Please refer to the Consumer Arbitration Rules for information regarding the Fixing of Locale (the city, county, state, territory, and/or country where the arbitration will take place).
- If no disclosed claim or counterclaim exceeds $25,000, this matter shall be resolved by the Procedures for the Resolution of Disputes through Document Submission contained in the Consumer Arbitration Rules unless a party asks for a hearing or the arbitrator decides a hearing is necessary.

**Initial Administrative Fee**

- The Consumer has met the filing requirements regarding their filing fee.
- The Business has paid its share of the initial administrative fee.

**Consumer Arbitration Awards**

- Per Consumer Rule R-42(c), please be advised that the AAA may choose to publish an award rendered under these Rules. The names of the parties and witnesses will be removed from awards that are published.

**Next Administrative Step**

- The next administrative step is appointing an arbitrator.

Please review the enclosed *AAA-ICDR® Best Practices Guide for Maintaining Cybersecurity and Privacy, AAA-ICDR® Cybersecurity Checklist*, and Consumer Arbitration Reference Sheet. For more information, please view our website.

The AAA appreciates the opportunity to assist you with your dispute resolution needs.

Respectfully,
*/s/Jared*
Jared Flores
Director of ADR Operations
Direct Dial: (972)383-4408
Email: JaredFlores@adr.org

Supervisor Information: *Sophia Parra, Assistant Vice President, SophiaParra@adr.org, (559)490-1907*

Enclosures

cc: Jessica Z. Barger, Esq.
  Ron Armstrong, II, Esq.
  Richard W. Mithoff, Esq.
  Blair Townsend
  J. Kyle Findley, Esq.
  Sara Abston, Esq.
  Jarom Tefteller, Esq.
  John Grinnan, Esq.
  J. Reid Simpson, Esq.
  Robert Hand, Esq.
  Sean E. Breen, Esq.
  Shannon Smith, Esq.
  Christina Yarnell, Esq.
  Kurt Arnold, Esq.
  Kenneth Fair, Esq.
  Joshua Fiveson, Esq.
  Justin Tschoepe, Esq.
  Sam Taylor, II, Esq.
  Kala Sellers, Esq.

Copy from re:SearchTX

Exhibit 14

Copy from re:SearchTX



Copy from re:SearchTX





Exhibit 15

Copy from re:SearchTX



# Consumer Arbitration Reference Sheet

## Application of Consumer Rules

The AAA® applies the *Consumer Arbitration Rules* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. Please reference the Consumer Rules and the Consumer Due Process Protocol.

In order to determine if the arbitration agreement substantially and materially complies with the due process standards of the *Consumer Due Process Protocol*, **the AAA reviews the parties' arbitration clause only,** and not the entire contract. The AAA's review of the arbitration clause is only an administrative review to determine whether the clause complies with the AAA's minimum due process standards in consumer arbitrations. However, the AAA's review is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable.

## Cybersecurity and Privacy

Please review the *AAA-ICDR® Best Practices Guide for Maintaining Cybersecurity and Privacy.*

## Communication

The AAA will use electronic mail when communicating in writing, and requests that the parties do the same. If you have not provided us with your email address, we ask that you do so at this time. If a party does not provide us with their email address, then that party will have to rely on receiving correspondence via regular mail or facsimile.

Your case administrator will help ensure the appropriate exchange of written correspondence. The arbitrator will direct you to submit correspondence either through the AAA or directly to the arbitrator with a copy to all parties and the AAA. To ensure the proper handling of case-related documents, the parties should always copy the AAA and all other case participants. The AAA will determine if written communication was properly served to all participants and will provide that correspondence to parties or the arbitrator as needed.

## Extension Requests

The AAA has a strict policy regarding requests for extensions. If you need to extend any deadline during the course of the administrative process, please try to obtain the other party's agreement prior to contacting the AAA. The AAA or the arbitrator may extend any period for good cause in these Rules, except as set forth in R-42. The AAA will notify the parties of any extension.

© 2024 American Arbitration Association, Inc.

Copy from re:SearchTX

**AMERICAN ARBITRATION ASSOCIATION** | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

## AAA WebFile®

We invite you to visit our website to learn more about managing your case online. As part of our administrative service, AAA's WebFile allows you to perform a variety of case related activities, including:

- File additional claims;
- Complete the Initial List of People form;
- View invoices and submit payment;
- Merge forms that auto-populate with case and party information;
- Share and manage documents;
- Review case status or hearing dates and times; and,
- Upload hearing exhibits in a dedicated space activated by the arbitrator.

## Mediation

The AAA provides mediation services for all cases. Mediation is a private, non-binding process under which the parties submit their dispute to a third-party mediator. If you would like more information about the AAA's mediation services, please contact your case administrator.

## Requirement Per California Statute

Pursuant to the California Code of Civil Procedure section 1281.96, the AAA must collect and make available to the public information regarding our involvement in, and outcome of, all of our consumer arbitrations. The AAA's *Consumer Arbitration Statistics* are available on the consumer page of the AAA's website.

To fulfill our obligations under California law the AAA relies on the information provided by the parties. Therefore, we ask that you review the party names in the case caption and immediately advise your case administrator of any needed changes.

© 2024 American Arbitration Association, Inc.

AAA387

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tiffany Jones on behalf of Sam Taylor
Bar No. 19722500
tiffany.jones@lanierlawfirm.com
Envelope ID: 114596875
Filing Code Description: No Fee Documents
Filing Description: EXHIBITS 12-15 TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY
Status as of 5/7/2026 1:33 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| W. Mark Lanier | | wml@lanierlawfirm.com | 5/7/2026 11:04:26 AM | SENT |
| Sam Taylor | | sam.taylor@lanierlawfirm.com | 5/7/2026 11:04:26 AM | SENT |
| A. Arnold | | arnold@arnoldfreemanlaw.com | 5/7/2026 11:04:26 AM | SENT |
| Christopher Freeman | | cfreeman@arnoldfreemanlaw.com | 5/7/2026 11:04:26 AM | SENT |
| Abby Heath | | aheath@arnoldfreemanlaw.com | 5/7/2026 11:04:26 AM | SENT |
| Sara Abston | | sara.abston@lanierlawfirm.com | 5/7/2026 11:04:26 AM | SENT |
| Cris Garcia | | Cris.garcia@lanierlawfirm.com | 5/7/2026 11:04:26 AM | SENT |
| Joshua Fiveson | | jfiveson@wcbglaw.com | 5/7/2026 11:04:26 AM | SENT |
| Mona Reynolds | | reynolds@wcbglaw.com | 5/7/2026 11:04:26 AM | SENT |

Associated Case Party: CAMP MYSTIC, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jeff Ray | | jray@raylaw.com | 5/7/2026 11:04:26 AM | SENT |
| Linda Gonzales | | lgonzales@raylaw.com | 5/7/2026 11:04:26 AM | SENT |
| Katherine Estrada | | kestrada@raylaw.com | 5/7/2026 11:04:26 AM | SENT |
| Laura Rua | | lrua@raylaw.com | 5/7/2026 11:04:26 AM | SENT |
| Mikal Watts | | mikal@wattsllp.com | 5/7/2026 11:04:26 AM | SENT |
| Kenneth Fair | | fair@wrightclosebarger.com | 5/7/2026 11:04:26 AM | SENT |
| Tom Wright | | wright@wrightclosebarger.com | 5/7/2026 11:04:26 AM | SENT |
| Jessica Barger | | barger@wrightclosebarger.com | 5/7/2026 11:04:26 AM | SENT |

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tiffany Jones on behalf of Sam Taylor
Bar No. 19722500
tiffany.jones@lanierlawfirm.com
Envelope ID: 114596875
Filing Code Description: No Fee Documents
Filing Description: EXHIBITS 12-15 TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY
Status as of 5/7/2026 1:33 PM CST

Associated Case Party: CAMP MYSTIC, LLC

| Jessica Barger | | barger@wrightclosebarger.com | 5/7/2026 11:04:26 AM | SENT |
|---|---|---|---|---|
| Lynn Castagna | | lynn@texasdefense.com | 5/7/2026 11:04:26 AM | SENT |
| Larry Matthys | | lmatthys@raylaw.com | 5/7/2026 11:04:26 AM | SENT |
| Suzanne Goss | | goss@wrightclosebarger.com | 5/7/2026 11:04:26 AM | SENT |

Copy from re:SearchTX

5/6/2026 8:47 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016
Susan Schmidt

459TH, DISTRICT COURT

D-1-GN-25-010016

COLE NAYLOR,ALLISON NAYLOR,W. DOUGLAS HANNAvs.CAMP MYSTIC, LLC,MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.,MYSTIC CAMPS MANAGEMENT, LLC

Exhibit 16-18
PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY

Copy from re:SearchTX

Exhibit 16

Copy from re:SearchTX



Copy from re:SearchTX

Exhibit 17

Copy from re:SearchTX



Copy from re:SearchTX

Exhibit 18

Copy from re:SearchTX

# EMERGENCY INSTRUCTIONS

I.    Accidents (Horse falls, falling injuries, cuts, etc.)
   1. Be sure that the victim has an open airway and is breathing.
   2. Do not move the victim.
   3. Calm the victim.
   4. Send someone for the nurse.
   5. Stop bleeding with pressure directly over the injury if she has an open wound.

II.   Floods

In case of flood, all campers on Senior Hill must stay in their cabins. They will be given instructions through the loud speaker. If the electricity is off, a walkie-talkie will be used. Food and other supplies will be delivered to Senior Hill by boat or truck. Campers and counselors NEVER wander away from your cabin. Those on the flats must also stay in their cabins unless told otherwise by the office. All cabins are constructed on high, safe locations.

III.  Tornado

   1. Stay inside cabins.
   2. Provide for cross-ventilation by opening windows.
   3. Take cover under beds.
   4. Stay inside cabins unless given official notice to do otherwise.

IV.   Fires

Empty cabins immediately.

FLATS: All campers on flats report to the flagpole. One counselor should be in front of the cabin group and two behind, after you have checked your cabin and are positive that every camper is out.

SENIOR HILL: All campers on Senior Hill go immediately to the Golf Box on the Golf Course, using the same procedure as the Flats . . . that is, checking the cabins to make sure that everyone is out. Each cabin must stay together. Do not return to your cabin or leave your place of waiting until told to do so by the office. Never go watch the fire.

V.    Helpful Information Regarding the Infirmary

If you observe any physical illness, an unneeded loss of weight, or a camper constantly feeling bad, please see to it that she checks with the nurse. You as a counselor can help the nurses by keeping a close check on your campers and seeing to it that they get to the doctor on the day that he is at camp so that the nurses will not have to make an unnecessary trip into town.

CM 001774

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tiffany Jones on behalf of Sam Taylor
Bar No. 19722500
tiffany.jones@lanierlawfirm.com
Envelope ID: 114600090
Filing Code Description: Answer/Response
Filing Description: EXHIBITS 16-18 TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY
Status as of 5/7/2026 1:35 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| W. Mark Lanier | | wml@lanierlawfirm.com | 5/7/2026 11:40:22 AM | SENT |
| Sam Taylor | | sam.taylor@lanierlawfirm.com | 5/7/2026 11:40:22 AM | SENT |
| A. Arnold | | arnold@arnoldfreemanlaw.com | 5/7/2026 11:40:22 AM | SENT |
| Christopher Freeman | | cfreeman@arnoldfreemanlaw.com | 5/7/2026 11:40:22 AM | SENT |
| Abby Heath | | aheath@arnoldfreemanlaw.com | 5/7/2026 11:40:22 AM | SENT |
| Sara Abston | | sara.abston@lanierlawfirm.com | 5/7/2026 11:40:22 AM | SENT |
| Cris Garcia | | Cris.garcia@lanierlawfirm.com | 5/7/2026 11:40:22 AM | SENT |
| Joshua Fiveson | | jfiveson@wcbglaw.com | 5/7/2026 11:40:22 AM | SENT |
| Mona Reynolds | | reynolds@wcbglaw.com | 5/7/2026 11:40:22 AM | SENT |

Associated Case Party: CAMP MYSTIC, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jeff Ray | | jray@raylaw.com | 5/7/2026 11:40:22 AM | SENT |
| Linda Gonzales | | lgonzales@raylaw.com | 5/7/2026 11:40:22 AM | SENT |
| Katherine Estrada | | kestrada@raylaw.com | 5/7/2026 11:40:22 AM | SENT |
| Laura Rua | | lrua@raylaw.com | 5/7/2026 11:40:22 AM | SENT |
| Mikal Watts | | mikal@wattsllp.com | 5/7/2026 11:40:22 AM | SENT |
| Kenneth Fair | | fair@wrightclosebarger.com | 5/7/2026 11:40:22 AM | SENT |
| Tom Wright | | wright@wrightclosebarger.com | 5/7/2026 11:40:22 AM | SENT |
| Jessica Barger | | barger@wrightclosebarger.com | 5/7/2026 11:40:22 AM | SENT |

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tiffany Jones on behalf of Sam Taylor
Bar No. 19722500
tiffany.jones@lanierlawfirm.com
Envelope ID: 114600090
Filing Code Description: Answer/Response
Filing Description: EXHIBITS 16-18 TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY
Status as of 5/7/2026 1:35 PM CST

Associated Case Party: CAMP MYSTIC, LLC

| Jessica Barger | | barger@wrightclosebarger.com | 5/7/2026 11:40:22 AM | SENT |
|---|---|---|---|---|
| Lynn Castagna | | lynn@texasdefense.com | 5/7/2026 11:40:22 AM | SENT |
| Larry Matthys | | lmatthys@raylaw.com | 5/7/2026 11:40:22 AM | SENT |
| Suzanne Goss | | goss@wrightclosebarger.com | 5/7/2026 11:40:22 AM | SENT |

Copy from re:SearchTX

5/6/2026 4:44 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010016
Norma Ybarra

**CAUSE NO. D-1-GN-25-009963**

| | |
|---|---|
| Warren and Patricia BELLOWS, et al. | IN THE DISTRICT COURT OF |
| v. | TRAVIS COUNTY, TEXAS |
| CAMP MYSTIC, LLC et al. | 459TH DISTRICT COURT |

**CAUSE NO. D-1-GN-25-009976**

| | |
|---|---|
| Ellen Elizabeth GETTEN, et al. | IN THE DISTRICT COURT OF |
| v. | TRAVIS COUNTY, TEXAS |
| NATURAL FOUNTAINS PROPERTIES, INC., et al. | 459th JUDICIAL DISTRICT |

**CAUSE NO. D-1-GN-25-009983**

| | |
|---|---|
| Eloise "Lulu" PECK, et al. | IN THE DISTRICT COURT OF |
| v. | 459th JUDICIAL DISTRICT |
| CAMP MYSTIC, LLC, et al. | TRAVIS COUNTY, TEXAS |

**CAUSE NO. D-1-GN-25-010016**

| | |
|---|---|
| Cole and Allison NAYLOR, et al. | IN THE DISTRICT COURT OF |
| v. | 459th JUDICIAL DISTRICT |
| CAMP MYSTIC, LLC, et al. | TRAVIS COUNTY, TEXAS |

**CAUSE NO. D-1-GN-26-000758**

| | |
|---|---|
| Will and Cici STEWARD, et al. | IN THE DISTRICT COURT OF |
| v. | 459th JUDICIAL DISTRICT |
| CAMP MYSTIC, LLC, et al. | TRAVIS COUNTY, TEXAS |

Copy from re:SearchTX

## NOTICE OF FILING OF AFFIDAVITS
## IN SUPPORT OF MOTIONS TO COMPEL ARBITRATION

Please take note that Defendants in the above-styled cases are filing the attached

affidavits of Shauna Callahan and Edward Eastland in support of their Motions to Compel

Arbitration filed on or about March 24, 2026.

Respectfully submitted,

**WATTS LAW FIRM LLP**
110 Tributary Ranch Road
Mountain Home, Texas 78058
P: (512) 479-0500

/s/ Mikal Watts
MIKAL WATTS
State Bar No. 20981820
mikal@wattsllp.com
*Attorney for Natural Fountains Properties, Inc.;*
*Willetta Eastland, Individually and as Secretary of*
*Natural Fountains Properties, Inc.*; *Mystic Camps*
*Family Partnership, Ltd., and Mystic Camps*
*Management, LLC*

**RAY | PEÑA, P.C.**

9601 McAllister Freeway, Suite 901
San Antonio, Texas 78216
P: (210) 341-3554
F: (210) 341-3557

/s/ Jeff Ray
JEFF RAY
State Bar No. 16604400
jray@raylaw.com
*Attorney for Camp Mystic, LLC and George*
*Albritton Eastland, as Independent Executor of the*
*Estate of Richard Eastland, Deceased*

Copy from re:SearchTX

**CASTAGNA SCOTT LLP**
1120 S. Capital of Texas Highway
Building 2, Suite 300
Austin, Texas 78746
512/329-3290
888/255-0132 fax

*/s/ Lynn S. Castagna*
LYNN S. CASTAGNA
State Bar No. 03980520
Lynn@texasdefense.com
*Attorney for Edward Eastland, Mary Liz Eastland,*
*and William Neely Bonner III*

**WRIGHT CLOSE BARGER & GUZMAN, LLP**
One Riverway, Suite 2200
Houston, Texas 77056
Telephone: (713) 572-4321
Facsimile: (713) 572-4320

*/s/ Kenneth J. Fair*
Thomas C. Wright
State Bar No. 22059400
wright@wcbglaw.com
Jessica Z. Barger
State Bar No. 24032706
barger@wcbglaw.com
Kenneth J. Fair
State Bar No. 24007171
fair@wcbglaw.com
Joshua Fiveson
State Bar No. 24093438
jfiveson@wcbglaw.com
*Attorneys for Camp Mystic, LLC*

Copy from re:SearchTX

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon all known counsel of record via electronic means in accordance with the Texas Rules of Civil Procedure on this day, May 6, 2026.

/s/ *Kenneth J. Fair*
Kenneth J. Fair

Copy from re:SearchTX

EXHIBIT
A

## AFFIDAVIT OF SHAUNA CALLAHAN
## (CUSTODIAN OF RECORDS — CAMPMINDER, LLC)

| | |
|---|---|
| STATE OF COLORADO | § |
| | § |
| COUNTY OF BOULDER | § |

Before me, the undersigned notary public, on this day personally appeared Shauna Callahan, a person whose identity is known to me. After I administered an oath to Affiant, Affiant testified as follows:

### I. PERSONAL BACKGROUND AND QUALIFICATIONS

1. My name is Shauna Callahan. I am over the age of twenty-one (21) years, am of sound mind, have personal knowledge of the facts stated in this affidavit, and am in all respects competent to make this affidavit. I reside in Boulder County, Colorado.

2. I am employed by Campminder, LLC ("Campminder") as Chief Financial Officer. In that capacity, I serve as the Custodian of Records for Campminder and am familiar with the manner in which its records are created, stored, retrieved, and maintained, by virtue of my duties and responsibilities. Campminder's principal place of business is in Boulder County, Colorado.

### II. CAMPMINDER'S BUSINESS OPERATIONS

3. Campminder, LLC is a software and data-services company that provides web-based camp management services to summer camps and similar organizations throughout the United States. These services include facilitating the enrollment of campers and the electronic execution of required enrollment documents—such as participation agreements, health forms, and permission forms—by parents or legal guardians through Campminder's secure, web-based platform.

4. Camp Mystic, LLC ("Camp Mystic") is a client of Campminder. As part of Camp Mystic's camper enrollment process, Camp Mystic either uploads an enrollment document into the Campminder platform or creates an enrollment document within the Campminder platform, and parents or legal guardians of enrolled campers are required to review and electronically execute those enrollment documents—including a Participation Agreement—through Campminder's platform before their child may attend camp.

Page 1 of 5

Copy from re:SearchTX

## III. THE ELECTRONIC EXECUTION PROCESS

5.     The process by which parents or legal guardians executed Participation Agreements through Campminder's platform for summer camp seasons 2024 and 2025 was as follows:

   (a)     Camp Mystic either uploads into the Campminder platform or creates a document within the Campminder platform with the text of the Participation Agreement to be presented to parents and legal guardians. It is that document—authored by Camp Mystic that the Campminder platform presents to an account holder registering a camper upon the account holder's enrollment request.

   (b)     The first time the parent or legal guardian use the Campminder platform, they are required to create an account with unique credentials. They can then use that secure account to enroll a camper and perform other actions within the Campminder platform. As a user initially sets up their Campminder platform account, they are systematically directed to the Campminder Terms of Service, and are required to review and electronically accept those Terms of Service to complete their account setup. Then, every time a credentialled user logs into their account, the credentialled user agrees to Campminder's Terms of Service by the action of logging in, as noted on the login screen. In relevant part, Campminder's Terms of Service require the credentialled user to acknowledge that they agree to not share their login credentials, and that they are responsible for all activities and conduct that are conducted under the credentialled user's account.

   (c)     After logging into their account using their unique credentials, the parent or legal guardian is presented with a camp-specific Participation Agreement, a required form for enrollment, which is prepopulated with the name of the camper, and requires the provision of personal identifying information, including the parent or guardian's name, contact information, and relationship to the camper.

   (d)     To execute the Participation Agreement, the parent or legal guardian enters the following information into designated fields within the web form: (i) the name of the camper; (ii) the parent or legal guardian's name; (iii) the parent or legal guardian's address; and (iv) session or program for which the camper is being enrolled. The Participation Agreement also displays the camp's specific terms and conditions, which the parent or legal guardian agrees to by clicking a radial button either agreeing or disagreeing to those terms. The Campminder platform automatically displays the date of the agreement, which can be viewed by the parent or legal guardian, but cannot be changed. The parent or legal guardian may review the full text of the agreement prior to submission.

Copy from re:SearchTX

(e)     The parent or legal guardian then executes the agreement by typing their name into a designated electronic signature field. The entry of the parent or legal guardian's name in that field constitutes an electronic signature —an electronic symbol executed and adopted by the person with the intent to sign the record.

(f)     The parent or legal guardian then clicks the "Submit" button to complete the execution and submission of the Participation Agreement. The Campminder platform records a date stamp of the submission of the Participation Agreement and sends a confirmation to the account holder that the agreement has been submitted.

6.     Upon submission, Campminder's platform automatically captures and permanently records the following data associated with each executed Participation Agreement:

(a)     The typed name entered in the electronic signature field;

(b)     The Internet Protocol (IP) address of the device from which the submission was made;

(c)     The date and time of submission (submission timestamp), recorded through the record's updated date/time value;

(d)     The identity of the user account associated with the submission at the time of submission; and

(e)     A PDF of the Participation Agreement that was presented to and reviewed by the signing party at the time of execution, linked directly to that user's specific submission record.

(f)     If the Participation Agreement is later updated, a new form submission is created with the updated version, and the original version is maintained, each with a date stamp within the Campminder platform.

7.     Campminder's platform captures the foregoing submission data automatically and contemporaneously at the moment of each submission. The platform does not permit a Participation Agreement to be submitted without the parent or legal guardian completing all required fields, including the electronic signature field. The electronic submission process produces a reliable and accurate record of: the login credentials of the user who submitted the agreement; the time and date of submission; and the exact version of the agreement that was presented to and reviewed by that user prior to signing.

8.     Each submitted Participation Agreement is directly and uniquely linked in Campminder's platform to the specific user account through which it was submitted. Because each user account is protected by unique login credentials known only to the account holder, access to the account—and the ability to submit a signed agreement through it—is attributable to the account holder. The combination of: (i) account authentication through secure login credentials; (ii) the entry of the parent or legal guardian's name in the electronic signature field; (iii) the capture of the submitting device's IP address; and (iv) the recorded

Page 3 of 5

Copy from re:SearchTX

submission timestamp collectively establish that the electronic signature was the act of the person associated with the account.

9. If a Participation Agreement is submitted more than once—for example, across multiple enrollment seasons—Campminder's platform creates a new, complete, and separate record for each submission. Prior submissions are never overwritten. Each prior submission is retained in Campminder's database, and the associated files remain available in storage. However, if a credentialled user requests Campminder to delete the credentialled user's past submissions, Campminder will oblige within a reasonable amount of time. The version of the Participation Agreement presented to the signing party at the time of each execution is preserved and linked to that specific submission, so that each record accurately reflects the exact agreement reviewed and signed by the parent or legal guardian on that occasion.

## IV. BUSINESS RECORDS

10. I am the Custodian of Records for Campminder, LLC and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

11. The Participation Agreement records described in this affidavit are records kept in the regular course of Campminder's regularly conducted business activity. Campminder's business includes the systematic collection, storage, and maintenance of electronically signed enrollment documents submitted through its platform on behalf of its camp clients.

12. It is and was the regular practice of Campminder's business activity to make, collect, and store such records. Each time a Participation Agreement is submitted through Campminder's platform, the platform automatically generates and preserves the corresponding record—including the executed agreement and all associated submission data described in paragraph 6 above—as a matter of standard, routine business practice.

14. Attached hereto as Exhibit A are the Camp Mystic Participation Agreements for the following campers: Cile Steward, Eloise Peck, Wynne Naylor, Hadley Hanna, Virginia Hollis, Janie Hunt, Lucy Dillon, Kellyanne Lytal, Ellen Getten, Linnie McCown, Abby Pohl, Margaret Sheedy, Mary Stevens, Greta Toranzo, Margaret Bellows, Lila Bonner, Chloe Childress, Molly DeWitt, Katherine Ferruzzo, Lainey Landry, Blakely McCrory, and Mary Kate Jacobe (collectively, the "Participation Agreements"). There are 66 pages of records attached.

15. Each of the attached Participation Agreements was generated by Campminder's platform from data maintained in Campminder's database in the regular course of business.

16. The Participation Agreements attached hereto are the originals or exact duplicates of the original records maintained by Campminder, LLC in its database.

Page 4 of 5

Copy from re:SearchTX

Further affiant sayeth not.

_Sua Call_ CFO
[AFFIANT NAME], [TITLE]
Campminder, LLC

SWORN TO AND SUBSCRIBED before me this 6th day of May, 2026, to certify which witness my hand and official seal.

SERGIO RIOS VILLA
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20264005603
MY COMMISSION EXPIRES FEBRUARY 12, 2030

Notary Public, the State of Colorado
Printed Name: _Sergio Rios Villa_
My Commission Expires: _02/12/2030_

Page 5 of 5

Copy from re:SearchTX

# Participation Agreement 2025

for Margaret Bellows, 2025 Season

Participation Agreement for Margaret Bellows:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Margaret Bellows, (Margaret), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Margaret.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Margaret and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Margaret, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Margaret MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Margaret, use interviews with and photographic images of Margaret, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Margaret, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Margaret, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature            Patricia Bellows
                     (06/20/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Lila Bonner, 2025 Season

Participation Agreement for Lila Bonner:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Lila Bonner, (Lila), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Lila.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Lila and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

Copy from re:SearchTX

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Lila, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Lila MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Lila, use interviews with and photographic images of Lila, including videotape, for its website, brochures and other, including promotional, materials.

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

Copy from re:SearchTX

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Lila, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Lila, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Caitlin Bonner (02/21/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Molly DeWitt, 2025 Season

Participation Agreement for Molly DeWitt:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Molly DeWitt, (Molly), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Molly.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Molly and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Molly, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Molly MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Molly, use interviews with and photographic images of Molly, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Molly, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Molly, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Ryan DeWitt (06/03/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Wynne Naylor, 2025 Season

Participation Agreement for Wynne Naylor:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Wynne Naylor, (Wynne), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Wynne.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Wynne and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Wynne, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Wynne MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Wynne, use interviews with and photographic images of Wynne, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Wynne, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Wynne, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Alli Naylor (04/14/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Blakely McCrory, 2025 Season

Participation Agreement for Blakely McCrory:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Blakely McCrory, (Blakely), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Blakely.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Blakely and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Blakely, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Blakely MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Blakely, use interviews with and photographic images of Blakely, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Blakely, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Blakely, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature                Lindsey McLeod McCrory
                         (06/09/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Linnie McCown, 2025 Season

Participation Agreement for Linnie McCown:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Linnie McCown, (Linnie), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Linnie.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Linnie and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Linnie, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Linnie MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Linnie, use interviews with and photographic images of Linnie, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Linnie, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Linnie, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Callie McCown (05/31/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Kellyanne Lytal, 2025 Season

Participation Agreement for Kellyanne Lytal:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Kellyanne Lytal, (Kellyanne), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Kellyanne.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Kellyanne and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Kellyanne, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Kellyanne MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Kellyanne, use interviews with and photographic images of Kellyanne, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Kellyanne, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Kellyanne, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature            Malorie Lytal (02/22/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Lainey Landry, 2025 Season

Participation Agreement for Lainey Landry:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Lainey Landry, (Lainey), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Lainey.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Lainey and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Lainey, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Lainey MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Lainey, use interviews with and photographic images of Lainey, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Lainey, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Lainey, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Natalie Landry (05/14/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Mary Kate Jacobe, 2025 Season

Participation Agreement for Mary Kate Jacobe:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Mary Kate Jacobe, (Mary Kate), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Mary Kate.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Mary Kate and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Mary Kate, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Mary Kate MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Mary Kate, use interviews with and photographic images of Mary Kate, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Mary Kate, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Mary Kate, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Samantha Jacobe (06/17/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Janie Hunt, 2025 Season

Participation Agreement for Janie Hunt:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Janie Hunt, (Janie), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Janie.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Janie and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Janie, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Janie MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Janie, use interviews with and photographic images of Janie, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Janie, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Janie, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature            Anne L Hunt (05/19/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Virginia Hollis, 2025 Season

Participation Agreement for Virginia Hollis:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Virginia Hollis, (Virginia), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Virginia.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Virginia and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Virginia, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Virginia MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Virginia, use interviews with and photographic images of Virginia, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Virginia, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Virginia, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Lacey Hollis (03/20/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Hadley Hanna, 2025 Season

Participation Agreement for Hadley Hanna:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Hadley Hanna, (Hadley), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Hadley.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Hadley and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Hadley, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Hadley MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Hadley, use interviews with and photographic images of Hadley, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Hadley, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Hadley, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Carrie Hanna (04/13/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Ellen Getten, 2025 Season

Participation Agreement for Ellen Getten:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Ellen Getten, (Ellen), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Ellen.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Ellen and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Ellen, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Ellen MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Ellen, use interviews with and photographic images of Ellen, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Ellen, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Ellen, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature           Jennifer Getten (05/30/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Lucy Dillon, 2025 Season

Participation Agreement for Lucy Dillon:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Lucy Dillon, (Lucy), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Lucy.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Lucy and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

Copy from re:SearchTX

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Lucy, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Lucy MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Lucy, use interviews with and photographic images of Lucy, including videotape, for its website, brochures and other, including promotional, materials.

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

Copy from re:SearchTX

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Lucy, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Lucy, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Lisa Dillon (05/30/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Greta Toranzo, 2025 Season

Participation Agreement for Greta Toranzo:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Greta Toranzo, (Greta), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Greta.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Greta and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Greta, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Greta MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Greta, use interviews with and photographic images of Greta, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Greta, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Greta, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Ellen Kolpin Toranzo
                   (05/30/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Cile Steward, 2025 Season

Participation Agreement for Cile Steward:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Cile Steward, (Cile), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Cile.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Cile and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

Copy from re:SearchTX

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Cile, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Cile MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Cile, use interviews with and photographic images of Cile, including videotape, for its website, brochures and other, including promotional, materials.

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

Copy from re:SearchTX

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Cile, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Cile, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature                   Catherine C. Williams
                            (06/15/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Mary Stevens, 2025 Season

Participation Agreement for Mary Stevens:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Mary Stevens, (Mary), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Mary.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Mary and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

Copy from re:SearchTX

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Mary, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Mary MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Mary, use interviews with and photographic images of Mary, including videotape, for its website, brochures and other, including promotional, materials.

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

Copy from re:SearchTX

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Mary, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Mary, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Stacy Stevens (04/27/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Margaret Sheedy, 2025 Season

Participation Agreement for Margaret Sheedy:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Margaret Sheedy, (Margaret), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Margaret.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Margaret and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Margaret, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Margaret MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Margaret, use interviews with and photographic images of Margaret, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Margaret, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Margaret, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Ellen Sheedy (04/28/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Abby Pohl, 2025 Season

Participation Agreement for Abby Pohl:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Abby Pohl, (Abby), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Abby.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Abby and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

Copy from re:SearchTX

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Abby, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Abby MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Abby, use interviews with and photographic images of Abby, including videotape, for its website, brochures and other, including promotional, materials.

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

Copy from re:SearchTX

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Abby, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Abby, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature              Kristin Pohl (03/24/2025)

Copy from re:SearchTX

# Participation Agreement 2025

for Eloise Peck, 2025 Season

Participation Agreement for Eloise Peck:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Eloise Peck, (Eloise), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Eloise.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Eloise and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Eloise, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Eloise MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Eloise, use interviews with and photographic images of Eloise, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Eloise, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Eloise, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Missy Rogers Peck
                   (02/21/2025)

Copy from re:SearchTX

# Participation Agreement 2024

for Chloe Childress, 2024 Season

Participation Agreement for Chloe Childress:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Chloe Childress, (Chloe), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Chloe.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Chloe and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Chloe, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Chloe MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Chloe, use interviews with and photographic images of Chloe, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Chloe, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Chloe, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Wendie Childress
                   (03/31/2024)

Copy from re:SearchTX

# Participation Agreement 2024

for Katherine Ferruzzo, 2024 Season

Participation Agreement for Katherine Ferruzzo:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Katherine Ferruzzo, (Katherine), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Katherine.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Katherine and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Katherine, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Katherine MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Katherine, use interviews with and photographic images of Katherine, including videotape, for its website, brochures and other, including promotional, materials.

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Katherine, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Katherine, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Andrea Ferruzzo (04/07/2024)

Copy from re:SearchTX

EXHIBIT

B

**AFFIDAVIT OF EDWARD EASTLAND**

STATE OF TEXAS                    §
                                  §
COUNTY OF TRAVIS                  §

Before me, the undersigned notary public, on this day personally appeared Edward Eastland, a person whose identity is known to me.  After I administered an oath to Affiant, Affiant testified as follows:

1.    My name is Edward Eastland.  I am over the age of twenty-one (21) years, am of sound mind, have personal knowledge of the facts stated in this affidavit, and am in all respects competent to make this affidavit.  I reside in Hunt, Kerr County, Texas.

2.    I am employed by Camp Mystic, LLC ("Camp Mystic") as Director of Camp Mystic Guadulupe River.  In that capacity, I am familiar with Camp Mystic's enrollment processes, its use of the Campminder platform to collect and manage camper enrollment documents, and the manner in which executed Participation Agreements are received, maintained, and stored by Camp Mystic in the regular course of its business.

3.    Camp Mystic is a girls' summer camp located in Hunt, Kerr County, Texas.  As part of the enrollment process for each camp session, Camp Mystic requires the parent or legal guardian of each enrolled camper to execute a Participation Agreement before the camper may attend camp.  The Participation Agreement sets forth, among other things, the activities and risks associated with attending Camp Mystic, an acknowledgment and assumption of those risks, a release and indemnity agreement, and a binding arbitration clause.

4.    Camp Mystic has contracted with Campminder, LLC ("Campminder"), a web-based camp management software provider, to facilitate its enrollment process, including the electronic execution of Participation Agreements.  Camp Mystic provides Campminder with the text of the Participation Agreement to be presented to parents and legal guardians.  Campminder then serves the agreement to each parent or legal guardian through its web-based portal for electronic review and execution.

5.    It has been and is the regular practice of Camp Mystic's enrollment process to require a parent or legal guardian to complete and electronically execute a Participation Agreement through Campminder's platform before their child may attend camp.  Camp Mystic does not accept enrollment for any camper whose parent or legal guardian has not executed a Participation Agreement.

6.    Upon a parent or legal guardian's electronic execution of a Participation Agreement through Campminder's platform, the executed agreement becomes accessible to Camp Mystic through its Campminder administrative account.  It is and has been Camp Mystic's regular practice to access, download, and retain copies of executed Participation Agreements received through Campminder's platform as part of its enrollment records.

7.    Camp Mystic relies on the executed Participation Agreements received through Campminder's platform in the regular course of its business as the operative enrollment

Copy from re:SearchTX

documents for each camper. These records are maintained by Camp Mystic as part of its business records and are used by Camp Mystic for enrollment management and related business purposes throughout each camp session and thereafter.

8.  The executed Participation Agreements received from Campminder's platform and maintained by Camp Mystic are records of a regularly conducted business activity. Each such agreement was made at or near the time of the camper's enrollment by a person—a parent or legal guardian—with knowledge of the act of execution. Making and retaining records of executed Participation Agreements was and is a regular practice of Camp Mystic's business activity in connection with each enrollment season.

9.  I am a Custodian of Records and authorized representative of Camp Mystic, LLC and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

10. Attached hereto as Exhibit "A" are true and correct copies of the Camp Mystic Participation Agreements for the following campers: Cile Steward, Eloise Peck, Wynne Naylor, Hadley Hanna, Virginia Hollis, Janie Hunt, Lucy Dillon, Kellyanne Lytal, Ellen Getten, Linnie McCown, Abby Pohl, Margaret Sheedy, Mary Stevens, Greta Toranzo, Margaret Bellows, Lila Bonner, Chloe Childress, Molly DeWitt, Katherine Ferruzzo, Lainey Landry, Blakely McCrory, and Mary Kate Jacobe (collectively, the "Participation Agreements"). There are 66 pages of records attached.

11. The attached Participation Agreements are records kept by Camp Mystic in the regular course of its business. Making and retaining such records was a regular practice of Camp Mystic's business activity. The records were made at or near the time of the enrollment events they reflect. The attached records are the originals or exact duplicates of the Participation Agreements maintained by Camp Mystic, LLC in its enrollment records.

12. The attached Participation Agreements were executed electronically through Campminder's platform and received and maintained by Camp Mystic in the regular course of its enrollment operations. Camp Mystic regularly relies on records received from Campminder's platform in this manner as its operative enrollment documents, and such records are treated by Camp Mystic as its own business records.

13. Campers from states other than Texas enroll for and attend sessions at Camp Mystic, including in July 2025.

Further affiant sayeth not. Further affiant sayeth not.

eSigned by Black Knight EXP-DocVerify: 2026-05-06 14:33:47 EDT

*Edward Eastland*

7505049:47440400:46058873

Edward Eastland,

Director of Camp Mystic Guadulupe River

Camp Mystic, LLC

Copy from re:SearchTX

SWORN TO AND SUBSCRIBED before me this __05/06/2026__ day of May 2026, to certify which witness my hand and official seal.



Notary Public, the State of Texas

Printed Name: <u>Krystal Dollinger</u>

My Commission Expires: <u>June 22, 2027</u>

KRYSTAL DOLLINGER
Commission No. 128647632
My Comm. Expires Jun 22, 2027

Notarial Act Performed by Audio visual communication

Page 3 of 3

Copy from re:SearchTX

**Cile Steward**, Jan 24, 2017 (9.00)                                        Page: 1

## Participation Agreement 2025

for Cile Steward, 2025 Season

Participation Agreement for Cile Steward:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Cile Steward, (Cile), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Cile.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Cile and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

<span style="color:red">EXHIBIT A-1</span>                                        CM 000740

Copy from re:SearchTX

**Cile Steward**, Jan 24, 2017 (9.00)                                                        Page: 2

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Cile, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Cile MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Cile, use interviews with and photographic images of Cile, including videotape, for its website, brochures and other, including promotional, materials.

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

<span style="color:red">EXHIBIT A-1</span>                                                          CM 000741

Copy from re:SearchTX

**Cile Steward**, Jan 24, 2017 (9.00)                                                    Page: 3

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Cile, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Cile, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature                    Catherine C. Williams
                             (06/15/2025)

EXHIBIT A-1                                                           CM 000742

Copy from re:SearchTX

**Eloise Peck**, Sep 18, 2016 (9.05)                                   Page: 1

## Participation Agreement 2025

for Eloise Peck, 2025 Season

Participation Agreement for Eloise Peck:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Eloise Peck, (Eloise), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Eloise.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Eloise and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-2                                   CM 000746

Copy from re:SearchTX

**Eloise Peck**, Sep 18, 2016 (9.05)                                          Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Eloise, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Eloise MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Eloise, use interviews with and photographic images of Eloise, including videotape, for its website, brochures and other, including promotional, materials.

<div align="center">EXHIBIT A-2</div>                                        CM 000747

Copy from re:SearchTX

**Eloise Peck**, Sep 18, 2016 (9.05)                                     Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Eloise, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Eloise, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

**Signature**                Missy Rogers Peck
                             (02/21/2025)

EXHIBIT A-2                                            CM 000748

Copy from re:SearchTX

## Participation Agreement 2025

for Wynne Naylor, 2025 Season

Participation Agreement for Wynne Naylor:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Wynne Naylor, (Wynne), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Wynne.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Wynne and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-3                                                    CM 000791

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Wynne, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Wynne MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Wynne, use interviews with and photographic images of Wynne, including videotape, for its website, brochures and other, including promotional, materials.

<span style="color:red">EXHIBIT A-3</span>                                                                 CM 000792

Copy from re:SearchTX

**Wynne Naylor**, Sep 16, 2016 (9.05)                                        Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Wynne, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Wynne, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature                Alli Naylor (04/14/2025)

EXHIBIT A-3                                          CM 000793

Copy from re:SearchTX

## Participation Agreement 2025

for Hadley Hanna, 2025 Season

Participation Agreement for Hadley Hanna:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Hadley Hanna, (Hadley), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Hadley.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Hadley and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-4                                            CM 000752

Copy from re:SearchTX

**Hadley Hanna**, Feb 13, 2017 (9.00)                                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Hadley, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Hadley MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Hadley, use interviews with and photographic images of Hadley, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-4                                                    CM 000753

Copy from re:SearchTX

**Hadley Hanna**, Feb 13, 2017 (9.00)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Hadley, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Hadley, and our respective heirs, personal representatives, estates and
family members.

  [X] I have read and agree to the terms and conditions above.
  [] I do not give permission to my child.

Signature            Carrie Hanna (04/13/2025)

EXHIBIT A-4                                        CM 000754

Copy from re:SearchTX

## Participation Agreement 2025

for Virginia Hollis, 2025 Season

Participation Agreement for Virginia Hollis:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Virginia Hollis, (Virginia), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Virginia.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Virginia and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

<span style="color:red">EXHIBIT A-5</span>                                                    CM 000788

Copy from re:SearchTX

**Virginia Hollis**, Mar 23, 2017 (8.10)                                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Virginia, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Virginia MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Virginia, use interviews with and photographic images of Virginia, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-5                                                    CM 000789

Copy from re:SearchTX

**Virginia Hollis**, Mar 23, 2017 (8.10)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Virginia, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Virginia, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature             Lacey Hollis (03/20/2025)

EXHIBIT A-5                                                       CM 000790

Copy from re:SearchTX

**Janie Hunt**, May 8, 2016 (9.09)                                                    Page: 1

## Participation Agreement 2025

for Janie Hunt, 2025 Season

Participation Agreement for Janie Hunt:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Janie Hunt, (Janie), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Janie.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Janie and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-6                                                                CM 000755

Copy from re:SearchTX

**Janie Hunt**, May 8, 2016 (9.09)                                                                 Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Janie, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Janie MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Janie, use interviews with and photographic images of Janie, including videotape, for its website, brochures and other, including promotional, materials.

<span style="color:red">EXHIBIT A-6</span>                                                           CM 000756

Copy from re:SearchTX

**Janie Hunt**, May 8, 2016 (9.09)                                          Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Janie, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Janie, and our respective heirs, personal representatives, estates and family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature                    Anne L Hunt (05/19/2025)

EXHIBIT A-6                                           CM 000757

Copy from re:SearchTX

## Participation Agreement 2025

for Lucy Dillon, 2025 Season

Participation Agreement for Lucy Dillon:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Lucy Dillon, (Lucy), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Lucy.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Lucy and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

EXHIBIT A-7                                            CM 000770

Copy from re:SearchTX

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Lucy, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Lucy MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Lucy, use interviews with and photographic images of Lucy, including videotape, for its website, brochures and other, including promotional, materials.

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

EXHIBIT A-7                                                        CM 000771

Copy from re:SearchTX

**Lucy Dillon**, Dec 17, 2016 (9.02)                                      Page: 3

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Lucy, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Lucy, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Lisa Dillon (05/30/2025)

EXHIBIT A-7                                               CM 000772

Copy from re:SearchTX

**Kellyanne Lytal**, May 25, 2017 (8.08)                                                    Page: 1

## Participation Agreement 2025

for Kellyanne Lytal, 2025 Season

Participation Agreement for Kellyanne Lytal:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Kellyanne Lytal, (Kellyanne), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Kellyanne.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Kellyanne and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

<span style="color:red">EXHIBIT A-8</span>                                                    CM 000758

Copy from re:SearchTX

**Kellyanne Lytal**, May 25, 2017 (8.08)                                                    Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.


Acknowledgment and Assumption of Risks:


I have read and understand, and have discussed with my child, Kellyanne, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.


AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Kellyanne MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.


All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.


The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.


Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.


Additional Provisions:
The Camp may, without compensation to me or Kellyanne, use interviews with and photographic images of Kellyanne, including videotape, for its website, brochures and other, including promotional, materials.


<span style="color:red">EXHIBIT A-8</span>                                                    CM 000759

Copy from re:SearchTX

**Kellyanne Lytal**, May 25, 2017 (8.08)                                      Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.


I, Parent or legal guardian of Kellyanne, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Kellyanne, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature                 Malorie Lytal (02/22/2025)

EXHIBIT A-8                                               CM 000760

Copy from re:SearchTX

**Ellen Getten**, Jun 7, 2016 (9.08)                                                    Page: 1

## Participation Agreement 2025

for Ellen Getten, 2025 Season

Participation Agreement for Ellen Getten:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Ellen Getten, (Ellen), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Ellen.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Ellen and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

**EXHIBIT A-9**                                                              CM 000743

Copy from re:SearchTX

**Ellen Getten**, Jun 7, 2016 (9.08)                                          Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Ellen, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Ellen MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Ellen, use interviews with and photographic images of Ellen, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-9                                                          CM 000744

Copy from re:SearchTX

**Ellen Getten**, Jun 7, 2016 (9.08)                                          Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Ellen, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Ellen, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature            Jennifer Getten (05/30/2025)

EXHIBIT A-9                                          CM 000745

Copy from re:SearchTX

**Linnie McCown**, Jan 6, 2017 (9.01)                                                Page: 1

## Participation Agreement 2025

for Linnie McCown, 2025 Season

Participation Agreement for Linnie McCown:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Linnie McCown, (Linnie), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Linnie.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Linnie and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-10                                          CM 000767

Copy from re:SearchTX

**Linnie McCown**, Jan 6, 2017 (9.01)                                             Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Linnie, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Linnie MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Linnie, use interviews with and photographic images of Linnie, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-10                                                            CM 000768

Copy from re:SearchTX

**Linnie McCown**, Jan 6, 2017 (9.01)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Linnie, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Linnie, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature            Callie McCown (05/31/2025)

EXHIBIT A-10                                    CM 000769

Copy from re:SearchTX

**Abby Pohl**, Dec 20, 2016 (9.02)                                                                    Page: 1

## Participation Agreement 2025

for Abby Pohl, 2025 Season

Participation Agreement for Abby Pohl:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Abby Pohl, (Abby), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Abby.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Abby and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

<span style="color:red">EXHIBIT A-11</span>                                                              CM 000734

Copy from re:SearchTX

**Abby Pohl**, Dec 20, 2016 (9.02)                                                   Page: 2

Acknowledgment and Assumption of Risks:


I have read and understand, and have discussed with my child, Abby, the Camp activities and
risks described in this Agreement and in other materials provided by the Camp including
activities described on the Camp's website, www.campmystic.com. She understands them and wishes
to participate. I acknowledge and assume the risks and dangers described above, and all others
associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity
of the Camp, and on or off the Camp premises.


AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND
DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES,
INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND
VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY
AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Abby MAY SUFFER,
ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A
SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE
AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE
NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE
RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN
DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR
GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this
Agreement in an amicable way through discussions then mediation before a mutually acceptable
mediator whose name appears on the registry of names recognized by Texas courts as qualified
persons for mediation assignments.


All disputes, controversies or differences which may arise between the parties out of or in
connection with this Agreement or breach thereof, and which cannot be settled through
discussions and mediation, shall be determined in accordance with the rules of the Commercial
Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall
be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties
hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner
as judgments. This provision to arbitrate shall survive any termination of this Agreement. The
provisions of this Agreement shall remain in full force and effect pending any arbitration
hereunder.


The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney
and who is licensed to practice and on the arbitration list before a Texas or United States
District Court. Unless the parties can agree on an arbitrator, the appointing authority for the
implementation of such procedure shall be the American Arbitration Association, who shall
appoint an independent arbitrator who does not have any financial interest in the dispute,
controversy or claim. All decisions and awards by the arbitrator shall be final and binding.
This Agreement shall be governed by and construed in accordance with the laws of the State of
Texas. All pleadings and documents of any nature submitted by the parties hereto in connection
with such arbitration shall be submitted in the English language.


Enforcement of the award of the arbitrator may be obtained in any court or competent
jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the
arbitration, including without limitation reasonable legal and accounting fees, if any, such
designation to be based to the extent possible upon the relative merits of the parties'
respective cases and the manner in which the parties have conducted themselves.


Additional Provisions:
The Camp may, without compensation to me or Abby, use interviews with and photographic images of
Abby, including videotape, for its website, brochures and other, including promotional,
materials.


If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

EXHIBIT A-11                                                              CM 000735

Copy from re:SearchTX

**Abby Pohl**, Dec 20, 2016 (9.02)                                                    Page: 3

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Abby, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Abby, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

**Signature**              Kristin Pohl (03/24/2025)

EXHIBIT A-11                                                                CM 000736

Copy from re:SearchTX

**Margaret Sheedy**, Jul 29, 2016 (9.06)                                      Page: 1

## Participation Agreement 2025

for Margaret Sheedy, 2025 Season

Participation Agreement for Margaret Sheedy:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Margaret Sheedy, (Margaret), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Margaret.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Margaret and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-12                                                    CM 000776

Copy from re:SearchTX

**Margaret Sheedy**, Jul 29, 2016 (9.06)                                                          Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.


Acknowledgment and Assumption of Risks:


I have read and understand, and have discussed with my child, Margaret, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.


AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Margaret MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.


All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.


The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.


Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.


Additional Provisions:
The Camp may, without compensation to me or Margaret, use interviews with and photographic images of Margaret, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-12                                                                    CM 000777

Copy from re:SearchTX

**Margaret Sheedy**, Jul 29, 2016 (9.06)                                        Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.


I, Parent or legal guardian of Margaret, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Margaret, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature                Ellen Sheedy (04/28/2025)


EXHIBIT A-12                                        CM 000778

Copy from re:SearchTX

**Mary Stevens**, Dec 6, 2016 (9.02)                                                  Page: 1

## Participation Agreement 2025

for Mary Stevens, 2025 Season

Participation Agreement for Mary Stevens:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Mary Stevens, (Mary), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Mary.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Mary and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

<span style="color:red">EXHIBIT A-13</span>                                              CM 000782

Copy from re:SearchTX

**Mary Stevens**, Dec 6, 2016 (9.02)                                                      Page: 2

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Mary, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Mary MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Mary, use interviews with and photographic images of Mary, including videotape, for its website, brochures and other, including promotional, materials.

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

**EXHIBIT A-13**                                                                      CM 000783

Copy from re:SearchTX

**Mary Stevens**, Dec 6, 2016 (9.02)                                         Page: 3

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Mary, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Mary, and our respective heirs, personal representatives, estates and family members.

  [X] I have read and agree to the terms and conditions above.
  [] I do not give permission to my child.

Signature             Stacy Stevens (04/27/2025)

EXHIBIT A-13                                              CM 000784

Copy from re:SearchTX

**Greta Toranzo**, Nov 28, 2014 (11.02)                                              Page: 1

## Participation Agreement 2025

for Greta Toranzo, 2025 Season

Participation Agreement for Greta Toranzo:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Greta Toranzo, (Greta), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Greta.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Greta and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-14                                              CM 000749

Copy from re:SearchTX

**Greta Toranzo**, Nov 28, 2014 (11.02)                                                   Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Greta, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Greta MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Greta, use interviews with and photographic images of Greta, including videotape, for its website, brochures and other, including promotional, materials.

<span style="color:red">EXHIBIT A-14</span>                                              CM 000750

Copy from re:SearchTX

EXHIBIT A-14

**Greta Toranzo**, Nov 28, 2014 (11.02)                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Greta, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Greta, and our respective heirs, personal representatives, estates and family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature              Ellen Kolpin Toranzo
                       (05/30/2025)

EXHIBIT A-14                    CM 000751

Copy from re:SearchTX

**Margaret Bellows**, Oct 27, 2016 (9.03)                                    Page: 1

## Participation Agreement 2025

for Margaret Bellows, 2025 Season

Participation Agreement for Margaret Bellows:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Margaret Bellows, (Margaret), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Margaret.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Margaret and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

<span style="color:red">EXHIBIT A-15</span>                                    CM 000773

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Margaret, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Margaret MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Margaret, use interviews with and photographic images of Margaret, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-15                                                         CM 000774

Copy from re:SearchTX

**Margaret Bellows**, Oct 27, 2016 (9.03)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Margaret, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Margaret, and our respective heirs, personal representatives, estates and
family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature              Patricia Bellows
                       (06/20/2025)

EXHIBIT A-15                                              CM 000775

Copy from re:SearchTX

**Lila Bonner**, Jun 26, 2016 (9.07)                                                                        Page: 1

## Participation Agreement 2025

for Lila Bonner, 2025 Season

Participation Agreement for Lila Bonner:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Lila Bonner, (Lila), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Lila.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Lila and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from the nearest hospital/emergency center if a need were to arise to receive emergency care.

EXHIBIT A-16                                                                    CM 000764

Copy from re:SearchTX

**Lila Bonner**, Jun 26, 2016 (9.07)                                    Page: 2

Acknowledgment and Assumption of Risks:


I have read and understand, and have discussed with my child, Lila, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.


AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Lila MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.


All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.


The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.


Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.


Additional Provisions:
The Camp may, without compensation to me or Lila, use interviews with and photographic images of Lila, including videotape, for its website, brochures and other, including promotional, materials.


If any part of this agreement is found by a court of competent jurisdiction to be invalid, the

EXHIBIT A-16                                                              CM 000765

Copy from re:SearchTX

**Lila Bonner**, Jun 26, 2016 (9.07)                                    Page: 3

remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Lila, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Lila, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature               Caitlin Bonner (02/21/2025)

EXHIBIT A-16                                          CM 000766

Copy from re:SearchTX

## Participation Agreement 2024

for Chloe Childress, 2024 Season

Participation Agreement for Chloe Childress:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Chloe Childress, (Chloe), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Chloe.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Chloe and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

<p style="text-align:center; color:red">EXHIBIT A-17</p>

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Chloe, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Chloe MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Chloe, use interviews with and photographic images of Chloe, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-17

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Chloe, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Chloe, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

**Signature**            Wendie Childress
                         (03/31/2024)

EXHIBIT A-17

Copy from re:SearchTX

## Participation Agreement 2025

for Molly DeWitt, 2025 Season

Participation Agreement for Molly DeWitt:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Molly DeWitt, (Molly), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Molly.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Molly and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-18

CM 000785

Copy from re:SearchTX

**Molly DeWitt**, Jun 10, 2016 (9.08)                                      Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Molly, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Molly MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Molly, use interviews with and photographic images of Molly, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-18                                                      CM 000786

Copy from re:SearchTX

**Molly DeWitt**, Jun 10, 2016 (9.08)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Molly, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Molly, and our respective heirs, personal representatives, estates and family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature           Ryan DeWitt (06/03/2025)

EXHIBIT A-18                                    CM 000787

Copy from re:SearchTX

## Participation Agreement 2024

for Katherine Ferruzzo, 2024 Season

Participation Agreement for Katherine Ferruzzo:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Katherine Ferruzzo, (Katherine), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Katherine.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Katherine and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

<div align="center">EXHIBIT A-19</div>

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Katherine, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Katherine MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Katherine, use interviews with and photographic images of Katherine, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-19

Copy from re:SearchTX

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Katherine, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Katherine, and our respective heirs, personal representatives, estates and family members.

[X] I have read and agree to the terms and conditions above.
[] I do not give permission to my child.

Signature          Andrea Ferruzzo (04/07/2024)

EXHIBIT A-19

Copy from re:SearchTX

**Lainey Landry**, Mar 30, 2016 (9.10)                                        Page: 1

## Participation Agreement 2025

for Lainey Landry, 2025 Season

Participation Agreement for Lainey Landry:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Lainey Landry, (Lainey), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Lainey.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Lainey and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-20                                                      CM 000761

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.


Acknowledgment and Assumption of Risks:


I have read and understand, and have discussed with my child, Lainey, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.


AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Lainey MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.


All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.


The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.


Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.


Additional Provisions:
The Camp may, without compensation to me or Lainey, use interviews with and photographic images of Lainey, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-20                                             CM 000762

Copy from re:SearchTX

**Lainey Landry**, Mar 30, 2016 (9.10)                                    Page: 3


If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.


I, Parent or legal guardian of Lainey, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Lainey, and our respective heirs, personal representatives, estates and family members.

 [X] I have read and agree to the terms and conditions above.
 [] I do not give permission to my child.

Signature            Natalie Landry (05/14/2025)


EXHIBIT A-20                                              CM 000763

Copy from re:SearchTX

**Blakely McCrory**, Apr 10, 2017 (8.10)                                    Page: 1

## Participation Agreement 2025

for Blakely McCrory, 2025 Season

Participation Agreement for Blakely McCrory:

Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Blakely McCrory, (Blakely), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Blakely.

In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:

Camp Mystic is a Christian summer camp for girls.

Activities:

The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.

The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.

Risks:

Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.

Camp Mystic is obligated by Texas law to provide to Blakely and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."

The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.

I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

<span style="color:red">EXHIBIT A-21</span>                                    CM 000737

Copy from re:SearchTX

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Blakely, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Blakely MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Blakely, use interviews with and photographic images of Blakely, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-21                                        CM 000738

Copy from re:SearchTX

**Blakely McCrory**, Apr 10, 2017 (8.10)                                     Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the
remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Blakely, have read and accept the terms and conditions of this
Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be
effective upon me and Blakely, and our respective heirs, personal representatives, estates and
family members.

  [X] I have read and agree to the terms and conditions above.
  [] I do not give permission to my child.

Signature            Lindsey McLeod McCrory
                     (06/09/2025)

EXHIBIT A-21                                                    CM 000739

Copy from re:SearchTX

**Mary Kate Jacobe**, Oct 27, 2016 (9.03)                                    Page: 1

## Participation Agreement 2025

for Mary Kate Jacobe, 2025 Season

Participation Agreement for Mary Kate Jacobe:


Thank you for reading this Agreement carefully. It includes important information about Camp Mystic activities and describes certain protection sought by Camp Mystic if you or your child, Mary Kate Jacobe, (Mary Kate), is hurt or suffers some other loss. The document must be signed by a parent or other legal guardian (who will be referred to as Parent) of Mary Kate.


In consideration of the services of Camp Mystic, I, Parent, acknowledge and agree as follows:


Camp Mystic is a Christian summer camp for girls.


Activities:


The activities of Camp Mystic include a variety of traditional camp sports and games, water activities, hiking, aerobics, and arts and crafts. Equine activities include horseback riding activities, trail rides and specialty events. I understand that I am encouraged to ask questions about the activities (and their risks) before signing this Agreement.


The environment of the Camp includes river frontage and rugged terrain, and plants and animals, common to the Texas Hill Country and possibly harmful. Campers may be driven to and from those activities, and to and from local airports and medical facilities, if necessary, in vehicles furnished and driven by Camp staff or persons with whom the Camp has contracted for such services. I understand that while the Camp expects to supervise and observe Campers in a manner consistent with its goals for its Campers, constant, 24/7, immediate, contact with a child is not possible or desirable. I further understand that Campers from time to time will have periods of discretionary free time, without immediate supervision.


Risks:


Camp Mystic is an adventure, designed to promote the emotional, physical, and spiritual growth of young women. As with all adventures, Campers will be exposed to certain risks. Among these risks are the following: travel by motor vehicle, exposure to the elements of nature and the environment (including uncertain terrain, the river and river frontage, heat, cold, rain, floods and lightning); trips and falls, and close personal contact and physical trauma associated with sports and other recreation; falls, bites, kicks and other risks associated with horseback riding; and errors of judgment, failure to follow instructions, and careless conduct of other campers, Camp staff and other persons with whom Camp Mystic may contract for certain services. Campers may suffer bruises, scrapes and strains, bites and stings, allergies, emotional upset and all manner of other injuries or illness which, in extraordinary cases, may be serious.


Camp Mystic is obligated by Texas law to provide to Mary Kate and Parent the following, pertaining to its equine activities: "WARNING: Under Texas Law (Chapter 87, Texas Civil Practice and Remedies Code) a farm animal professional is not liable for an injury to or death of a participant in farm animal activities resulting from the inherent risks of farm animal activities."


The risks described above are inherent to the activities of Camp Mystic; that is, they are such an integral part of its activities that, if they were eliminated, Campers would be deprived of the opportunity for the growth and development which Camp Mystic and its Campers and families expect. Other risks may be encountered, inherent and otherwise.


I also understand that Camp Mystic is a "Help-Delay" facility and thus, it is several miles from

EXHIBIT A-22                                                          CM 000779

Copy from re:SearchTX

**Mary Kate Jacobe**, Oct 27, 2016 (9.03)                                          Page: 2

the nearest hospital/emergency center if a need were to arise to receive emergency care.

Acknowledgment and Assumption of Risks:

I have read and understand, and have discussed with my child, Mary Kate, the Camp activities and risks described in this Agreement and in other materials provided by the Camp including activities described on the Camp's website, www.campmystic.com. She understands them and wishes to participate. I acknowledge and assume the risks and dangers described above, and all others associated with Camper's enrollment in the Camp, whether or not engaged in a supervised activity of the Camp, and on or off the Camp premises.

AGREEMENTS OF RELEASE AND INDEMNITY: I, PARENT AGREE AS FOLLOWS: I INDEMNIFY, RELEASE AND DISCHARGE (AGREEING TO MAKE NO CLAIM, AND NOT TO SUE) CAMP MYSTIC, NATURAL FOUNTAIN PROPERTIES, INC., AND THEIR RESPECTIVE OWNERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS AND VOLUNTEERS (INDIVIDUALLY AND COLLECTIVELY REFERRED TO AS RELEASED PARTIES ) WITH RESPECT TO ANY AND ALL CLAIMS OF PROPERTY DAMAGE, PERSONAL INJURY OR OTHER LOSS, WHICH I OR Mary Kate MAY SUFFER, ARISING OUT OF OR IN ANY WAY RELATED TO HER ENROLLMENT IN THE CAMP, WHETHER OR NOT ENGAGED IN A SUPERVISED ACTIVITY OF THE CAMP, AND ON OR OFF THE CAMP PREMISES. THESE AGREEMENTS OF RELEASE AND INDEMNITY INCLUDE CLAIMS CAUSED OR CLAIMED TO BE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF A RELEASED PARTY. I UNDERSTAND THAT IN SIGNING THIS AGREEMENT I SURRENDER THE RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST A RELEASED PARTY, FOR PERSONAL INJURY AND EVEN DEATH, PROPERTY DAMAGE OR OTHERWISE, EXCEPT IN CASES OF INTENTIONAL WRONGS, RECKLESSNESS OR GROSS NEGLIGENCE OF A RELEASED PARTY.

Binding Arbitration:
The parties hereto shall first try to settle any dispute arising out of or related to this Agreement in an amicable way through discussions then mediation before a mutually acceptable mediator whose name appears on the registry of names recognized by Texas courts as qualified persons for mediation assignments.

All disputes, controversies or differences which may arise between the parties out of or in connection with this Agreement or breach thereof, and which cannot be settled through discussions and mediation, shall be determined in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The mediation and arbitration shall be held in Kerrville, Texas. The arbitration award shall be final and binding upon the parties hereto. Any award shall be enforceable in any court of competent Jurisdiction in the same manner as judgments. This provision to arbitrate shall survive any termination of this Agreement. The provisions of this Agreement shall remain in full force and effect pending any arbitration hereunder.

The arbitration shall be heard and determined by a single arbitrator who is a licensed attorney and who is licensed to practice and on the arbitration list before a Texas or United States District Court. Unless the parties can agree on an arbitrator, the appointing authority for the implementation of such procedure shall be the American Arbitration Association, who shall appoint an independent arbitrator who does not have any financial interest in the dispute, controversy or claim. All decisions and awards by the arbitrator shall be final and binding. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All pleadings and documents of any nature submitted by the parties hereto in connection with such arbitration shall be submitted in the English language.

Enforcement of the award of the arbitrator may be obtained in any court or competent jurisdiction. The arbitrator shall designate the party or parties to bear any expenses of the arbitration, including without limitation reasonable legal and accounting fees, if any, such designation to be based to the extent possible upon the relative merits of the parties' respective cases and the manner in which the parties have conducted themselves.

Additional Provisions:
The Camp may, without compensation to me or Mary Kate, use interviews with and photographic images of Mary Kate, including videotape, for its website, brochures and other, including promotional, materials.

EXHIBIT A-22                                                      CM 000780

Copy from re:SearchTX

**Mary Kate Jacobe**, Oct 27, 2016 (9.03)                                    Page: 3

If any part of this agreement is found by a court of competent jurisdiction to be invalid, the remainder of the agreement nevertheless will be in full force and effect.

I, Parent or legal guardian of Mary Kate, have read and accept the terms and conditions of this Agreement, and acknowledge and agree that it shall, to the fullest extent allowed by law, be effective upon me and Mary Kate, and our respective heirs, personal representatives, estates and family members.

  [X] I have read and agree to the terms and conditions above.
  [] I do not give permission to my child.

Signature                 Samantha Jacobe (06/17/2025)

EXHIBIT A-22                                                    CM 000781

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Mona Reynolds on behalf of Kenneth Fair
Bar No. 24007171
reynolds@wrightclose.com
Envelope ID: 114574536
Filing Code Description: Notice
Filing Description: NOTICE OF FILING OF AFFIDAVITS IN SUPPORT OF MOTIONS TO COMPEL ARBITRATION
Status as of 5/8/2026 11:57 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| W. Mark Lanier | | wml@lanierlawfirm.com | 5/6/2026 4:44:44 PM | SENT |
| Sam Taylor | | sam.taylor@lanierlawfirm.com | 5/6/2026 4:44:44 PM | SENT |
| A. Arnold | | arnold@arnoldfreemanlaw.com | 5/6/2026 4:44:44 PM | SENT |
| Christopher Freeman | | cfreeman@arnoldfreemanlaw.com | 5/6/2026 4:44:44 PM | SENT |
| Abby Heath | | aheath@arnoldfreemanlaw.com | 5/6/2026 4:44:44 PM | SENT |
| Sara Abston | | sara.abston@lanierlawfirm.com | 5/6/2026 4:44:44 PM | SENT |
| Cris Garcia | | Cris.garcia@lanierlawfirm.com | 5/6/2026 4:44:44 PM | SENT |
| Jeff Ray | | jray@raylaw.com | 5/6/2026 4:44:44 PM | SENT |
| Linda Gonzales | | lgonzales@raylaw.com | 5/6/2026 4:44:44 PM | SENT |
| Katherine Estrada | | kestrada@raylaw.com | 5/6/2026 4:44:44 PM | SENT |
| Laura Rua | | lrua@raylaw.com | 5/6/2026 4:44:44 PM | SENT |
| Mikal Watts | | mikal@wattsllp.com | 5/6/2026 4:44:44 PM | SENT |
| Kenneth Fair | | fair@wrightclosebarger.com | 5/6/2026 4:44:44 PM | SENT |
| Tom Wright | | wright@wrightclosebarger.com | 5/6/2026 4:44:44 PM | SENT |
| Jessica Barger | | barger@wrightclosebarger.com | 5/6/2026 4:44:44 PM | SENT |
| Lynn Castagna | | lynn@texasdefense.com | 5/6/2026 4:44:44 PM | SENT |
| Larry Matthys | | lmatthys@raylaw.com | 5/6/2026 4:44:44 PM | SENT |
| Suzanne Goss | | goss@wrightclosebarger.com | 5/6/2026 4:44:44 PM | SENT |
| Joshua Fiveson | | jfiveson@wcbglaw.com | 5/6/2026 4:44:44 PM | SENT |
| Mona Reynolds | | reynolds@wcbglaw.com | 5/6/2026 4:44:44 PM | SENT |

Copy from re:SearchTX